# EXHIBIT 16

## REDACTED DOCUMENT
## SOUGHT TO BE SEALED

# EDWARD JONES ADVISORY SOLUTIONS®
## Cover Sheet for Scanning Client Agreement 53HQ28BT64X

March 16, 2015

## Account Holder

Principal Party Name/Mailing Address

EDWARD JONES TRUST CO AS CUST

FBO COLLEEN K WORTHINGTON IRA

Advisory Solutions Account Number

## Amount to invest in your Advisory Solutions Account

$

Note: If this is a model change, the amount shown above is the greater of $50,000 or the amount to transfer from your current model.

For scanning purposes, this cover sheet is to be included with pages 1–4 and 25 (1–4, 6 and 25 for custom models)

**Client Agreement Cover Sheet**

# EDWARD JONES ADVISORY SOLUTIONS®

## Fund Model Client Agreement

**Purpose of Funds:** Retirement

March 16, 2015

This Agreement asks about your current financial information, investment objectives and risk tolerance. Your responses will help Edward Jones assist you in selecting an appropriate portfolio objective for the assets that you invest in Edward Jones Advisory Solutions®.

## Account Holder

Principal Party Name/Mailing Address

EDWARD JONES TRUST CO AS CUST

FBO COLLEEN K WORTHINGTON IRA



E–mail Address

*(Edward Jones will send an e–mail with a link to our website where you can sign up for online account access and electronic delivery of your account documents.)*



Owner U.S. Resident(Y/N)          Joint Owner U.S. Resident(Y/N)



Advisory Solutions Account Number

## Amount to invest in your Advisory Solutions Account

$

*Note: If this is a model change, the amount shown above is the greater of $50,000 or the amount to transfer from your current model.*

### Investment Objectives Questionnaire

Please answer the following questions regarding the funds you wish to invest in Edward Jones Advisory Solutions®.

**1. Client's Life Stage (choose one):**

Early Investing Years

Good Earning Years

Higher Income and Savings Years

Early Retirement Years

Late Retirement Years

**2. The funds that will be placed in Advisory Solutions are to be invested for the following time frame:**

3 to 5 years

6 to 10 years

11 years or longer

**3. The funds in this program represent what portion of your total investable assets (cash, stocks, bonds, mutual funds)?**

Up to 25%

26% to 50%

51% to 75%

76% to 90%

91% to 100%

Scanning instructions for the Advisor: Please scan pages 1–4 and 25 (1–4, 6 and 25 for custom models) to:
Scan Title: Fund Model – Client Agreement; Destination: New Accounts

**4. Equity investments represent the following percentage of your total investable assets outside this program:**

0% to 25%

26% to 50%

51% to 75%

76% to 100%

**5. Do you expect to make regular withdrawals from these funds?**

No

Yes; less than 3% of the account value each year

3% to 5% of the account value each year

6% to 8% of the account value each year

More than 8% of the account value each year

## Understanding Your Risk Tolerance

**6. How concerned are you about inflation?**
Investing involves trade-offs and prioritizing your goals. Stocks typically have more volatility (larger swings in value) than bonds but offer greater growth potential to keep up with inflation. The value of cash and fixed income may not change as much over time, but typically these investments have higher inflation risk (the risk your money will buy less in the future). Select the statement you most agree with regarding volatility and inflation.

My goal is to minimize swings in portfolio value, even if growth does not keep pace with inflation. (0)

My goal is for growth to at least keep pace with inflation, with the risk of modest swings in portfolio value. (5)

My goal is for growth to exceed inflation, with the risk of modest to larger swings in portfolio value. (12)

My goal is for growth to significantly exceed inflation, with the risk of larger swings in portfolio value. (17)

**7. Which statement best describes your investment objectives for this portfolio?**

Income: I want a portfolio designed to generate more consistent, but most likely lower, returns year to year, with a primary focus on current income. I want a low level of volatility and risk of loss, if possible. (0)

Growth and Income: I prefer a portfolio that balances my growth objectives with my income needs. I prefer a portfolio with modest amounts of portfolio volatility and risk of loss over time. (8)

Growth: I am willing to accept investments with a higher degree of volatility and risk of loss in exchange for the potential for achieving higher average returns over time. (16)

**8. How comfortable are you with volatility?**
The chart shows the potential range in values during a given year for three hypothetical portfolios, based on an initial value of $100,000. In general, which portfolio most aligns with your return objectives and comfort with volatility?

Portfolio A: Lower volatility, lower return potential (0)

Portfolio B: Moderate volatility, moderate return potential (8)

Portfolio C: Higher volatility, higher return potential (16)



**9. In general, which of the following statements best describes your thoughts regarding the trade-off between returns and volatility?**

When investing, I am more concerned about my portfolio losing value. The return achieved is of secondary importance. (0)

The potential for loss is of equal importance as the return achieved. (8)

I am most focused on the return potential, and the potential for losses is of secondary importance. (17)

**10. There have been several periods in market history in which the value of the market has dropped 25% or more in a year. If the value of your portfolio fell from $200,000 to $150,000 (25%) in one year, how would you react?**

I would move my money to different investments to reduce the potential for future losses. (0)

I would be concerned about the portfolio and would consider moving into different investments if the losses continued. (6)

I would leave my money where it is and continue according to my long–term strategy. (12)

I would leave my money where it is and consider investing more. (17)

**11. The table below shows hypothetical long–term returns, as well as possible gains and losses in any one year, for three portfolios. Given your return objectives and tolerance for volatility, which portfolio would you be most willing to invest in?**

Portfolio A (0)

Portfolio B (8)

Portfolio C (17)

|  | Long-term Average Return | Possible Gain in One-year Period | Possible Loss in One-year Period |
|---|---|---|---|
| Portfolio A | 6.0% | 19.0% | -13.0% |
| Portfolio B | 7.5% | 25.0% | -19.0% |
| Portfolio C | 9.0% | 35.0% | -30.0% |



IAS–3808–A JUL 2014

## Interpreting Your Results

Your responses to Understanding Your Risk Tolerance (questions 6 to 11) are scored and determine what level of risk you are willing to take when investing for your long-term financial goals in Advisory Solutions. Your Risk Tolerance Score, combined with your Life Stage, result in a recommended Portfolio Objective. Within your Portfolio Objective, you can select an Edward Jones Research Model or construct a Custom Model.

## Client's Selected Model and Portfolio Objective

## Model Descriptions

**Core** — This model invests in actively managed mutual funds representing most major asset classes.

**Core Plus** — This model invests primarily in actively managed mutual funds representing most major asset classes. It may also invest a small portion of assets in mutual funds that invest in niche asset classes such as real estate investment trusts (REITs), natural resources, alternatives and emerging markets.

**Tax–Sensitive** — This model seeks to reduce taxable distributions in non–retirement accounts by balancing investment and tax considerations. It focuses on equity funds with relatively low portfolio turnover, funds specifically managed for after–tax returns and municipal bond funds. This model invests in funds representing most major asset classes.

**Core Index** — This model invests in passively– managed exchange–traded funds (ETFs) and open–end index mutual funds representing most major asset classes. In general, these passively–managed funds are designed to replicate the return of their respective benchmark indices before internal fund expenses and may be more tax–efficient than traditional actively managed mutual funds.

**Active/Passive Core** — This model strategically invests in actively managed mutual funds, as well as passively managed exchange traded funds (ETFs) and open–end index mutual funds, representing most major asset classes.

**Active/Passive Core Plus** — This model strategically invests in actively managed mutual funds, as well as passively managed exchange traded funds (ETFs) and open–end index mutual funds, representing most major asset classes. This model may also invest a small portion of assets in mutual funds or ETFs that invest in niche asset classes such as real estate investment trusts (REITs), natural resources, alternatives and emerging markets.

**Custom** — This model allows the Client to choose Program Funds representing the Advisory Solutions Program List in percentages that equate to the asset class target weightings of Client's selected Portfolio Objective.

