# EXHIBIT 18

# EDWARD JONES GUIDED SOLUTIONS™
## Flex Account Client Services Agreement

This Client Services Agreement is incorporated into and is part of the Account Authorization and Agreement Form (collectively the "Agreement") signed by one or more persons or entities (collectively the "Client," "me," "my," "I," "we" or "our") and constitutes a binding investment advisory contract between Edward D. Jones & Co., L.P. ("Edward Jones") and me in order to establish Edward Jones Guided Solutions™ Flex Account services for my account (the "Account"). I am a natural person of legal age with the ability to enter into this Agreement or the representative of an entity with the authority to enter into this Agreement.

This Agreement sets forth the terms and conditions relating to my participation in Edward Jones Guided Solutions™ Flex Account ("Guided Solutions"). I represent that I have read and understand the Agreement and agree to be bound by its terms and conditions, as well as those set forth in the separate agreements, disclosures and notices referenced in and/or provided with this Agreement, including, as applicable, the Edward Jones Account Agreement, Edward Jones Trust Company ("EJTC") IRA Custodial Agreement, Edward Jones IRA Custodial Agreement and/or Edward Jones Retirement Account Agreement (collectively, "Brokerage Account Agreements"), and the Edward Jones Guided Solutions™ Flex Account Brochure (the "Brochure").

1. Edward Jones Guided Solutions™

Edward Jones offers client-directed investment advisory services to clients through Guided Solutions.

In consultation with my Edward Jones financial advisor, I will select an appropriate portfolio objective, which determines the recommended asset allocation and investment category ranges as explained in the Brochure (my "Portfolio Objective"). The recommended investment category ranges are determined solely by Edward Jones and can be modified by Edward Jones without prior notice to me. Edward Jones will have no authority to change my Portfolio Objective without my instruction.

Once I have selected my Portfolio Objective, I will select investments available for Guided Solutions ("Eligible Investments"), as explained in the Brochure.

I understand and agree that I will not be able to hold any investment in my account that Edward Jones has deemed ineligible for Guided Solutions ("Ineligible Investment"). In the event that Edward Jones re-categorizes an investment to an Ineligible Investment, Edward Jones will notify me, and I agree to remove the security from my account within the time frame determined by Edward Jones. I agree that if I do not provide instructions to remove the Ineligible Investment as explained in the Brochure, my Account will be removed from Guided Solutions.

I understand and agree that Eligible Investments may include the Edward Jones Money Market Fund, as explained in the Brochure. Edward Jones has an ownership interest in the manager of the Edward Jones Money Market Fund and Edward Jones receives various revenues related to assets in the Money Market Fund.

Cash balances in my Account will be automatically swept into the Edward Jones Money Market Fund. Any amount of my Account's investment in the Edward Jones Money Market Fund will be held there until I invest it in another Eligible Investment in my Account in accordance with the terms of this Agreement. I understand and agree that my Account must be aligned over time to my Portfolio Objective and to Edward Jones' guidance regarding certain factors including, but not limited to, security overconcentration, bond diversification, fixed income ladder and sector overconcentration ("Investment Diagnostics"), which are determined by Edward Jones and are subject to change.

Edward Jones will monitor my Account and will notify me when my Account is out of alignment with my Portfolio Objective or Investment Diagnostics as explained in the Brochure. I agree that if I do not provide instructions to bring my Account back in alignment within the time frame determined by Edward Jones, my Account will be removed from Guided Solutions. I understand that current and timely information about my account will be available in Edward Jones' online client access system, which I may access and use to make investing decisions.

2. Opening a Guided Solutions Account

**Client Information –** I have made an independent determination to participate in Guided Solutions based on my assessment of the source and amount of assets that I have available for Guided Solutions, the time horizon that I expect to be in Guided Solutions and my financial situation, investment objectives and risk tolerance.

I have completed a Client Profile, which includes important information about my Account, including responses to the Investment Objective Questionnaire, in order to assist me in selecting an appropriate Portfolio Objective. I represent that all information contained within the Client Profile is true and accurate. Edward Jones will rely on the information I provide in the Client Profile in order to recommend a Portfolio Objective. I agree to promptly notify Edward Jones by contacting my financial advisor of any change in the information that I have provided to Edward Jones, including, but not limited to: my financial situation, investment objectives and/or risk tolerance and any other information provided by me in the Client Profile. Edward Jones is under no obligation to verify whether the information has changed. I may be required to complete a new Client Profile in order for Edward Jones to recommend a modification of my Portfolio Objective after considering such change.

