# EXHIBIT 19

# EDWARD JONES GUIDED SOLUTIONS®
## Fund Account Client Services Agreement

This Client Services Agreement is incorporated into and is part of the Account Authorization and Agreement Form (collectively the "Services Agreement") signed by one or more persons or entities (collectively the "Client," "me," "my," "I," "we" or "our") and constitutes a binding investment advisory contract between Edward D. Jones & Co., L.P. ("Edward Jones") and me in order to establish Edward Jones Guided Solutions® Fund Account services for my account (the "Account"). I am a natural person of legal age with the ability to enter into this Services Agreement or the representative of an entity with the authority to enter into this Services Agreement.

This Services Agreement sets forth the terms and conditions relating to my participation in Edward Jones Guided Solutions® Fund Account ("Guided Solutions"). I represent that I have read and understand this Services Agreement and agree to be bound by its terms and conditions, as well as those set forth in the separate agreements, disclosures and notices referenced in and/or provided with this Services Agreement, including, as applicable, the Edward Jones Account Agreement, Edward Jones Trust Company ("EJTC") IRA Custodial Agreement, Edward Jones IRA Custodial Agreement and/or Edward Jones Retirement Account Agreement (collectively, "Account Agreement"), and the Edward Jones Guided Solutions® Fund Account Brochure (the "Brochure").

1. Edward Jones Guided Solutions®

Edward Jones offers client–directed investment advisory services to clients through Guided Solutions.

In consultation with my Edward Jones financial advisor, I will select an appropriate portfolio objective for my Account (my "Account Portfolio Objective"), which determines the recommended asset allocation and investment category ranges as explained in the Brochure. The recommended asset allocation and investment category ranges are determined solely by Edward Jones and can be modified by Edward Jones without prior notice to me. Edward Jones will have no authority to change my Account Portfolio Objective without my instruction.

Once I have selected my Account Portfolio Objective, I will select investments available for Guided Solutions ("Eligible Investments") and establish a target allocation for each Eligible Investment in my Account ("Target Allocation"), as explained in the Brochure. I direct Edward Jones to automatically rebalance my Account back to my Target Allocation, at the time and in the manner described in the Brochure. My Account may also be eligible for on–demand rebalancing, as further explained in the Brochure.

I understand and agree that I will not be able to hold any investment in my Account that Edward Jones has deemed ineligible for Guided Solutions ("Ineligible Investment"). In the event that Edward Jones re–categorizes an investment to an Ineligible Investment, Edward Jones will notify me and recommend a replacement Eligible Investment. I agree that if I do not provide instructions to remove the Ineligible Investment within the time frame determined by Edward Jones, as explained in the Brochure, Edward Jones will remove the Ineligible Investment and replace it with the recommended Eligible Investment as provided in the notice.

Cash balances awaiting investment or reinvestment into my Account will be automatically swept into the Edward Jones Money Market Fund (the "Money Market Fund"), where they will be held until invested in an Eligible Investment in accordance with the terms of this Services Agreement. Please refer to the Brochure for more information about the Money Market Fund.

I understand and agree that my Account must be aligned over time to my Account Portfolio Objective and to Edward Jones' guidance regarding certain factors such as international exposure and security overconcentration ("Investment Diagnostics"), which are determined by Edward Jones and are subject to change.

Edward Jones will review my Account annually to determine whether it is in alignment with my Account Portfolio Objective or Investment Diagnostics and will notify me when my Account is out of alignment with either, as explained in the Brochure. I agree that if I do not provide instructions to bring my Account back in alignment within the time frame determined by Edward Jones, my Account will be removed

from Guided Solutions. I understand that current and timely information about my Account will be available in Edward Jones' online client access system, which I may access and use to make investing decisions.