## Portfolio Objective Descriptions

**All–Equity Focus** — This portfolio offers the highest growth potential. The majority of investments in the portfolio are equity–based, which are likely to carry the highest level of risk. This portfolio seeks long–term capital appreciation and provides very little or no current income.

**Growth Focus** — This portfolio emphasizes higher growth potential while providing modest current income. Over the long term, it should have higher risk than portfolios with a more income–oriented objective.

**Balanced toward Growth** — This portfolio emphasizes growth potential with a secondary goal of current income. Over the long term, it should have moderate to higher risk.

**Balanced Growth & Income** — This portfolio blends current income with long–term growth potential. Over the long term, it should have moderate risk.

**Balanced toward Income** — This portfolio emphasizes current income with a secondary goal of growth potential. Over the long term, it should have lower to moderate risk.

**Income Focus** — This portfolio emphasizes current income with little growth potential or inflation protection. Over the long term, it should have lower risk than portfolios with a more growth–oriented objective.

## Custom Model Allocations

Clients who invest in a Custom Model construct an individualized portfolio using Program Funds from the Program List while adhering to the specified asset class target weightings of the Portfolio Objective. Individual Program Fund allocations within a Custom Model are subject to each Fund's minimum initial investment. Following is a listing of the Program Funds that you have initially selected for your Custom Model.

Scanning instructions for the Advisor: Please scan pages 1–4 and 25 (1–4, 6 and 25 for custom models) to:
Scan Title: Fund Model – Client Agreement; Destination: New Accounts
**Page 6 of 25**

669

This Client Agreement ("Agreement") is entered into by and between Edward D. Jones & Co., L.P. ("Edward Jones") and the undersigned client (the "Client") in order to open an Edward Jones Advisory Solutions® Fund Models Account (the "Account"). "Client" means the person, persons or entity on whose behalf the Account is being opened and managed pursuant to this Agreement.

This Agreement sets forth the terms and conditions relating to Client's participation in Edward Jones Advisory Solutions® Fund Models ("Advisory Solutions" or "the Program"). At the time of account opening, Client also signed the Edward Jones Account Agreement or Edward Jones Retirement Account Agreement, which sets out further terms and conditions and may include separate and/or additional fees.

Edward Jones is dually registered both as a broker–dealer and as an investment adviser under federal and state securities laws, and is authorized to enter into this Agreement.

## 1. Edward Jones Advisory Solutions®

Edward Jones offers investment management services to clients investing in affiliated mutual funds, unaffiliated mutual funds, exchange–traded funds ("ETFs"), and money market mutual funds selected by Edward Jones (collectively referred to as "Program Funds"). Advisory Solutions is generally designed for persons or entities who wish to pursue an investment strategy with a time horizon of at least three (3) years. Client will give Edward Jones full investment discretion over the selection of and investment in the Program Funds, asset allocation and rebalancing of the Account ("Research Model"). Alternatively, Client will choose investment funds for its Account from a list of Program Funds (the "Program List") provided by Edward Jones and then Edward Jones will have discretion over the asset allocation and rebalancing of the Account ("Custom Model"). Edward Jones will select and monitor each Program Fund based on a number of factors including, but not limited to, qualitative and quantitative analysis, the investment management of each fund and absolute and risk–adjusted performance. Edward Jones can add or remove, at any time, any Program Fund from the Program List at its sole discretion. Client understands and agrees that, with the exception of the Edward Jones Money Market Fund, only Program Funds (or the proceeds received from any redemption of a Program Fund) can be held in an Advisory Solutions Account.

Under Advisory Solutions, cash balances received with respect to an Account and/or awaiting investment or reinvestment into a Research Model or a Custom Model will automatically be swept into and invested in the Edward Jones Money Market Fund in either 1) the investment share class if a taxable account, or 2) the retirement share class if an Individual Retirement Account ("IRA") or Tax Qualified or ERISA Plan. The Edward Jones Money Market Fund is not a Program Fund.

## 2. Opening an Advisory Solutions Account

**Client Information –** Client has made an independent determination to participate in Advisory Solutions based on Client's assessment of the source and amount of assets that Client has available for the Program, the time horizon that Client expects to be in this Program and Client's financial situation, investment objectives and risk tolerance. Client has completed an Investment Objective Questionnaire ("Questionnaire"). Client represents that all answers in response to the Questionnaire are true and accurate. Edward Jones will rely upon the Client's responses to the Questionnaire in order to recommend a compatible portfolio objective ("Portfolio Objective") and target asset allocation ("Asset Allocation") for the Client's Account (collectively, the "Investment Policy Statement" or "IPS"). The Client acknowledges

that Edward Jones will create the IPS for the Client and will provide a copy of the IPS to the Client. The Client hereby adopts the IPS as the controlling investment policy statement with respect to the Account. Client agrees to promptly notify Edward Jones either by contacting the financial advisor, in writing, of any material change in the information that Client has provided to Edward Jones, including, but not limited to, Client's financial situation, investment objectives and/or risk tolerance and information provided by Client in the Questionnaire. Upon such changes, Client will complete a new Questionnaire in order for Edward Jones to recommend a modification of the IPS after considering such changes.

**Model and Portfolio Objective Selection –** Client will select a Research Model or will construct a Custom Model under which to invest assets. If the Client selects a Research Model, Edward Jones has discretion over the selection of Program Funds, asset allocation and rebalancing of the Account. Edward Jones can remove or add a Program Fund to the Program List at any time without notifying the Client. If the Client selects a Custom Model, Client will choose Program Funds from the Program List. Client acknowledges that Program Funds within a Custom Model Account may be subject to certain investment minimums as may be determined by Edward Jones. In addition, Edward Jones may in its sole discretion implement guidelines and/or restrictions as to the minimum and maximum number of Program Funds that can be held in an Account at any one time and the minimum and maximum percentage allocations for those Program Funds held in a Custom Model Account. If a Program Fund is removed from the Program List for any reason, Client understands that such fund can no longer be held in the Client's Account. With respect to Clients selecting a Custom Model, if the Client does not select an alternative Program Fund within thirty (30) calendar days of being notified of the removal of a Program Fund from

the Program List, Edward Jones will select an alternative Program Fund for the Account. If Client does not wish the Account to invest in a particular Program Fund (including an affiliated mutual fund), Client must choose a Custom Model.

**Initial Funding –** In order to establish an Advisory Solutions Account, Client agrees to transfer cash and/or marketable securities into the Account. If the Client transfers into the Account marketable securities that are not Program Funds, Client hereby directs Edward Jones, upon its acceptance of this Agreement, as broker–dealer to promptly sell those securities at market without regard for any tax consequences to the Client. Client understands and agrees that this direction to sell such securities may be a taxable event and may result in taxable gains or losses to Client, and Client may pay redemption fees, sales charges and/or commissions that may be assessed on the liquidation or redemption of securities. Moreover, Client understands and agrees that it has determined to participate in the Program and to direct the sales of those securities not otherwise on the Program List, and in making those decisions, Client is not relying on the advice or recommendation of Edward Jones (or its affiliates) or any Edward Jones financial associate as a primary basis for such decisions.

If, when Client opens the Account, Client transfers into the Account shares of mutual funds that are Program Funds, it may be necessary to exchange Client's existing share class for the class that is available through the Program. Client understands and agrees that Edward Jones may exchange the class of shares transferred in for another class of shares of the same Program Fund selected by Edward Jones. Client understands that all transfers may result in higher fees than those paid under the previous share class. Taxable gains, taxable losses, redemption fees or sales charges may also be assessed upon the liquidation or redemption of securities. Client understands that these fees and

==additional==

expenses may negatively affect investment performance.

Client understands that Edward Jones will begin to manage the Account in conformance with the IPS only once the Account is funded with cash or Program Funds at the minimum initial Account size as determined by Edward Jones, which is generally $50,000.