**Investment Policy Statement –** I understand and agree that Edward Jones and its financial advisors will not review, monitor, accept or adhere to an investment policy statement or similar document that was not prepared by Edward Jones. Adherence to any such investment policy statement is my responsibility.

**Initial Funding –** In order to establish a Guided Solutions Account, I agree to transfer cash and/or marketable securities into the Account. If I transfer into the Account marketable securities that are Ineligible Investments, I agree to give instructions to Edward Jones, to sell or otherwise remove them from my Account within the time frame determined by Edward Jones. I understand and agree that these instructions to sell such securities may result in taxable gains or tax losses to me.

If, when I open my Account, or upon any subsequent funding, I transfer into the Account shares of mutual funds that are Eligible Investments, it may be necessary to convert my existing share class for a class determined by Edward Jones to be appropriate for Guided Solutions. I understand and agree that Edward Jones may convert the class of shares transferred in for another class of shares of the same Eligible Investment selected by Edward Jones. I understand that all conversions could result in higher or lower fees than those paid under the previous share class. Taxable gains, tax losses, redemption fees or sales charges may be assessed upon the liquidation or redemption of securities. I understand that these fees and expenses may negatively affect my investment performance.

I acknowledge that my account is subject to investment and maintenance minimums which are determined by Edward Jones and are subject to change. I acknowledge that margin lending is not permitted in the Account.

**Custody of Assets –** I agree to maintain custody of all assets in my Account at Edward Jones, located at 12555 Manchester Road, St. Louis, Missouri 63131. For all Edward Jones traditional and Roth IRA Guided Solutions Accounts, I agree to maintain custody of all assets at EJTC, located at 12555 Manchester Road, St. Louis, Missouri 63131. EJTC will employ Edward Jones as a sub–custodian subject to my EJTC IRA Custodial Agreement. My brokerage account will be used to receive and credit Eligible Investments and other assets for the Account and all dividends, capital gains and redemptions received by Edward Jones on the assets of the Account.

3. Trading and Execution Services

**Trading –** I am responsible for all trading and investment decisions in my Account. Neither Edward Jones nor its financial advisors will have authority for any trading or investment decisions in my Account, except as otherwise described in this Agreement.

**Trade Execution –** I authorize and direct all transactions in my Account to be effected by or through Edward Jones, acting as agent or, to the extent permitted by law, as principal as explained in the Brochure. I understand that the direction by me to trade through Edward Jones may result in less advantageous execution, including greater spreads (the difference between the bid and the offer price) and less favorable net prices, than if an unaffiliated broker-dealer were to execute the transaction.

When Edward Jones is executing transactions for my Account, it is not acting as an investment

adviser but solely as a broker-dealer. Edward Jones will arrange for delivery and payment in connection with the execution services rendered to me, and I authorize Edward Jones to act on my behalf in all other matters necessary or incidental to the handling of my Account. Transactions in my Account will be made in accordance with the trading practices of Edward Jones as explained in the Brochure.

**Share Class Conversion** – I understand and agree that Edward Jones may convert any class of mutual fund shares that are Eligible Investments in my Account for another class of shares of the same Eligible Investment selected by Edward Jones. I understand that all conversions could result in higher or lower fees than those paid under the previous share class.

**Authorization for Principal Transactions** – I authorize Edward Jones to execute transactions for my Account in a principal capacity, which includes selling any security from Edward Jones' inventory to my Account, or purchasing any security from my Account for Edward Jones' inventory. Edward Jones may commonly engage in principal trades for my Account in order to increase the range of investment opportunities or trade executions available to me and consistent with its pricing and sales practice obligations. Principal trades may cause a conflict between Edward Jones' interests and mine, including the possibility that Edward Jones receives additional compensation such as a transaction payment included in the price of the security. To help minimize this conflict, if Edward Jones executes trades on a principal basis in my Account, a transaction payment to Edward Jones will not be included in the price of the security but the value of the security will be included in the calculation of the Program Fee. Edward Jones may also act as principal in selling securities to my Account during offerings underwritten by Edward Jones. I agree to pay any applicable new issue payments in connection with these offerings. However, the value of these securities will be excluded from the calculation of the Program Fee for a time period determined by Edward Jones. I authorize Edward Jones to effect any and all principal transactions with my Account without having to provide specific written disclosures or obtain my written consent prior to executing each proposed principal trade, in accordance with the requirements of Rule 206(3)-3T under the Investment Advisers Act of 1940. In each principal transaction, Edward Jones will provide certain disclosures and obtain my verbal consent prior to the trade. **I acknowledge that I may revoke this authorization to allow Edward Jones to trade as principal with my Account without penalty at any time by notifying my Edward Jones financial advisor in writing.**