Once I have established my Target Allocation, I direct Edward Jones to select the Eligible Investments to be bought or sold with respect to any investment into or withdrawal out of my Account. Edward Jones will select such Eligible Investments in alignment with my Target Allocation. If I make a cash request from my Account, I authorize Edward Jones to redeem or sell any assets in the Account in an amount necessary to facilitate such request.

2. Opening a Guided Solutions Account

**Client Information –** I have made an independent determination to participate in Guided Solutions based on my assessment of the source and amount of assets that I have available for Guided Solutions, my financial situation, time horizon, investment objectives and risk tolerance.

I have completed a Client Profile, which includes important information about my Account, in order to assist me in selecting an appropriate Account Portfolio Objective. I represent that all information contained within the Client Profile is true and accurate. Edward Jones will rely on the information I provide in the Client Profile in order to recommend an Account Portfolio Objective. I agree to promptly notify Edward Jones by contacting my financial advisor of any change in the information that I have provided to Edward Jones, including, but not limited to: my financial situation, investment objectives and/or risk tolerance and any other information provided by me in the Client Profile. Edward Jones is under no obligation to verify whether the information has changed. I may be required to complete a new Client Profile in order for Edward Jones to recommend a modification of my Account Portfolio Objective after considering such change.

Effective February 5, 2018, I understand and acknowledge that I have the right to designate a Trusted Contact Person for this account. A Trusted Contact Person is someone, age 18 years or older, that Edward Jones is authorized to contact and disclose information to about my account to address possible financial exploitation, to confirm the specifics of my current contact information, health status, or the identity of any legal guardian, executor, trustee or holder of a power of attorney, or as otherwise permitted by applicable rules and law including, but not limited to, FINRA Rule 2165.

**Investment Policy Statement –** I understand and agree that Edward Jones and its financial advisors will not review, monitor, accept or adhere to an investment policy statement or similar document that was not prepared by Edward Jones. Adherence to any such investment policy statement is my responsibility.

**Initial Funding –** In order to establish a Guided Solutions Account, I agree to transfer cash and/or marketable securities into the Account upon Edward Jones' acceptance of this Services Agreement. If I transfer into the Account marketable securities that are Ineligible Investments, I authorize Edward Jones to sell or otherwise remove them from my Account within the time frame determined by Edward Jones. I understand and agree that the sale of such securities may result in taxable gains or tax losses to me.

**Share Class Conversion –** If, when I open my Account, or upon any subsequent funding, I transfer into the Account shares of mutual funds that are Eligible Investments, it may be necessary to convert my existing share class for a class determined by Edward Jones to be appropriate for Guided Solutions. I understand and agree that Edward Jones may convert the class of shares transferred in for another class of shares of the same Eligible Investment selected by Edward Jones. I understand and agree that Edward Jones may, at any time, convert any existing class of mutual fund shares that are Eligible Investments in my Account for another class of shares of the same Eligible Investment selected by Edward Jones. I understand that all conversions could result in higher or lower fees than those paid under the previous share class. Taxable gains, tax losses, redemption fees or sales charges may be assessed upon the liquidation or redemption of securities. I understand that these fees and expenses may negatively affect my investment performance.

I acknowledge that my Account is subject to investment and maintenance minimums which are determined by Edward Jones and are subject to change. I acknowledge that margin lending is not permitted in the Account.

**Custody of Assets –** I agree to maintain custody of all assets in my Account at Edward Jones, located at 12555 Manchester Road, St. Louis, Missouri 63131. However, if I have entered into an IRA Custodial Agreement with EJTC, I agree to maintain custody of all assets at EJTC, located at 12555 Manchester Road, St. Louis, Missouri 63131. EJTC will employ Edward Jones as a sub–custodian subject to my EJTC IRA Custodial Agreement. My Account will be used to receive and credit assets for my Account and all dividends, capital gains and redemptions received on the assets of my Account.

3. Trading and Execution Services

**Trading –** I am responsible for all trading and investment decisions in my Account. Neither Edward Jones nor its financial advisors will have authority for any trading or investment decisions in my Account, except as otherwise described in this Services Agreement.