**Custody of Assets –** Client agrees to maintain custody of all assets in Client's Advisory Solutions Account at Edward Jones, located at 12555 Manchester Road, St. Louis, Missouri 63131. For all Edward Jones Traditional and Roth IRA Advisory Solutions Accounts commencing on or after August 6, 2010, Client agrees to maintain custody of all assets at Edward Jones Trust Company ("EJTC"), located at 12555 Manchester Road, St. Louis, Missouri 63131. EJTC will employ Edward Jones as a sub–custodian subject to Client's IRA Custodial Agreement. The Client's brokerage account will be used to receive and credit shares of Program Funds for the Account and all dividends, capital gains and redemptions received by Edward Jones on the assets of the Account.

**USA PATRIOT Act Notice –** To help the government fight the funding of terrorism and money laundering activities, federal law requires all financial institutions to obtain, verify and record information that identifies each individual or institution that opens an account or establishes a customer relationship with Edward Jones. Therefore, before entering into a new client relationship, Edward Jones will ask for the Client's name, address, date of birth and other identification information. This information will be used to verify the Client's identity. As appropriate, Edward Jones may, in its discretion, ask for additional documentation or information, including a copy of a Client's driver's license. If all required documentation or information is not provided, Edward Jones will be unable to open an Account or maintain a relationship with the Client.

## 3. Trading Authority and Affiliated Funds

Upon acceptance of this Agreement by Edward Jones, Edward Jones will have trading authority over the Account, which will remain in force until this Agreement is terminated by Client or by Edward Jones. The extent of Edward Jones' trading authorization depends on whether the Client elects a Research Model or a Custom Model. Edward Jones will select all Program Funds held in a Research Model; alternatively, Client will select the Program Funds to be held in a Custom Model from the Program List, which is subject to changes from time to time. Edward Jones will use its best professional judgment in managing the assets in the Account in accordance with the IPS chosen and agreed to by the Client. To the fullest extent permitted under applicable law, Edward Jones may aggregate trades at its discretion and will allocate these trades in a fair and equitable manner over time and in a manner consistent with Edward Jones' trade allocation policies and procedures, as discussed further in the Edward Jones Advisory Solutions® Fund Models Brochure (the "Brochure"). Client understands that Edward Jones will periodically rebalance the assets held in the Account, based on deviations in the Account's targeted asset allocation ranges pursuant to guidelines established by Edward Jones. Client understands that Edward Jones establishes the guidelines for rebalancing and may change them at any time without notifying the Client. Client understands and agrees that rebalancing may result in taxable gains or losses to the Client.

Transactions in Program Funds will be made in accordance with the trading practices of Edward Jones as described in the Brochure. The Client acknowledges that margin is not permitted in the Account.

Client understands that the Program Funds will include certain mutual funds that are advised by affiliates of Edward Jones. These multi–manager mutual funds are designed to combine the

investment styles and strategies of multiple sub–advisers, who are unaffiliated with Edward Jones, within a single fund. Client acknowledges that because the affiliated mutual funds were created specifically for Advisory Solutions, they are not subject to the selection and monitoring process that Edward Jones applies to unaffiliated mutual funds and other Program Funds.

The Edward Jones Money Market Fund is affiliated with Edward Jones but is not a Program Fund for Advisory Solutions. With respect to Client's Account's investment, if any, in the Edward Jones Money Market Fund, such amounts will not be included in the Program Fee. Please refer to the Brochure for more information.

Where an affiliated mutual fund (other than the Edward Jones Money Market Fund) pays Edward Jones or its affiliates a management or other fee with respect to Client's Account's investment in the mutual fund, such amounts will first be used to compensate the mutual fund's sub–advisers and certain other service providers with any remaining amounts (if not otherwise waived by Edward Jones or its affiliates) to be credited back to Client's Account for Client's benefit in order to offset the Program Fee. Edward Jones and its affiliates will not retain any additional compensation in connection with Client's Account's investment in an affiliated mutual fund, beyond the Program Fee agreed to with Client. Please note that Edward Jones or its affiliates has entered or intends to enter into an agreement with each affiliated mutual fund, which can be terminated at any time, to waive any such remaining amounts in order to avoid the need to credit or offset fees.

## 4. Tax and Risk

Client understands that existing assets in a Client's Account will be sold at various times, including but not limited to when the Account is funded, during the ongoing investment management of the Account, when the Account is rebalanced and, under certain circumstances, when the Account is terminated from the Advisory Solutions relationship. Client is responsible for any resulting tax liabilities, fees and charges. Client confirms that Client has had the opportunity to consult with a tax advisor and/or other qualified tax professionals before deciding to participate in Advisory Solutions.

Client also understands that all investments involve risk and the degree of risk varies depending on the investments and/or strategies that Client has chosen. Client acknowledges that investment performance can never be predicted or guaranteed and that the value of the Account will fluctuate depending on market and economic conditions as well as other factors that cannot be controlled by Edward Jones. The Client has received a copy of the Brochure, which contains more information about the risks of investing in the Program.

## 5. Client's Authority to Enter into the Agreement

**Client Authority –** The Client represents that the Client(s) or person(s) acting on Client's behalf who is (are) signing this Agreement has (have) the full power, authority and capacity to enter into this Agreement and to give orders and instructions with respect to the Account. If the Account is held as a joint ownership, Client certifies that this Agreement has been duly authorized and is a legal, valid, and binding obligation enforceable against the Client in accordance with its terms as set forth herein. Should Client's authority or the propriety of Client's receipt of the services described herein materially change, Client shall promptly advise Edward Jones of such changes or of any event that may affect the validity of this Agreement.

**By a Fiduciary –** If this Agreement is entered into by a trustee or other fiduciary, such trustee or fiduciary represents that the Program, the IPS and the Account investments in the Program

Funds, as contemplated herein are within the scope of the investments authorized pursuant to any applicable organizing documents, plan, trust, and/or applicable law, and that he, she or it has the full power, authority, and capacity to negotiate the terms (including fees) and to enter into this Agreement on behalf of the Client. Edward Jones and the financial advisor make no independent determination as to whether the Program, the IPS or the investment in any Program Fund is within the scope of authorized investments, but fully rely on the representations in this Agreement regarding the Client's ability to participate in the Program. If the Client represents that it is a corporation, the signatory on behalf of such corporation represents that the execution of the Agreement has been duly authorized by appropriate corporate action.

**Changes in Authority** – The Client shall immediately advise Edward Jones of any event that might affect its authority to enter into this Agreement or the propriety of this Agreement and provide, upon request, documentation of the authority described in this section.

### 6. Employer–Sponsored Plans and Other Retirement Accounts

**A. Provisions Applicable to Tax–Qualified Plans and Retirement Accounts, Including Traditional and Roth IRAs**

The following provisions apply if the Client is a "plan" subject to the prohibited transaction provisions of the section 4975 of the Internal Revenue Code of 1986, as amended (the "Code"), because such plan or account is either (A) an individual retirement account ("IRA"), (B) a Keogh plan, or (C) any "plan" within the meaning of Code section 4975(e)(1); other than an Employee Retirement Income Security Act of 1974 ("ERISA") Plan (each, a "Tax–Qualified Plan"):

(i) The Client represents that the services to be provided by Edward Jones, and the investments and related transactions

contemplated by this Client Agreement, are consistent with and permissible under the Client's plan and/or terms and conditions of the Tax–Qualified Plan's documents (including any related trust or custody documents).

(ii) The Client represents that the individual(s) executing this Agreement on behalf of the Client is a fiduciary with respect to the Tax–Qualified Plan (the "Directing Fiduciary"), who is independent of and unrelated to Edward Jones, its affiliates and the financial advisor.