4. Tax and Risk

I understand that existing assets in my Account will be sold at my direction at various times, including but not limited to when the Account is funded, during the ongoing investment of the Account, when the Account is out of alignment and, under certain circumstances, when the Account is terminated from Guided Solutions. I am responsible for any resulting tax liabilities, fees and charges. I confirm that I have had the opportunity to consult with a tax advisor and/or other qualified tax professionals before deciding to participate in Guided Solutions.

I understand that all investments involve risk and that investment performance and the value of the Account will fluctuate depending on factors that cannot be controlled by Edward Jones.

5. Employer-sponsored Plans and Other Retirement Accounts

This section applies if the Account is for a: (i) tax-qualified retirement plan under section 401(a) of the Internal Revenue Code of 1986, as amended (the "Code"), and not covered by the Employee Retirement Income Security Act of 1974, as amended ("ERISA"); or (ii) an Individual Retirement Account ("IRA") under Section 408 or Section 4975 of the Code. If the Account is an IRA subject to ERISA, I appoint Edward Jones, and Edward Jones accepts its appointment, as an "investment manager" under Section 3(38) of ERISA (but only with respect to the selection of securities that might be liquidated in order to pay the Program Fee (as described below)), and Edward Jones acknowledges that it is a "fiduciary" within the meaning of Section 3(21) of ERISA and Section 4975(e)(3) of the Code (but only with respect to the provision of services described in Section 1 of this Agreement). Similarly, if the Account is for a plan or IRA not subject to ERISA, Edward Jones acknowledges that it is a "fiduciary" within the meaning of Section 4975(e)(3) of the Code (but only with respect to the provision of services described in Section 1 of this Agreement). Edward Jones shall not, by reason of this Agreement, be responsible for acting as a fiduciary with the respect to the administration of

the plan or otherwise provide administrative or trustee services.

I represent that the person executing this Agreement on behalf of a plan or IRA, as applicable: (A) is a "Named Fiduciary," as that term is defined in ERISA, with respect to an ERISA plan and/or a person holding a position similar to that of a "Named Fiduciary" under a similar law with respect to a tax-qualified plan (each, a "Fiduciary"), (B) is authorized under provisions of the plan document (including any trust document related thereto) to enter into this Agreement and to retain Edward Jones to perform the services set forth in this Agreement, (C) is not prohibited from acting as a Fiduciary with respect to the plan and (D) is independent of and unrelated to Edward Jones, its affiliates and my financial advisor. The Fiduciary and I acknowledge that it is our responsibility to review the plan documents and the applicable laws and regulations applicable to the plan and its operation to determine that the arrangements contemplated by this Agreement (including my selected Portfolio Objective) and any Eligible Investments purchased are suitable for the plan and both permissible and consistent with the terms of the plan documents and applicable law.

I will furnish promptly to Edward Jones any amendments to the plan, and I agree that, if any amendment affects the rights or obligations of Edward Jones, the amendment will not be binding on Edward Jones unless agreed to by Edward Jones in writing. The Fiduciary and I agree to immediately notify Edward Jones of any changes to the plan's actuarial assumptions, funding status or liquidity needs (including any impending or upcoming distributions to be made from the Account). If the Account does not contain all of the assets of a plan or IRA, I understand that Edward Jones will have no responsibility for the diversification of investments, and that Edward Jones will have no duty, responsibility or liability for assets that are not in the Account. I agree to obtain and maintain any required ERISA bonding for the Account and to include coverage for Edward Jones, its affiliates, and their respective officers, directors and employees under such bond to the extent required by ERISA.