I understand that I cannot purchase fractional shares of ETFs. If, when purchasing ETFs for my Account, there is not sufficient cash or assets invested in a money market fund to purchase a whole share, I direct Edward Jones to sell a sufficient amount of shares of mutual funds and ETFs held in my Account to purchase a whole share.

**Trade Execution –** I authorize and direct all transactions in my Account to be effected by or through Edward Jones. I understand that the direction by me to trade through Edward Jones may result in less advantageous execution, including greater spreads (the difference between the bid and the offer price) and less favorable net prices, than if an unaffiliated broker–dealer were to execute the transaction.

When Edward Jones is executing transactions for my Account, it is not acting as an investment adviser but solely as a broker–dealer. Edward Jones will arrange for delivery and payment in connection with the execution services rendered to me, and I authorize Edward Jones to act on my behalf in all other matters necessary or incidental to the handling of my Account. Transactions in my Account will be made in accordance with the trading practices of Edward Jones as explained in the Brochure.

4. Tax and Risk

I understand that existing assets in my Account will be sold at my direction at various times, including but not limited to when the Account is funded, during the ongoing investment of the Account, when the Account is out of alignment and, under certain circumstances, when the Account is terminated from Guided Solutions. I am responsible for any resulting tax liabilities, fees and charges. I confirm that I have had the opportunity to consult with a tax advisor and/or other qualified tax professionals before deciding to participate in Guided Solutions.

I understand that all investments involve risk and that investment performance and the value of the Account will fluctuate depending on factors that cannot be controlled by Edward Jones.

5. Employer–sponsored Plans and Other Retirement Accounts

This section applies if the Account is for: (i) a pension or other employee benefit plan governed by the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), that is not a participant–directed plan; (ii) a tax–qualified retirement plan (including a Keogh plan, an Edward Jones sponsored Owner K® plan or a "single owner 401(k)" plan where the only eligible plan participants are the business owner and/or his or her spouse) under section 401(a) of the Internal Revenue Code of 1986, as amended (the "Code"), and not covered by ERISA; or (iii) an Individual Retirement Account ("IRA") under Section 408 or Section 4975 of the Code. If the Account is for a plan or IRA subject to ERISA, I appoint Edward Jones, and Edward Jones accepts its appointment, as an "investment manager" under Section 3(38) of ERISA (but only with respect to selecting securities that might be liquidated in order to pay the Program Fee (as described below) and purchasing whole shares of ETFs (as described above and in the Brochure)), and Edward Jones acknowledges that it is a "fiduciary" within the meaning of Section 3(21) of ERISA and Section 4975(e)(3) of the Code (but only with respect to the provision of services described in Section 1 of this Services Agreement). Similarly, if the Account is for a plan or IRA not subject to ERISA, Edward Jones acknowledges that it is a "fiduciary" within the meaning of Section 4975(e)(3) of the Code (but only with respect to the provision of services described in Section 1 of this Services Agreement). Edward Jones shall not, by reason of this Services Agreement, be responsible for acting as a fiduciary with respect to the administration of the plan or IRA or otherwise provide administrative or trustee services.

I represent that the person executing this Services Agreement on behalf of a plan or IRA, as applicable: (A) is a "Named Fiduciary," as that term is defined in ERISA, with respect to an ERISA plan and/or a person holding a position similar to that of a "Named Fiduciary" under a similar law with respect to a plan or IRA not covered by ERISA (each, a "Fiduciary"), (B) is authorized under provisions of the plan or IRA document (including any trust document related thereto) to enter into this Services Agreement and to retain Edward Jones to perform the services set forth in this Services Agreement, (C) is not prohibited from acting as a Fiduciary with respect to the plan or IRA, and (D) is independent of and unrelated to Edward Jones, its affiliates and my financial advisor. The Fiduciary and I acknowledge that it is our responsibility to review the plan or IRA documents and the applicable laws and regulations applicable to the plan or IRA and its operation to determine that the arrangements contemplated by this Services Agreement (including my selected Account Portfolio Objective) and any Eligible Investments purchased are suitable for the plan or IRA and both permissible and consistent with the terms of the plan or IRA documents and applicable law.