(iii) The Directing Fiduciary and the Client represent and warrant that the Tax–Qualified Plan is not a participant–directed plan (*i.e.*, a plan under which participants direct the investment of their individual plan accounts) other than a Traditional or Roth IRA, a SIMPLE IRA, a SEP IRA, an Edward Jones sponsored Owner K plan, or a "single–owner 401(k)" plan where the only eligible plan participants are the business owner and/or their spouse (subject to certain limitations with respect to participant Account funding levels).

**B. Provisions Applicable to ERISA Plans and Plans Subject to Laws Similar to ERISA, Including Traditional and Roth IRAs, SIMPLE IRAs and SEP IRAs That Are Subject to ERISA**

The following provisions apply if the Client is an employee benefit plan subject to either the fiduciary duty provisions of ERISA (each an "ERISA Plan" or an "Employer–Sponsored Plan") or a law similar ("Similar Law") to the fiduciary duty provisions of ERISA (collectively with ERISA Plans referred to as a "Plan"):

(i) The Client represents that the person executing this Agreement on behalf of a Plan (the "Named Fiduciary"): (A) is a "named fiduciary" as that term is defined in ERISA with respect to an Employer–

Sponsored Plan or a person holding a position similar to that of a named fiduciary under a Similar Law with respect to an Other Plan, (B) is authorized under the terms and provisions of the plan document (including any trust document related thereto) to enter into this Agreement and to retain Edward Jones to perform the services contemplated herein in accordance with its terms, (C) is not prohibited from acting as a fiduciary with respect to the Plan and (D) is independent of and unrelated to Edward Jones, its affiliates and the financial advisor, and (E) will vote proxies associated with the Account.

(ii) The Named Fiduciary and the Client represent and warrant that (A) the Named Fiduciary and the Client (1) are knowledgeable with respect to administration and funding matters related to the Plan, (2) are able to make informed decisions regarding the services to be provided under this Agreement, and (3) have considered the fees to be paid by the Plan in relation to the level of services to be provided; (B) as, and to the extent required by ERISA, the services will be used for the exclusive benefit of the Plan and its participants and will not inure to the benefit of any other party; (C) should any fee payments hereunder be made from the assets of the Plan, Client shall have determined that such payments constitute proper Plan expenses payable by the Plan in accordance with ERISA and the terms of the Plan; and (D) the Named Fiduciary, based on the disclosures contained in this Agreement (including the disclosures in the Edward Jones Advisory Solutions® Fund Models Brochure (Form ADV Part 2A), and the applicable Edward Jones brokerage account agreement) (1) has determined that the arrangement for services and any fees payable to Edward Jones are reasonable, and the services to be provided by Edward

Jones hereunder are appropriate and helpful to the Plan, and (2) based upon the documents mentioned above, has received all necessary disclosures regarding such fees, as required by, and in accordance with, applicable regulations promulgated under Section 408(b)(2) of ERISA.

(iii) Edward Jones hereby acknowledges that it is a "fiduciary" (as such term is defined in ERISA) with respect to the advisory and management services it provides under this Agreement. Edward Jones represents that it is also an "investment manager" (as such term is defined in ERISA) with respect to the discretionary management services it provides under this Agreement. As a fiduciary, Edward Jones agrees to comply with the fiduciary duty provisions of ERISA, including, but not limited to, the prohibited transaction provisions of ERISA section 406 (except to the extent statutory or other prohibited transaction exemptions are applicable) and the fiduciary responsibility provisions of ERISA section 404; provided however, that if an Account contains only part of the assets of the Plan, Edward Jones is not responsible for diversifying the investments of the overall assets of the Plan, which responsibility shall remain with the Named Fiduciary, or otherwise to consider those Client assets held outside of the Account when providing the advisory and management services contemplated under this Agreement.

(iv) The Client agrees to obtain and maintain, at its expense, during the period of this Client Agreement any bond required pursuant to ERISA or other applicable law and to include within the coverage of such bond Edward Jones, its affiliates, and their respective officers, directors and employees. The Client agrees to provide Edward Jones with appropriate documents evidencing such coverage promptly upon request.

(v) The Named Fiduciary and the Client represent and warrant that the Plan, other than a plan for a SIMPLE IRA or SEP IRA, is neither (A) a participant–directed plan in which participants direct the investment of their individual plan accounts nor (B) a plan intended to comply with the provisions under ERISA section 404(c) (or a similar state or local law or regulation).

(vi) The Named Fiduciary and the Client acknowledge that it is the responsibility of the Named Fiduciary and the Client to review the Plan documents (including any related trust document) and the applicable laws and regulations applicable to the Plan and its operations to determine that the arrangements contemplated herein (including the IPS attached hereto) and any investments purchased (including any investment in a Program Fund) are suitable for the Plan and both permissible and consistent with the terms of the Plan documents and applicable law. Moreover, the Named Fiduciary and Client hereby adopt the IPS as the controlling investment policy statement for the Plan with respect to the Account.

(vii) The Client shall immediately advise Edward Jones, in writing, of any provision in any Plan document (including any related trust document), applicable law or any proposal to amend, or amendment of applicable law, or any Plan document (including any related trust document) that could affect Edward Jones' duties, rights or obligations under the Agreement or otherwise impose an investment restriction not otherwise noted in the IPS. Such notice shall include a copy of the provision, law or amendment with a copy of any Plan amendment or other investment restriction to which the Plan is subject. It is understood and agreed that no Plan amendment that affects the rights or obligations of Edward Jones will become binding on Edward Jones until agreed to by Edward Jones in writing. To be free from doubt, Edward Jones retains the sole discretion to terminate the advisory relationship with the Client after review of any such amendments to the Plan documents or changes to applicable law.

(viii) The Named Fiduciary and the Client represent that they have specifically considered the role that the Account and the course of action contemplated by this Agreement (including the IPS) will play in the Client's investment portfolio as a whole, including, but not limited to, consideration of: (A) the risk of loss and the opportunity for gain (or other return) associated with the investment strategy and investment course of action; (B) the composition of the Client's investment portfolio with regard to diversification; (C) the liquidity; and (D) the current return of the Client's investment portfolio relative to the Client's anticipated cash flow requirements.

(ix) The Named Fiduciary and the Client agree that Edward Jones' duties and obligations under this Agreement are limited to providing only those advisory and management services discussed herein and Edward Jones shall act solely as an investment fiduciary and shall not, by reason of this Agreement, be responsible for acting as a fiduciary or service provider with respect to the administration of the Plan or otherwise provide administrative or trustee services. It is understood that administrative services include, but are not limited to, making determinations regarding Plan eligibility, vesting, benefit calculations, and claims; preparation or transmittal of any Plan communications to participants or regulators; providing actuarial services or calculations; calculation, collection or timing of contributions; determining distributions or withdrawals; preparation or filing of Form

5500; and performing any non–discrimination or other testing as required under ERISA, the Code or applicable law. To be free from doubt, it is further understood that any statistics requested by or provided to Edward Jones (or the financial advisor) pertaining to the Plan's demographics and/or composition or the Plan's liquidity needs will be utilized by Edward Jones solely for the purposes of recommending Investment Objectives and an Asset Allocation to the Client, or a change thereto.

(x)  The Named Fiduciary and the Client agree to immediately notify Edward Jones of any changes to the Plan's actuarial assumptions, funding status, or liquidity needs (including any impending or upcoming distributions to be made from the Account).

**C.  Provisions Applicable to Plans and Tax–Qualified Plans with Respect to the Use of Affiliated Mutual Funds**

(i)  Affiliated Funds (Other Than the Edward Jones Money Market Fund)

While at present, affiliated mutual funds (other than the Edward Jones Money Market Fund) will not be available for Plans, ERISA Plans and Tax–Qualified Plans other than Traditional and Roth IRAs, the Named Fiduciary or the Directing Fiduciary, as the case may be, authorizes and agrees that Edward Jones may invest Account assets in shares of the affiliated funds which are advised by affiliates of Edward Jones and sub–advised by third party investment managers. The Named Fiduciary or the Directing Fiduciary, as the case may be, acknowledges and agrees that:

- Edward Jones has advised the Named Fiduciary or the Directing Fiduciary that these funds are appropriate for investment by the Client because of, among other things, the mutual funds' investment goals, daily liquidity, and diversification.