The Fiduciary and I represent and warrant that (A) the Fiduciary and I (1) are knowledgeable with respect to administration and funding matters related to the plan, (2) are able to make informed decisions regarding the services to be provided under this Agreement, and (3) have considered the fees to be paid by the plan in relation to the level of services to be provided; (B) to the extent required by ERISA, the services will be used for the exclusive benefit of the plan and its participants and will not inure to the benefit of any other party; (C) should any fee payments hereunder be made from the assets of the plan, the Fiduciary shall have determined that such payments constitute proper plan expenses payable by the plan in accordance with ERISA and the terms of the plan; and (D) the Fiduciary, based on the disclosures contained in this Agreement (including the disclosures in the Brochure, and the applicable Brokerage Account Agreements) (1) has determined that the arrangement for services and any fees payable to Edward Jones are reasonable, and the services to be provided by Edward Jones hereunder are appropriate and helpful to the plan, and (2) based upon the documents mentioned above, has received all necessary disclosures regarding such fees, as required by, and in accordance with, applicable regulations promulgated under Section 408(b)(2) of ERISA.

The Fiduciary agrees that Account assets may be invested in shares of the Edward Jones Money Market Fund (the "Money Market Fund"), which is managed or advised, for a fee, by an affiliate of Edward Jones. The Fiduciary confirms that the Fiduciary has received a prospectus for the Money Market Fund that includes a summary of all fees that may be paid by the Money Market Fund, whether to third parties or to Edward Jones or its affiliates, Edward Jones has advised the Fiduciary that the Money Market Fund is an appropriate investment for the Account because of its investment objective and liquidity and all assets of the Account may be invested in the Money Market Fund. On the basis of the foregoing, the Fiduciary approves the purchase and redemption of shares of the Money Market Fund in the Account, and the payment of fees to an affiliate of Edward Jones by the Money Market Fund that are incidental to such investments therein as described in the prospectus.

6. Services Provided by Edward Jones

Edward Jones provides the following services for clients participating in Guided Solutions in addition to other services described elsewhere in this Agreement.

**Financial Advisor Consultations** – I understand that my financial advisor or an Edward Jones associate will be reasonably

available to discuss my Account as well as my financial situation, investment objectives, risk tolerance and/or restrictions in connection with the Account during normal business hours and Edward Jones agrees, at a minimum, to contact me annually to discuss the same.

**Trade Confirmations –** Edward Jones will provide me with trade confirmations for each transaction in the Account as provided for under applicable law. Confirmations will not be sent to me for mutual fund transactions made pursuant to a systematic investment or withdrawal and for dividend and/or capital gains reinvestment.

**Dividends and Cash Balances –** Cash balances in my Account may be invested or reinvested as applicable, or as otherwise directed by me, as explained in the Brochure.

7. Guided Solutions Fees

I agree to pay Edward Jones certain fees for participating in Guided Solutions ("Program Fee") and agree to the terms and conditions set forth in the Edward Jones Guided Solutions™ Flex Account Schedule of Fees ("Schedule of Fees") provided separately with this Agreement and as explained in the Brochure. In addition to the Program Fee, I may incur other fees and expenses associated with Eligible Investments, including internal fees and expenses assessed by mutual funds and ETFs held in my Account, as explained in the Brochure and in the Schedule of Fees.

I agree that the Program Fee will be charged to the Account and authorize Edward Jones to debit the cash or money market fund balance in the Account for payment of such fees. If the Account does not contain sufficient cash or money market fund balances to pay the fees, I authorize Edward Jones to liquidate securities in the Account in an amount necessary to satisfy the debit balance. The Program Fee paid will be shown on my brokerage statements.

8. Proxies and Ownership of Securities

I am solely responsible for voting proxies arising from any securities held in my Account. I understand and agree that Edward Jones will not take any action and will not render any advice regarding how to vote proxies arising from any securities held in my Account.

As a participant in Guided Solutions, I will have direct ownership of all Eligible Investments and other assets held in the Account, including the right to: (i) withdraw securities or cash from the Account; (ii) vote any and all proxies for securities held in the Account; and (iii) proceed directly against the issuer of any security held in the Account without being obligated to join any other person receiving services pursuant to, or otherwise involved with, Guided Solutions, as a condition precedent to initiating any such proceeding.

9. Legal Notices

Edward Jones will not take any action and will not render any advice regarding any legal action on my behalf relating to Eligible Investments or other assets (including shares of the Edward Jones Money Market Fund) held in the Account that may become subject to any legal action, regulatory action, administrative action, class action lawsuit and/or bankruptcy. However, Edward Jones will promptly forward to me any such documents received.