I will furnish promptly to Edward Jones any amendments to the plan or IRA, and I agree that, if any amendment affects the rights or obligations of Edward Jones, the amendment will not be binding on Edward Jones unless agreed to by Edward Jones in writing. The Fiduciary and I agree to immediately notify Edward Jones of any changes to any actuarial assumptions, funding status or liquidity needs (including any impending or upcoming distributions to be made from the Account). If the Account does not contain all of the assets of a plan or IRA, I understand that Edward Jones will have no responsibility for the diversification of investments, and that Edward Jones will have no duty, responsibility or liability for assets that are not in the Account. I agree to obtain and maintain any required ERISA bonding for the Account and to include coverage for Edward Jones, its affiliates, and their respective officers, directors and employees under such bond to the extent required by ERISA.

The Fiduciary and I represent and warrant that (A) the Fiduciary and I (1) are knowledgeable with respect to administration and funding matters related to the plan or IRA, (2) are able to make informed decisions regarding the services to be provided under this Services Agreement, and (3) have considered the fees to be paid by the plan or IRA in relation to the level of services to be provided; (B) to the extent required by ERISA, the services will be used for the exclusive benefit of the plan and its participants or IRA owner and will not inure to the benefit of any other party; (C) should any fee payments hereunder be made from the assets of the plan or IRA, the Fiduciary shall have determined that such payments constitute proper expenses payable by the plan or IRA in accordance with the terms of the plan or IRA, the Code, and, if applicable, ERISA; and (D) the Fiduciary, based on the disclosures contained in this Services Agreement (including the disclosures in the Brochure, and the applicable Account Agreement) (1) has determined that the arrangement for services and any fees payable to Edward Jones are reasonable, and the services to be provided by Edward Jones hereunder are appropriate and helpful to the plan or IRA, and (2) based upon the documents mentioned above, has received all necessary disclosures regarding such fees, as required by, and in accordance with, regulations promulgated under Section 408(b)(2) of ERISA, if applicable.

The Fiduciary agrees that Account assets may be invested in shares of the Money Market Fund, which is managed or advised, for a fee, by an affiliate of Edward Jones. The Fiduciary confirms that the Fiduciary has received a prospectus for the Money Market Fund that includes a summary of all fees that may be paid by the Money Market Fund, whether to third parties or to Edward Jones or its affiliates. Edward Jones has advised the Fiduciary that the Money Market Fund is an appropriate investment for the Account because of its investment objective and liquidity and any assets of the Account may be invested in the Money Market Fund. On the basis of the foregoing, the Fiduciary approves the purchase and redemption of shares of the Money Market Fund in the Account, and the payment of fees to an affiliate of Edward Jones by the Money Market Fund that are incidental to such investments therein as described in the prospectus.

6. **Services Provided by Edward Jones**

Edward Jones provides the following services for clients participating in Guided Solutions in addition to other services described elsewhere in this Services Agreement.

**Financial Advisor Consultations –** I understand that my financial advisor or an Edward Jones associate will be reasonably available to discuss my Account as well as my financial situation, investment objectives, risk tolerance and/or restrictions in connection with the Account during normal business hours and Edward Jones agrees, at a minimum, to contact me annually to discuss the same.

**Assets Held Outside of Edward Jones –** Edward Jones may, as I request, permit information concerning assets and liabilities not held with Edward Jones to be reflected on certain reports relating to my Account. I acknowledge the information provided by Edward Jones for such assets and liabilities is based solely upon information provided by me or third parties, and Edward Jones is not responsible for its completeness or accuracy. The reflection of such assets and liabilities on reports relating to my Account in no way represents an affirmation by Edward Jones that I in fact own such assets or have such liabilities.