- All assets of the Account may be invested in these funds subject to the IPS.

- Edward Jones has informed the Named Fiduciary or the Directing Fiduciary that the Named Fiduciary or the Directing Fiduciary may access the prospectuses and statements of additional information for these funds at www.edwardjones.com and may also request a copy of these documents from their financial advisor. The Named Fiduciary or the Directing Fiduciary understands that these documents describe the funds and their sub–advisers, and include a summary of all fees that may be paid by the funds to Edward Jones and its affiliates.

- Where an Account invests in these funds, and the fund pays Edward Jones or its affiliates a management or other fee with respect to the investment, the amounts received by Edward Jones and its affiliates will first be used to compensate the fund's third–party sub–advisers and certain other service providers, with any remaining amounts (if not otherwise waived by Edward Jones or its affiliates) to be credited back to your account and offset against the Program Fee (as defined below). Please note that Edward Jones or its affiliates intends to enter into an agreement with these funds, which can be terminated at any time, to waive any such remaining amounts in order to avoid the need to credit or offset fees.

On the basis of the foregoing, the Named Fiduciary or the Directing Fiduciary authorizes, approves and consents to the investment of the assets of the Account in these funds and redemptions, without limitations, as part of the Edward Jones' management of the Account, and the payment of fees to Edward Jones, or its affiliates, if any, by the funds that are incidental to such investments therein as described in the prospectuses.

(ii) Edward Jones Money Market Fund

The Named Fiduciary or the Directing Fiduciary, as the case may be, authorizes and agrees that Edward Jones may invest Account

assets in shares of the Edward Jones Money Market Fund, which is an open–end registered investment company managed or advised, for a fee, by Edward Jones or its affiliates. The Named Fiduciary or the Directing Fiduciary, as the case may be, acknowledges and agrees that:

- Edward Jones has advised the Named Fiduciary or the Directing Fiduciary that the Edward Jones Money Market Fund is appropriate for investment by the Client because of, among other things, its investment goals, daily liquidity, and diversification.

- All assets of the Account may be invested in the Edward Jones Money Market Fund subject to the IPS.

- The Named Fiduciary or the Directing Fiduciary has received a prospectus for the Edward Jones Money Market Fund that includes a summary of all fees that may be paid by this fund to Edward Jones, and its affiliates, which may be used to compare the nature and extent of any fee differential.

- The Advisory Solutions Fee will not be charged with respect to Account assets invested in the Edward Jones Money Market Fund.

On the basis of the foregoing, the Named Fiduciary or the Directing Fiduciary authorizes, approves and consents to the investment of the assets of the Account in the Edward Jones Money Market Fund and redemptions, without limitations, as part of Edward Jones' management of the Account, and the payment of fees to Edward Jones, or its affiliates, by the Edward Jones Money Market Fund that are incidental to such investments therein as described in the prospectus.

**Reliance on Representations**

The Client and the Named Fiduciary or the Directing Fiduciary, as the case may be, acknowledge and agree that Edward Jones is entitled to rely on the representations and warranties of the Client and the Named

Fiduciary or the Directing Fiduciary, as the case may be. The Client agrees to notify Edward Jones immediately if any of its (or the Named Fiduciary's or the Directing Fiduciary's, as the case may be) representations, warranties, objectives, undertakings, or acknowledgements pertaining to the Plan or Tax–Qualified Plan ceases to be true. Edward Jones shall not be required to independently verify the accuracy of information furnished by the Client or Named Fiduciary or the Directing Fiduciary, as the case may be, in order to rely upon the information provided thereby.

**7. Services Provided by Edward Jones**

Edward Jones provides the following reports and services for the Program in addition to other services described elsewhere in the Agreement:

**Financial Advisor Consultations**

Client's financial advisor or an Edward Jones associate will be reasonably available to discuss Client's Account as well as Client's financial situation, investment objectives and/or risk tolerance in connection with the Account during normal business hours.

**Trade Confirmations**

Client will receive trade confirmations for each transaction in the Account as provided for under applicable law. Clients who select a Research Model can waive their right to receive confirmations on buy or sell transactions of existing positions effected in their Account. Confirmations will not be sent to Client on mutual fund transactions made pursuant to a systematic investment or withdrawal and for dividend and/or capital gains reinvestment.

**Reports**

After the Account has been invested for one full calendar quarter, Edward Jones will provide Client with a performance report showing all the investments held in the Account, a summary of the allocation of the assets held in the Account

and a rate of return for the account compared to certain industry averages or benchmarks. The format of the performance report may be modified at the discretion of Edward Jones. Updates to the target asset allocations will be noted on the performance reports.

Edward Jones will also provide a brokerage statement to the Client for each month there is activity in the Account. Edward Jones may change the form and substance of these statements at any time in its sole discretion. Client agrees to review all reports, statements, confirmations, and cash balances for accuracy within ten (10) calendar days of receiving the reports and will notify Edward Jones in writing of any inaccuracy. All reports, statements, confirmations and cash balances shall be deemed conclusive if not objected to within ten (10) calendar days.

Edward Jones derives the information and data for the reports from multiple sources. While Edward Jones will not knowingly use any information it knows to be inaccurate, Edward Jones does not independently verify the information and cannot guarantee its accuracy.

### Reinvestment of Dividends and Cash Sweeps

Cash additions to an Account made by the Client or from dividends and/or capital gains from an ETF will automatically be swept into and invested in the Edward Jones Money Market Fund and will then be managed according to the terms of this Agreement and the IPS thereafter. Dividends and/or capital gains received on mutual fund shares held in an Advisory Solutions Account will be automatically reinvested in additional shares or fractional shares of the same mutual funds, if permitted, subject to procedures described in the applicable prospectus.

## 8. Advisory Solutions Fee

**All Clients (including Traditional, Roth, SIMPLE and SEP IRAs, Tax–Qualified Plans and Employer–Sponsored Plans) will pay Edward Jones certain annual fees for participating in the Program ("Advisory Solutions Fee").**

The Advisory Solutions Fee for Benefit Plan Clients that are Tax–Qualified Plans will equal the Program Fee specified in the Benefit Plan Program Fee Schedule below, net of any applicable Fee Offset. "Benefit Plan Clients" mean Tax–Qualified Plans (other than Traditional and Roth IRAs) and Employee–Sponsored Plans, including all SIMPLE and SEP IRAs.

For all other Clients, which include Traditional and Roth IRAs, the Advisory Solutions Fee will be comprised of two subparts: the Program Fee as specified in the General Program Fee Table below and the Administrative Fee, net of any applicable Fee Offset.

**All Clients are subject to a minimum monthly Advisory Solutions Fee of $10.00 per month.**
**Program Fee – All Clients** (including Traditional and Roth IRAs and Benefit Plan Clients) in Advisory Solutions will pay to Edward Jones a fee based on the value of the Program Funds held in their Account at an annualized fee rate, payable monthly in arrears, for the advisory services as described herein ("Program Fee"). The Program Fee compensates Edward Jones for providing advisory services to Client. A portion of the Program Fee is paid to the financial advisor. Any cash balances held in the Edward Jones Money Market Fund are not included in the calculation of the Program Fee.