10. Acceptance, Assignment and Termination

Edward Jones may refuse to accept any account for any reason.

This Account will be effective upon execution of this Agreement by me and acceptance of the Account by Edward Jones.

I acknowledge that my Account will not become active, buy trading cannot begin and Edward Jones will not begin providing advisory services to me until the later of: (i) the acceptance of this Agreement by Edward Jones or (ii) the funding of the Account at the initial minimum investment as determined by Edward Jones.

Edward Jones may not assign (as this term is defined under the Investment Advisers Act of 1940) this Agreement without my consent. I acknowledge that my consent can be given under a negative consent procedure, in which case I will receive written notice of a pending assignment from Edward Jones and will have thirty (30) days to provide Edward Jones with a written objection to the assignment.

This Agreement can be terminated by Edward Jones or me at any time. Notice of termination shall not affect transactions initiated or services performed prior to termination. If the Agreement is terminated by either party, Edward Jones will no longer be acting as an investment adviser but only as a broker–dealer pursuant to the terms of my Brokerage Account Agreement. I will continue to be responsible for making all

investment decisions after this Agreement is terminated and Edward Jones will not be obligated to recommend any action with regard to the assets in the Account. Upon termination of the Agreement, Edward Jones will cease to charge the Program Fee, and all transactions will be subject to commissions and sales charges.

If either party terminates this Agreement, I agree to provide Edward Jones with instructions regarding the securities in the Account as explained in the Brochure. Some mutual funds and/or fund share classes may not be held in a non–Guided Solutions account. In these cases, Edward Jones will sell those shares for me or will convert the mutual fund share class into a share class that can be held in a non–Guided Solutions account.

Termination of the Agreement shall not alter the liabilities or obligation of the parties incurred prior to such termination. The provisions of Sections 12, 14 and 18 shall survive the termination of this Agreement.

11. Scope of the Agreement

I acknowledge that this Agreement, as well as my Brokerage Account Agreement, and the Brochure, as amended from time to time, constitute the full and entire understanding between the parties. I agree that Edward Jones may amend terms and conditions or services related to the Account at any time, including fees and charges for the Account. Edward Jones will notify me of such changes by mail, email, by posting such changes online or by any other means permitted by law, including a notification on my statement directing me to the Edward Jones website to review details of a change. The effective date of the modification will be thirty (30) days from the date of notification or a later date specified by Edward Jones. If I do not give Edward Jones a written notice that I am objecting to the modification or change within thirty (30) days, I will be deemed to have accepted the modification or change.

In the event of an inconsistency or discrepancy between this Agreement and any other agreement or document, the following rules shall be used to resolve the inconsistency or discrepancy: 1) if the inconsistency or discrepancy relates to the services provided under this Agreement, then the terms of this Agreement shall govern, or 2) if the inconsistency or discrepancy relates to a particular account type or additional service, then the terms of the agreement or document for that account type or service shall govern.

12. Severability/Governing Law

Except to the extent preempted by federal law, I agree that this Agreement and all amendments to this Agreement, their validity, effect, construction, administration and application, and the parties' respective rights and duties, shall be governed by the laws of the State of Missouri without giving effect to any contrary choice of law or conflict of laws provisions. If any provision of this Agreement is or becomes invalid or unenforceable for any reason, this shall not affect the validity or enforceability of any other provision of this Agreement.

13. Notices, Disclosures and Communications

Any notices, disclosures or communications may be (a) mailed first class or sent by commercial express courier service to me at the last address set forth in Edward Jones' records, and to Edward Jones at 12555 Manchester Road, St. Louis, MO 63131; (b) sent by email to me at the last email address set forth in Edward Jones' records; (c) sent by text message to me at the last phone number set forth in Edward Jones' records; (d) personally delivered to me; or (e) posted on Edward Jones' public website if allowed by applicable law. Any such notice mailed (i) to me shall be effective when mailed, and (ii) to Edward Jones shall be effective when actually received. Notice sent by email or text message is effective when sent; notice by personal delivery is effective when delivered; and notice by posting to Edward Jones' website is effective on the date posted. Edward Jones may, in its sole discretion and to the extent permitted by applicable law, provide or accept notice in any other form, such as orally or by telephonic or electronic media. ==There are important disclosures and policies of Edward Jones that apply to my Account. These disclosures and policies are subject to change without notice at any time and can be obtained from my financial advisor or on Edward Jones' website at www.edwardjones.com/disclosures.==