I understand that Edward Jones may, but is under no obligation to, consider assets and liabilities not held with Edward Jones when providing investment advice to me.

**Trade Confirmations –** Edward Jones will provide me with trade confirmations for each transaction in the Account as provided for under applicable law. Confirmations will not be sent to me for mutual fund transactions made pursuant to a systematic investment or withdrawal and for dividend and/or capital gains reinvestment.

**Dividends and Cash Balances –** Cash balances in my Account may be invested or reinvested as applicable, or as otherwise directed by me, as explained in the Brochure.

7.  Guided Solutions Fees

I agree to pay Edward Jones certain fees for participating in Guided Solutions ("Program Fee") and agree to the terms and conditions set forth in the Edward Jones Guided Solutions® Fund Account Schedule of Fees ("Schedule of Fees") provided separately with this Services Agreement and as explained in the Brochure. In addition to the Program Fee, I may incur other fees and expenses associated with Eligible Investments, including internal fees and expenses assessed by mutual funds and ETFs held in my Account, as explained in the Brochure and in the Schedule of Fees.

Edward Jones will charge the Program Fee to the Account. I authorize Edward Jones to debit the cash or money market fund balance in the Account for payment of such fees. If the Account does not contain sufficient cash or money market fund balances to pay the fees, I authorize Edward Jones to liquidate securities in the Account in an amount necessary to satisfy the debit balance. The Program Fee paid will be shown on my brokerage statements.

8.  Proxies and Ownership of Securities

I am solely responsible for voting proxies arising from any securities held in my Account. I understand and agree that Edward Jones will not take any action and will not render any advice regarding how to vote proxies arising from any securities held in my Account.

As a participant in Guided Solutions, I will have direct ownership of all Eligible Investments and other assets held in the Account, including the right to: (i) withdraw securities or cash from the Account; (ii) vote any and all proxies for securities held in the Account; and (iii) proceed directly against the issuer of any security held in the Account without being obligated to join any other person receiving services pursuant to, or otherwise involved with, Guided Solutions as a condition precedent to initiating any such proceeding.

9.  Legal Notices

Edward Jones will not take any action and will not render any advice regarding any legal action on my behalf relating to Eligible Investments or other assets (including shares of the Money Market Fund) held in the Account that may become subject to any legal action, regulatory action, administrative action, class action lawsuit and/or bankruptcy. However, Edward Jones will promptly forward to me any such documents received.

10. Acceptance, Assignment and Termination

Edward Jones may refuse to accept any account for any reason.

I acknowledge that my Account will not become active, buy trading cannot begin and Edward Jones will not begin providing advisory services to me until: (i) acceptance of this Services Agreement by Edward Jones, and (ii) funding of the Account at the initial minimum investment as determined by Edward Jones.

Edward Jones may not assign (as this term is defined under the Investment Advisers Act of 1940) this Services Agreement without my consent. I acknowledge that my consent can be given under a negative consent procedure, in which case I will receive written notice of a pending assignment from Edward Jones and will have thirty (30) days to provide Edward Jones with a written objection to the assignment.

This Services Agreement can be terminated by Edward Jones or me at any time. Termination shall not affect transactions initiated or services performed prior to termination. If either party provides notice of termination, Edward Jones will no longer be acting as an investment adviser and will not be obligated to recommend any action with regard to the assets in my Account. Upon notice of termination of this Services Agreement, Edward Jones will cease to charge the Program Fee.

If either party provides notice of termination of this Services Agreement, I will provide Edward Jones with instructions regarding the securities in my Account as explained in the Brochure. If this is a tax–qualified retirement account and I fail to provide such instructions, Edward Jones may liquidate and distribute the assets in my Account and this Services Agreement will be terminated. However, if this is a taxable account and I fail to provide such instructions, Edward Jones will continue to act as a broker–dealer pursuant to the terms of my Account Agreement after this Services Agreement is terminated and any transactions will be subject to commissions and sales charges. Some mutual funds and/or fund share classes may not be held in a non–advisory account. In these cases, Edward Jones will sell those shares for me or will convert the shares into a share class that can be held in a non–advisory account.