The following outlines the Program Fee assessed on Advisory Solutions Accounts, by Client type:

### General Program Fee Table
This General Program Fee Table applies to all Clients, other than Benefit Plan Clients. To clarify, this fee table includes Edward Jones

Traditional and Roth IRA Advisory Solutions Accounts but not SIMPLE and SEP IRAs.

| Value of Assets | Annual Fee Rate |
|---|---|
| First $500,000 | 1.35% |
| Next $500,000 | 1.25% |
| Over $1,000,000 | 1.00% |

**Benefit Plan Program Fee Table**
This Benefit Plan Program Fee Table applies to all Benefit Plan Clients, which includes Tax–Qualified Plans (other than Traditional and Roth IRAs), Employer–Sponsored Plans and all SIMPLE IRAs and SEP IRAs.

| Value of Assets | Annual Fee Rate |
|---|---|
| First $500,000 | 1.50% |
| Next $500,000 | 1.40% |
| Over $1,000,000 | 1.15% |

Program Fees may be discounted or reduced at the discretion of the financial advisor and/or Edward Jones, as described in more detail in the Brochure. Edward Jones may combine certain Advisory Solutions Accounts of the same Client and/or for related clients for the purpose of computing the Program Fee.

**Administrative Fee –** As provided for above, Clients that are subject to the General Program Fee Table will pay an annual administrative fee of 0.09% (nine basis points) based on the value of the Program Funds held in its Account, payable monthly in arrears, for recordkeeping, accounting services and other services to be provided by Edward Jones with respect to the Account ("Administrative Fee"). Any cash balances held in the Edward Jones Money Market Fund are not included in the Administrative Fee calculation.

**Other Fees –** In addition to the Advisory Solutions Fee described above, Clients may incur other fees and expenses, including, but not limited to, fees to distribute an account pursuant to a transfer on death agreement, an account transfer fee and/or an account termination fee.

**Fee Offset –** Edward Jones may receive compensation from Program Funds and/or their advisers or distributors with respect to Program Funds, which will be used to offset portions of the Program Fee and Administrative Fee ("Fee Offset"), as follows:

- A Program Fund may pay Edward Jones Rule 12b-1 (distribution) fees. If an Account holds shares of a Program Fund that pays Edward Jones 12b-1 fees, Edward Jones will apply a Fee Offset against that Client's Advisory Solutions Fee equal to the amount of 12b-1 fees received by Edward Jones with respect to the Client's Account.

- A Program Fund may also pay Edward Jones shareholder servicing fees for customer accounting and administrative services ("Shareholder Accounting Revenue"). Edward Jones will apply a Fee Offset against a Client's Advisory Solutions Fee in the following manner: (i) For Client Accounts that are subject to the General Program Fee Table (excluding Accounts owned by persons related to or affiliated with Edward Jones), Edward Jones will collect the Shareholder Accounting Fees generated by these accounts during the billing period and then allocate the applicable Fee Offset, pro rata, based on the value of the Program Funds held in each Account; or (ii) For Benefit Plan Clients (i.e. Clients not subject to the General Program Fee Table) and Accounts owned by persons related to or affiliated with Edward Jones, Edward Jones will apply a Fee Offset equal to the amount received by Edward Jones for these services with respect to the actual Program Funds held in the Client's Account.

Where the Client's Account invests in an affiliated mutual fund (other than the Edward Jones Money Market Fund), the affiliated mutual fund, like the other Program Funds, will incur internal fees and expenses payable to both service providers and Edward Jones (and its affiliates). As discussed more fully in the

Brochure, with respect to the amounts received by Edward Jones and its affiliates from an affiliated mutual fund (other than the Edward Jones Money Market Fund), by reason of your Account's investment, such amounts will first be used to compensate the fund's third–party sub–advisers and certain other service providers with any remaining amounts (if not otherwise waived by Edward Jones or its affiliate) to be credited back to the Client's Account and offset against the Program Fee. Please note that Edward Jones or its affiliate has entered or intends to enter into an agreement with each affiliated mutual fund, which can be terminated at any time, to waive any such remaining amounts in order to avoid the need to credit or offset fees.

Any Fee Offset applied by Edward Jones against a Client's Advisory Solutions Fee will be shown on the Client's brokerage statement. Edward Jones will determine the amount and manner in which any Fee Offset is calculated and applied to an Account.

The Advisory Solutions Fee does not include, and is in addition to, internal fees and expenses charged by Program Funds. Internal fees and expenses are fully explained in the individual prospectuses or other disclosure statements of the Program Funds. Certain mutual funds included in the Program may also charge a redemption fee if the mutual fund is held less than twelve (12) months. The mutual fund may be redeemed in order to pay the Advisory Solutions Fee, to rebalance the Account, or to delete a mutual fund that has been removed from the Program List by Edward Jones. Clients should refer to the individual fund prospectus, the Brochure, and other disclosure documents for more information regarding internal fees and expenses and redemption fees. Internal fees and expenses and any redemption fee charged by a Program Fund will reduce the performance of an Account.

The Advisory Solutions Fee will be calculated and assessed to an Advisory Solutions Account on a monthly basis in arrears. The Advisory Solutions Fee is calculated by multiplying the applicable fee rate (comprised of both the Program Fee and Administrative Fee, where applicable) by the net asset value of the Program Funds held in the Account (using the previous month's average daily market balance), net of any Fee Offsets that may be applied by Edward Jones. The initial Advisory Solutions Fee will be charged to the Account in the month following the date the Account was eligible for the Program based upon the average daily market value to month end.

If the Advisory Solutions Account is closed and the Client requests that Edward Jones liquidate the Account assets, the final Advisory Solutions Fee will be assessed based on the number of days the Advisory Solutions Account was opened during the month and based on the average daily market value, including the day the Advisory Solutions Account was closed. If the Client terminates the Agreement but does not wish to liquidate the assets or the Client transfers the assets out of the Account, the final Advisory Solutions Fee will be assessed based on the number of days the Advisory Solutions Account was opened and based on the average daily market value using the prior day's price to determine a market value on the final day in order to calculate the closeout fee.

Edward Jones reserves the right to modify the Advisory Solutions Fee upon thirty (30) days written notice to Client. Edward Jones may change its billing cycle at its discretion without notifying the Client.

Client agrees that the Advisory Solutions Fee will be charged to the Account and authorizes Edward Jones to debit the cash or money market fund balance in the Account for payment of such fees. If the Account does not contain sufficient cash or money market fund balances to pay the fees, Client authorizes Edward Jones to automatically redeem or sell other Program Funds in the Account in an amount necessary to

satisfy the debit balance. The Advisory Solutions Fee paid will be shown on the Client's Quarterly Performance Report and brokerage statements.

## 9. Voting of Proxies

Effective December 9, 2011, Edward Jones is responsible for evaluating and voting proxies arising from Program Funds in a Client's Account unless the Client specifically retains the right to vote proxies. Edward Jones will not accept proxy voting delegation for Benefit Plan Clients as defined in Section 8 of this Agreement. If you transfer non–Program Fund investments to open an Advisory Solutions account, Edward Jones may also vote proxies for those securities if the date of record occurs before the securities are liquidated. By delegating proxy authority, you also authorize Edward Jones to receive all proxy–related materials, annual and semi–annual reports and other shareholder materials, including corporate actions, arising from any Program Funds or other securities in the Account.

Edward Jones will, in accordance with applicable law, vote proxies in the best interests of its Clients and in a uniform manner in accordance with the firm's proxy voting policy and established voting guidelines, which Edward Jones may change at its discretion.

If you want to retain your right to vote on these issues you must inform Edward Jones that we are not to vote on your behalf. Benefit Plan Clients, for whom we will not vote proxies, and those Clients that wish to retain their right to vote proxies, will then continue to receive all materials and notices from Edward Jones or the applicable mutual fund company and you will be responsible for voting on the issues that the fund companies raise. If the Client is a Benefit Plan Client or has otherwise retained the authority to vote proxies on Program Funds, Client retains the responsibility to vote the proxy, and Edward

Jones will not provide recommendations or advice on how to vote the proxies.