14. Indemnification

I agree to indemnify and hold Edward Jones harmless from any causes of action, claims, expenses or liabilities that might be asserted by me or any third party against Edward Jones by reason of my actions or omissions related to this Agreement. Notwithstanding the foregoing, nothing contained in this section or elsewhere in

this Agreement shall constitute a waiver by me of any of my legal rights under applicable federal or state law or any other laws whose applicability is not permitted to be contractually waived.

15. Conditions beyond Edward Jones' Control ("Force Majeure")

I agree not to hold Edward Jones liable for any loss to me caused directly or indirectly by war, terrorism, civil unrest, natural disaster, extraordinary weather conditions, government restrictions, interruptions of communications, exchange or market rulings, labor unrest or strikes, or other conditions beyond the control of Edward Jones.

16. Client Representations and Warranties

I understand the following:

(i) I agree to review all reports, including brokerage statements, confirmations and cash balances provided by Edward Jones in connection with the Account for accuracy within ten (10) calendar days of receiving the documents and will notify Edward Jones in writing of any inaccuracy. All reports, statements, confirmations and cash balances shall be deemed conclusive if not objected to within ten (10) calendar days of receipt.

(ii) I acknowledge that the Portfolio Objective chosen by me in my Account meets my needs in view of my overall financial situation.

(iii) I agree that Edward Jones will not provide legal, accounting or actuarial advice nor will Edward Jones prepare any legal, accounting or actuarial documents. I should consult with my legal or tax professional about the consequences of investing in securities through Guided Solutions.

(iv) ==I agree that the investment advisory and other services provided under this Agreement will add value to my overall investment experience and justify the expenses.==

17. Conduct of Edward Jones Not Waiver

Edward Jones' failure to insist at any time upon strict compliance with this Agreement or with any of its terms or any continued course of such conduct on Edward Jones' part shall not constitute or be considered a waiver by Edward Jones of any of its rights hereunder.

18. Arbitration Agreement

*a. This Agreement contains a pre-dispute arbitration clause.*

**By signing the Edward Jones Guided Solutions Flex Account Authorization and Agreement Form, I agree as follows:**

**1. All parties to this Agreement are giving up the right to sue each other in court, including the right to a trial by jury, except as provided by the rules of the arbitration forum in which a claim is filed.**

**2. Arbitration awards are generally final and binding; a party's ability to have a court reverse or modify an arbitration award is very limited.**

**3. The ability of the parties to obtain documents, witness statements and other discovery is generally more limited in arbitration than in court proceedings.**

**4. The arbitrators do not have to explain the reason(s) for their award unless, in an eligible case, a joint request for an explained decision has been submitted by all parties to the panel at least 20 days prior to the first scheduled hearing date.**

**5. The panel of arbitrators will typically include a minority of arbitrators who were or are affiliated with the securities industry.**

**6. The rules of some arbitration forums may impose time limits for bringing a claim in arbitration. In some cases, a claim that is ineligible in arbitration may be brought in court.**

**7. The rules of the arbitration forum in which the claim is filed, and any amendments thereto, shall be incorporated into this Agreement.**

**Any controversy arising out of or relating to any of my account(s) from its inception, business, transactions or**

**relationships I have now, had in the past or may in the future have with Edward Jones, its current and/or former officers, directors, partners, agents, affiliates and/or employees, this Agreement, or to the breach thereof, or transactions or accounts maintained by me with any of your predecessor or successor firms by merger, acquisition or other business combinations shall be settled by arbitration in accordance with the FINRA Code of Arbitration Procedure rules then in effect. My demand for arbitration shall be made within the time prescribed by those rules and will be subject to the applicable state or federal statutes of limitations as though filed in court. Judgment upon any award rendered by the arbitrators may be entered in any court having jurisdiction thereof.**

b. *Class Actions.* **No person shall bring a putative or certified class action to arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action, or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until: (i) the class certification is denied; (ii) the class is decertified; or (iii) the customer is excluded from the class by the court. Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver of any rights under this Agreement except to the extent stated herein.**