Termination of this Services Agreement shall not alter the liabilities or obligation of the parties incurred prior to such termination. The provisions of Sections 12, 14 and 18 shall survive the termination of this Services Agreement.

11. Scope of the Agreement

I acknowledge that this Services Agreement, as well as my Account Agreement, and the Brochure, as amended from time to time, constitute the full and entire understanding between the parties. I agree that Edward Jones may amend terms and conditions or services related to the Account at any time, including fees and charges for the Account. Edward Jones will notify me of any material changes by mail, email, by posting such changes online or by any other means permitted by law, including a notification on my statement directing me to the Edward Jones website to review details of a change. The effective date of the modification will be thirty (30) days from the date of notification or a later date specified by Edward Jones. If I do not give Edward Jones a written notice that I am objecting to the modification or change within thirty (30) days, I will be deemed to have accepted the modification or change.

In the event of an inconsistency or discrepancy between this Services Agreement and any other agreement or document, the following rules shall be used to resolve the inconsistency or discrepancy: 1) if the inconsistency or discrepancy relates to the services provided under this Services Agreement, then the terms of this Services Agreement shall govern, or 2) if the inconsistency or discrepancy relates to a particular account type or additional service, then the terms of the agreement or document for that account type or service shall govern.

12. Severability/Governing Law

Except to the extent preempted by federal law, I agree that this Services Agreement and all amendments to this Services Agreement, their validity, effect, construction, administration and application, and the parties' respective rights and duties, shall be governed by the laws of the State of Missouri without giving effect to any contrary choice of law or conflict of laws provisions. If any provision of this Services Agreement is or becomes invalid or unenforceable for any reason, this shall not affect the validity or enforceability of any other provision of this Services Agreement.

13. Notices, Disclosures and Communications

Any notices, disclosures or communications may be (a) mailed first class or sent by commercial express courier service to me at the last address in Edward Jones' records, and to Edward Jones at 12555 Manchester Road, St. Louis, MO 63131; (b) sent by email to me at the last email address in Edward Jones' records; (c) sent by text message to me at the last phone number in Edward Jones' records; (d) personally delivered to me; or (e) posted on Edward Jones' public website if allowed by applicable law. Any such notice mailed (i) to me shall be effective when

mailed, and (ii) to Edward Jones shall be effective when actually received. Notice sent by email or text message is effective when sent; notice by personal delivery is effective when delivered; and notice by posting to Edward Jones' website is effective on the date posted. Edward Jones may, in its sole discretion and to the extent permitted by applicable law, provide or accept notice in any other form, such as orally or by telephonic or electronic media. There are important disclosures and policies of Edward Jones that apply to my Account. These disclosures and policies are subject to change without notice at any time and can be obtained from my financial advisor or on Edward Jones' website at www.edwardjones.com/disclosures.

14. Indemnification

I agree to indemnify and hold Edward Jones harmless from any causes of action, claims, expenses or liabilities that might be asserted by me or any third party against Edward Jones by reason of my actions or omissions related to this Services Agreement. Notwithstanding the foregoing, nothing contained in this section or elsewhere in this Services Agreement shall constitute a waiver by me of any of my legal rights under applicable federal or state law or any other laws whose applicability is not permitted to be contractually waived.

15. Conditions beyond Edward Jones' Control ("Force Majeure")

I agree not to hold Edward Jones liable for any loss to me caused directly or indirectly by war, terrorism, civil unrest, natural disaster, extraordinary weather conditions, government restrictions, interruptions of communications, exchange or market rulings, labor unrest or strikes, or other conditions beyond the control of Edward Jones.