Edward Jones has engaged an independent third party proxy voting service to provide assistance in connection with proxy voting. Edward Jones has adopted proxy voting policies and procedures and predetermined voting guidelines that Edward Jones believes will minimize potential conflicts of interest. A copy of Edward Jones' proxy voting policy and procedures, voting guidelines and proxy voting record can be obtained by contacting your financial advisor or by writing to us at: Edward Jones, Attention: Investment Advisory, 12555 Manchester Road, St. Louis, Missouri 63131.

## 10. Legal Notices

Edward Jones will not take any action and will not render any advice regarding any legal action on Client's behalf relating to the Program Funds or other assets (including shares of the Edward Jones Money Market Fund) held in the Account that may become subject to any legal, regulatory action, administrative action, class action lawsuit and/or bankruptcy. However, Edward Jones will promptly forward any documents it receives to Client.

## 11. Acceptance, Assignment and Termination

This Account will be effective upon execution of this Agreement by Client and acceptance of the Account by Edward Jones.

Edward Jones will commence management of the Account upon the later of: 1) the acceptance of this Agreement by Edward Jones or 2) the funding of the Account at the initial minimum investment as determined by Edward Jones.

Edward Jones may not assign (as this term is defined under the Investment Advisers Act of 1940) this Agreement without Client's consent. Client acknowledges that client consent can be given under a negative consent procedure, in which case Client will receive written notice of a

pending transaction from Edward Jones and will have thirty (30) days to provide Edward Jones with a written objection to the assignment.

This Agreement can be terminated by Edward Jones or the Client at any time. If the Agreement is terminated by either party, Edward Jones will no longer be acting as an investment adviser but only as a broker–dealer pursuant to the terms of your brokerage account agreement. Edward Jones assumes no investment discretion once the advisory relationship ceases and will no longer monitor the Asset Allocation in the Account. Client will be responsible for making all the investment decisions after the Agreement is terminated and Edward Jones will not be obligated to recommend any action with regard to the assets in the Account. Edward Jones retains the right to complete any open transactions as of the date of termination and to retain amounts in the Account sufficient to effect their completion. Upon termination of the Agreement, Edward Jones will cease to charge the Advisory Solutions Fee, and all transactions will be subject to commissions and sales charges.

If either party terminates this Agreement, Client agrees to provide Edward Jones with instructions regarding the securities in the Account. Client may request that Edward Jones sell the securities, convert the Account to a traditional brokerage account or transfer the securities to a third party account. Some mutual funds and/or fund share classes may not be held in a non–advisory account; in these cases, Edward Jones will sell those shares for the Client or will exchange the mutual fund share class into a share class that can be held in a non–advisory account. Furthermore, if at the time of termination, the Account is below a certain minimum value as determined by Edward Jones, Client understands and agrees that Edward Jones may liquidate the securities and hold the proceeds of the liquidation in cash in the Account until Edward Jones receives further instructions from the Client.

Termination of the Agreement shall not alter the liabilities or obligations of the parties incurred prior to such termination. The provisions of Sections 14, 15 and 18 shall survive the termination of this Agreement.

## 12. Confidentiality

In the course of investment banking, research or other activities, Edward Jones or its affiliates may acquire confidential or material nonpublic information. Client understands and agrees that Edward Jones is not free to, and will not, divulge this information, and will not take any action in regard to the Account upon this information. Edward Jones and its affiliates and any officer, principal, employee or any member of their families may have an interest in the securities in which Edward Jones may from time to time effect purchases and sales under this Agreement. Edward Jones may give advice with respect to these securities, which advice may differ from the timing and the nature of the action taken by Edward Jones or any of its affiliates or any officer, director, principal, employee or any member of their families with respect to these securities.

## 13. Scope of the Agreement

This Agreement and the related account opening documents represent the entire agreement among the parties with regard to the Program. Edward Jones may amend, delete and/or add any provision pertaining to this Agreement, including fees, by sending Client written notification, with the exception of changes to the billing cycle, for which Client will not be notified in advance. The effective date of the modification will be thirty (30) days from the date of the notification or a later date specified by Edward Jones. If the Client does not give Edward Jones a written notice that the Client is objecting to the modification or change within thirty (30) days, Client will be deemed to have accepted the modification or change.

Client understands that there may be separate and/or additional fees charged pursuant to the Edward Jones Account Agreement or Edward Jones Retirement Account Agreement, which was signed at account opening.

In the event of an inconsistency or discrepancy between this Agreement and any other agreement or document, the following rules shall be used to resolve the inconsistency or discrepancy: 1) if the inconsistency or discrepancy relates to the services provided under this Agreement, then the terms of this Agreement shall govern, or 2) if the inconsistency or discrepancy relates to a particular account type or additional service, then the terms of the Agreement or document for that account type or service shall govern.

### 14. Severability/Governing Law

If any provision of this Agreement is or becomes invalid, the remaining provisions shall remain in full force and effect. This Agreement shall be construed and enforced in accordance with the laws of the State of Missouri without reference to choice of laws or conflicts of law doctrine.

### 15. Communications/Notices

Client will send any written notice required under this Agreement to 12555 Manchester Road, Saint Louis, Missouri, 63131 (Attn: Advisory Solutions Operations) or any other address specified by Edward Jones. Such notices will be effective upon receipt. Edward Jones may, in its sole discretion, provide or accept notice in any other form, such as orally or by telephonic or electronic media.

Any communications required to be sent to Client will be sent to the address provided on new account opening documents or any address that Client provides to Edward Jones in the future. All communications sent to Client at the address given by the Client, either by mail, facsimile, overnight courier, electronically or otherwise, will be treated as if they were given to Client in person, whether or not the Client received them.

If the Client has elected to receive statements and/or other materials via email, notice may be provided by email to the Client at the Client's email address as set forth in Edward Jones' records. Such notice will become effective when sent. Further, Edward Jones may post notice on its website, which notice will become effective when posted.

### 16. Arbitration Disclosure

**This Agreement contains a pre–dispute arbitration clause. By signing an arbitration agreement, the parties agree as follows:**

**a. All parties to this Agreement are giving up the right to sue each other in court, including the right to a trial by jury, except as provided by the rules of the arbitration forum in which a claim is filed.**

**b. Arbitration awards are generally final and binding; a party's ability to have a court reverse or modify an arbitration award is very limited.**

**c. The ability of the parties to obtain documents, witness statements and other discovery is generally more limited in arbitration than in court proceedings.**

**d. The arbitrators do not have to explain the reason(s) for their award unless, in an eligible case, a joint request for an explained decision has been submitted by all parties to the panel at least 20 days prior to the first scheduled hearing date.**

**e. The panel of arbitrators will typically include a minority of arbitrators who were or are affiliated with the securities industry.**

**f. The rules of some arbitration forums may impose time limits for bringing a claim in arbitration. In some cases, a claim that is**

ineligible in arbitration may be brought in court.

g. The rules of the arbitration forum in which the claim is filed, and any amendments thereto, shall be incorporated into this Agreement.

Client agrees that this Agreement shall be governed by the laws of the State of Missouri, and Federal Arbitration Act, where applicable, without giving effect to the choice of law or conflict of laws provisions thereof. Any controversy arising out of or relating to any accounts or transactions with Client, present or former officers, directors, agents, and/or employees for the Client, to this Agreement, or to the breach thereof, or relating to transactions or accounts maintained by Client or any other account in which Client has a beneficial interest, with any of Client's predecessor or successor firms by merger, acquisition or other business combinations, from the inception of such accounts shall be settled fully and finally by binding arbitration in accordance with the rules then in effect of the Financial Industry Regulatory Authority. Judgment upon any award rendered by the arbitrators may be entered in any court, state or federal, having jurisdiction thereof.

No person shall bring a putative or certified class action to arbitration, nor seek to enforce any pre–dispute arbitration agreement against any person who has initiated in court a putative class action, or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until: (i) the class certification is denied; or (ii) the class is decertified; or (iii) the customer is excluded from the class by the court. Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver of any rights under this Agreement except to the extent stated herein.