16. Client Representations and Warranties

I agree to the following:

(i) I will review all reports, including brokerage statements, confirmations and cash balances provided by Edward Jones in connection with the Account for accuracy within ten (10) calendar days of receiving the documents and will notify Edward Jones in writing of any inaccuracy. All reports, statements, confirmations and cash balances shall be deemed conclusive if not objected to within ten (10) calendar days of receipt.

(ii) The Account Portfolio Objective chosen by me meets my needs in view of my overall financial situation.

(iii) Edward Jones will not provide legal, accounting or actuarial advice nor will Edward Jones prepare any legal, accounting or actuarial documents. I should consult with my legal or tax professional about the consequences of investing in securities through Guided Solutions.

(iv) Eligible Investments can be purchased directly through other alternatives, including through a brokerage account, subject to sales charges and/or commissions. A Program Fee would not be assessed, therefore making a brokerage account generally a lower cost alternative for the long term investor. By choosing Guided Solutions I believe the investment advisory and other services provided under this Services Agreement will add value to my overall investment experience that more than justifies the additional expenses.

17. Conduct of Edward Jones Not Waiver

Edward Jones' failure to insist at any time upon strict compliance with this Services Agreement or with any of its terms or any continued course of such conduct on Edward Jones' part shall not constitute or be considered a waiver by Edward Jones of any of its rights hereunder.

**18. Arbitration Agreement**

a. *This Services Agreement contains a pre–dispute arbitration clause.*

**By signing the Edward Jones Guided Solutions Fund Account Authorization and Agreement Form, I agree as follows:**

**1. All parties to this Services Agreement are giving up the right to sue each other in court, including the right to a trial by jury, except as provided by the rules of the arbitration forum in which a claim is filed.**

**2. Arbitration awards are generally final and binding; a party's ability to have a court reverse or modify an arbitration award is very limited.**

**3.** The ability of the parties to obtain documents, witness statements and other discovery is generally more limited in arbitration than in court proceedings.

**4.** The arbitrators do not have to explain the reason(s) for their award unless, in an eligible case, a joint request for an explained decision has been submitted by all parties to the panel at least 20 days prior to the first scheduled hearing date.

**5.** The panel of arbitrators will typically include a minority of arbitrators who were or are affiliated with the securities industry.

**6.** The rules of some arbitration forums may impose time limits for bringing a claim in arbitration. In some cases, a claim that is ineligible in arbitration may be brought in court.

**7.** The rules of the arbitration forum in which the claim is filed, and any amendments thereto, shall be incorporated into this Services Agreement.

Any controversy arising out of or relating to any of my account(s) from its inception, business, transactions or relationships I have now, had in the past or may in the future have with Edward Jones, its current and/or former officers, directors, partners, agents, affiliates and/or employees, this Services Agreement, or to the breach thereof, or transactions or accounts maintained by me with any of your predecessor or successor firms by merger, acquisition or other business combinations shall be settled by arbitration in accordance with the FINRA Code of Arbitration Procedure rules then in effect. My demand for arbitration shall be made within the time prescribed by those rules and will be subject to the applicable state or federal statutes of limitations as though filed in court. Judgment upon any award rendered by the arbitrators may be entered in any court having jurisdiction thereof.

To the extent permitted by law, the exclusive jurisdiction for any such controversy that is not arbitrable under this Services Agreement shall be the Circuit Court of St. Louis County, State of Missouri or the United States District Court for the Eastern District of Missouri, and I consent to the jurisdiction of such courts.

**b.** *Class Actions.* **No person shall bring a putative or certified class action to arbitration, nor seek to enforce any pre–dispute arbitration agreement against any person who has initiated in court a putative class action, or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until: (i) the class certification is denied; (ii) the class is decertified; or (iii) the customer is excluded from the class by the court. Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver of any rights under this Services Agreement except to the extent stated herein.**