A copy of this arbitration agreement is hereby given to the Client, who shall acknowledge receipt thereof on the Agreement or on a separate document.

If a Client files a complaint in a court of law or equity against Edward Jones or its present or former employees, officers, or directors that contains claims that are subject to arbitration pursuant to a pre–dispute arbitration agreement between Edward Jones and the Client, Edward Jones may seek to compel arbitration of the claims that are subject to arbitration.

If Edward Jones prevails in any action or arbitration against Client in order to collect a debt from Client, Client agrees to pay all fees and costs, including attorneys' fees that Edward Jones incurs in connection with bringing the action or arbitration or collecting the debt.

## 17. Miscellaneous

Edward Jones, at its sole discretion, may refuse to accept any Account for any reason.

Edward Jones is not responsible for any delays due to acts beyond its reasonable control; however, Edward Jones agrees to use commercially reasonable efforts to avoid or remove such acts and resume its duties under this Agreement as soon as such acts can be removed.

## 18. Indemnification and Limits of Responsibility

Client will, to the fullest extent permitted under applicable law, indemnify Edward Jones and hold it harmless from any claim that Client did not have the authority to enter into this Agreement. Client shall also, to the fullest extent permitted under applicable law, indemnify Edward Jones and hold it harmless from any claim that a transaction was unauthorized if it was effected pursuant to instruction given by Client or any authorized individual, or if it was effected in accordance with information Client provided Edward Jones about Client's current financial situation, investment objectives,

policies or other information applicable to the Account.

Edward Jones hereby agrees to provide its best judgment and efforts in rendering the services to the Client's Account. Specifically, the Client understands and agrees that all transactions shall be at Client's risk and that Edward Jones and its affiliates and their respective officers, directors, employees, and agents are not guaranteeing, or otherwise making representations with respect to the performance of the Account or any particular Program Fund or Research Model

Client further agrees that Edward Jones and its affiliates and their respective officers, directors, employees, and agents, to the fullest extent permitted under applicable law: (i) shall not be liable for any losses with respect to the Account except those arising out of its or their own willful misfeasance, bad faith, gross negligence or reckless disregard of their obligations under this Agreement or as otherwise may be provided by law; (ii) shall not be liable for the actions, or failures to act by the Program Funds and their investment managers, sub–advisers and other service providers including, without limitation, the compliance of those Program Funds with applicable law or the conformity of the Program Fund's transactions and portfolio holdings to its stated investment objectives and policies; (iii) shall not be responsible for any misstatement or omission contained in a Program Fund prospectus or other material filed with the SEC, or other written statements concerning the Program Fund that were approved by the Program Fund or its distributor for distribution to its shareholders, or any loss whatsoever attributable to the misstatement or omission; (iv) shall not be liable to the Client or any third party for any tax, fines, or penalties payable by the Client and the Client agrees to indemnify Edward Jones for any such tax, fines, or penalties; (v) shall not be liable for any non– direct, special, consequential, incidental or similar type damages; and (vi) shall not be liable for any losses caused directly or indirectly by

conditions beyond its control, including, but not limited to, government restrictions, exchange controls, suspension of trading, act of war, strikes or extreme market volatility or trading volumes.

Notwithstanding the foregoing, nothing contained in this section or elsewhere in this Agreement shall constitute a waiver by Client of any of its legal rights under applicable federal or state law or any other laws whose applicability is not permitted to be contractually waived.

## 19. Client Representations and Warranties

Client understands the following:

(i) Investing through the Program involves assuming risk, and a Client's overall investment portfolio should be balanced and diversified as appropriate in view of the Client's investment objectives, risk parameters and liquidity needs. Client acknowledges that the Research Model or Custom Model chosen by Client in Client's Account meets Client's needs in view of Client's overall financial situation and that this selection may be different from the typical investment allocation for the investor type that was presented based on the information Client provided.

(ii) A Program Fund's past performance is not a guarantee of future performance, and a Client may incur losses in the Account. Client has considered the possibility of losing money before deciding to participate in the Program.

(iii) Recommendations given to Client may be different from the recommendations given to other clients participating in the Program even if those clients have the same Portfolio Objective and/or are in the same model.

(iv) Advisory Solutions is only one of many investment products or services offered through Edward Jones, although not every product or service will be or has been presented by the financial advisor.

(v) Mutual funds, ETFs and money market funds can be purchased directly through other alternatives, including through a brokerage account, subject to sales charges and/or commissions. An Advisory Solutions Fee would not be assessed, therefore making a brokerage account alternative generally a lower cost alternative for the long term investor. A Client choosing Advisory Solutions should believe the investment advisory and other services provided under this Agreement will add value to their overall investment experience that more than justifies the additional expenses.

(vi) Certain mutual funds offered through Advisory Solutions are advised by an Edward Jones affiliate and sub–advised by multiple sub–advisers who are unaffiliated with Edward Jones.

(vii) Edward Jones makes no representations as to how quickly uninvested cash, including redemption proceeds from ineligible securities, will be invested into the Program Funds of the Research Model or Custom Model chosen by Client for the Client's Account.

(viii) Edward Jones makes no representation as to how quickly proceeds from the sale of Program Funds may be reinvested. Client understands that in such circumstances, Client's assets may not be fully invested and may be subject to market risk between the redemption date and the reinvestment of the assets.

(ix) Client acknowledges that institutional share classes of mutual funds may have a shorter settlement period than retail share classes. Client acknowledges that Edward Jones will not initiate initial purchases for an Account until 1) proceeds from any sale transactions are available and 2) the Account has been funded at the initial minimum investment as determined by Edward Jones.

(x) Client agrees that Edward Jones will not provide legal, accounting or actuarial advice nor will Edward Jones prepare any legal, accounting or actuarial documents. Client should consult with its legal or tax professional about the consequences of investing in securities through the Program.

## 20. Conduct of Edward Jones not Waiver

Client acknowledges that Edward Jones may fail to insist on strict compliance with the Agreement, any Agreement terms or any continued course of its own conduct, and that these actions will not constitute or be considered a waiver by Edward Jones of any of its rights hereunder.

### 21. Acknowledgement of Receipt of Brochure

Client represents and acknowledges that Client has received and read the Brochure, which describes the Program in greater detail. After reading the Brochure, Client made its own decision to invest in the Program.

**Client acknowledges that this Agreement contains important arbitration disclosures and a pre–dispute arbitration clause in Section 16. Client acknowledges receipt of this Agreement, including the pre–dispute clause. By signing this Agreement, and thus accepting the terms and conditions of the pre–dispute arbitration clause, the Client understands that he/she is, among other things, agreeing to waive his/her right to seek remedies in court, including the right to a jury trial.**

### Client Signature(s)

By signing below, Client acknowledges acceptance of the terms and conditions set forth in the Client Agreement in their entirety without alteration.

Note: If more than one, all principals to the Account must sign; if any signatory is a fiduciary or business officer, the capacity or title in which the fiduciary or officer is acting must also be indicated.

Date

Name of Client (please print or type) and Title

Signature of Client

Date

---

**Trade Confirmation Suppression Election – Only Applicable to Research Model Clients**

By initialing here, Client instructs Edward Jones to suppress the mailing of trade confirmations ("confirmations") for buy or sell transactions effected in Client's Account. This may include confirmations of initial transactions and/or subsequent transactions. In lieu of individual confirmations, Client will receive monthly brokerage statements containing the required trade information. Suppressing confirmations may affect Client's ability to promptly monitor the trading activity and investment decisions made by Edward Jones. Client may withdraw this election at any time and receive confirmations for all trades in the Account at no additional charge. Confirmation suppression is neither a precondition to the Program nor will it have any effect on Client's Advisory Solutions Fee.

Note: Clients selecting Edward Jones Online Account Access have access to all confirmations regardless of whether they elect confirmation suppression.



Edward **Jones**
MAKING SENSE OF INVESTING