MERYL L. YOUNG, SBN 110156
　myoung@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive
Irvine, CA  92612-4412
Telephone: 949.451.3800
Facsimile:  949.451.4220

ALEXANDER K. MIRCHEFF, SBN 245074
　amircheff@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone: 213.229.7000
Facsimile:  213.229.7520

SAMUEL A. KEESAL, SBN 38014
　skip.keesal@kyl.com
KEESAL, YOUNG & LOGAN
400 Oceangate
Long Beach, CA  90802
Telephone: 562.436.2000
Facsimile:  562.436.7416

JULIE L. TAYLOR, SBN 154341
　julie.taylor@kyl.com
KEESAL, YOUNG & LOGAN
450 Pacific Avenue
San Francisco, CA  94133
Telephone: 415.398.6000
Facsimile:  415.981.0136

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| IN RE EDWARD D. JONES & CO., L.P. SECURITIES LITIGATION | CASE NO. 2:18-cv-00714-JAM-AC<br><br>**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**<br><br>**Hearing:**<br>Date:　　May 21, 2019<br>Time:　　1:30 p.m.<br>Place:　　Courtroom 6, 14th Floor<br>　　　　　501 I Street<br>　　　　　Sacramento, CA 95814<br>Judge:　　Hon. John A. Mendez |

**TABLE OF CONTENTS**

Page

I. Introduction ................................................................................................................ 1

II. Argument .................................................................................................................. 2

    A.    The Opposition Fails to Support the Exchange Act Claims ......................... 2

        1.    The Rule 10b-5(b) Claims .................................................................. 2

            a.    The Opposition Fails to Support the Allegations of Falsity ................. 2

            b.    The Opposition Fails to Support the Scienter Allegations ................... 6

            c.    The Opposition Fails to Support Reliance ............................................ 8

            d.    The Opposition Fails to Support Loss Causation .................................. 9

        2.    The "Scheme Liability" Claims .......................................................... 9

    B.    The Opposition Fails to Support the Securities Act Claims ....................... 10

    C.    The Opposition Fails to Avoid SLUSA Preclusion ..................................... 10

III. Conclusion ............................................................................................................. 10

# TABLE OF AUTHORITIES

Page

**Cases**

*Affiliated Ute Citizens of Utah v. United States*,
   406 U.S. 128 (1972).............................................................................................................8

*In re Allstate Life Ins. Co. Litig.*,
   2013 WL 5161688 (D. Ariz. Sept. 13, 2013).......................................................................9

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).............................................................................................................1

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007).............................................................................................................1

*Bridges v. Geringer*,
   2015 WL 2438227 (N.D. Cal. May 21, 2015) ..................................................................10

*In re Charles Schwab Corp. Sec. Litig.*,
   257 F.R.D. 534 (N.D. Cal. 2009).......................................................................................10

*Chiarella v. United States*,
   445 U.S. 222 (1980).............................................................................................................2

*Desai v. Deutsche Bank Sec. Ltd.*,
   573 F.3d 931 (9th Cir. 2009)................................................................................................8

*Fernandez v. UBS*,
   2018 WL 4440498 (S.D.N.Y. Sept. 17, 2018).....................................................................9

*Fleming v. Charles Schwab Corp.*,
   878 F.3d 1146 (9th Cir. 2017)............................................................................................10

*Freeman Inv., L.P. v. Pac. Life Ins. Co.*,
   704 F.3d 1110 (9th Cir. 2013)............................................................................................10

*Glazer Capital Mgmt., LP v. Magistri*,
   549 F.3d 736 (9th Cir. 2008)................................................................................................8

*Gustafson v. Alloyd Co.*,
   513 U.S. 561 (1995)...........................................................................................................10

*Hertzberg v. Dignity Partners*,
   191 F.3d 1076 (9th Cir. 1999)............................................................................................10

*In re Interbank Funding Corp. Sec. Litig.*,
   629 F.3d 213 (D.C. Cir. 2010).............................................................................................9

**TABLE OF AUTHORITIES**
(continued)

Page

*Loos v. Immersion Corp.*,
762 F.3d 880 (9th Cir. 2014) ..................................................................................................9

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*,
540 F.3d 1049 (9th Cir. 2008) ........................................................................................1, 2, 6

*Moore v. Kayport Package Exp., Inc.*,
885 F.2d 531 (9th Cir. 1989) ................................................................................................10

*No. 84 Employer-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*,
320 F.3d 920 (9th Cir. 2003) ..................................................................................................8

*Northstar Fin. Advisors, Inc. v. Schwab Inv.*,
904 F.3d 821 (9th Cir. 2018) ................................................................................................10

*NYCERS v. Berry*,
616 F. Supp. 2d 987 (N.D. Cal. 2009) .................................................................................10

*Poulos v. Caesars World, Inc.*,
379 F.3d 654 (9th Cir. 2004) ..................................................................................................8

*Retail Wholesale v. Hewlett-Packard Co.*,
845 F.3d 1268 (9th Cir. 2017) ................................................................................................3

*In re Rigel Pharm., Inc. Sec. Litig.*,
697 F.3d 869 (9th Cir. 2012) ..................................................................................................8

*Ronconi v. Larkin*,
253 F.3d 423 (9th Cir. 2001) ..................................................................................................6

*Santa Fe Indus., Inc. v. Green*,
430 U.S. 462 (1977) ................................................................................................................2

*SEC v. Bardman*,
216 F. Supp. 3d 1041 (N.D. Cal. 2016) ...............................................................................10

*SEC v. Geman*,
334 F.3d 1183 (10th Cir. 2003) ..............................................................................................3

*SEC v. Loomis*,
969 F. Supp. 2d 1226 (E.D. Cal. 2013) ...............................................................................10

*Shankur v. Imperva Inc.*,
2016 WL 2851859 (N.D. Cal. May 16, 2016) .......................................................................7

**TABLE OF AUTHORITIES**
(continued)

Page

*Simpson v. AOL Time Warner, Inc.*,
    452 F.3d 1040 (9th Cir. 2006) .................................................................................................. 9

*Stoody-Broser v. Bank of Am.*,
    2012 WL 1657187 (N.D. Cal. May 10, 2012) ........................................................................ 10

*Tellabs v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) .................................................................................................................. 6

*TSC Indus., Inc. v. Northway, Inc.*,
    426 U.S. 438 (1976) .................................................................................................................. 2

*In re VeriFone Holdings, Inc. Sec. Litig.*,
    704 F.3d 694 (9th Cir. 2012) .................................................................................................... 7

*Vides v. Amelio*,
    265 F. Supp. 2d 273 (S.D.N.Y. 2003) ...................................................................................... 2

**Statutes**

15 U.S.C. § 78u-4(b)(1) ................................................................................................................... 2

# I. Introduction

Like their complaint, Plaintiffs' opposition fails to identify any particularized factual allegations to support their claims that EDJ's business model—which provides various account options so clients can choose how they want to receive investment advice—somehow amounts to securities fraud.[1]

In fact, while the opposition pays lip service to the governing pleading standard under the PSLRA, Plaintiffs ask the Court to apply a different standard—the one under Rule 8(a), *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Opp. at 1-2; *see also* Opp. to Request for Judicial Notice at 2, 5.  That request speaks volumes about Plaintiffs' inability to transform their after-the-fact dissatisfaction with their own choices into a securities claim.  At its core, the opposition depends on the complaint's use of labels like "fraud," "coerce," and "reverse churning," alongside numerous vague insinuations.  *E.g.*, ¶¶ 4, 12, 104, 108, 133.  From there, using string cites that obscure what is actually pleaded in the complaint and what is not, the opposition leaps past the holes and contradictions in the factual allegations and the incorporated disclosures that Plaintiffs admit EDJ provided.  It then asserts that the Court simply "must accept as true Plaintiffs' allegations."  *E.g.*, Opp. at 8 n.6.  That is squarely contrary to the PSLRA, which dictates that the particularized factual allegations are what matters, not the adjectives.  *E.g.*, *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008).

As set forth in EDJ's motion, the facts alleged and incorporated in the complaint all show that EDJ provides full disclosure regarding the various account options offered to investors so that each individual investor can make the choice that is right for them.  That is the opposite of a fraud.

The opposition ignores EDJ's explicit disclosures and the representations by Plaintiffs that are incorporated in the complaint; glosses over the important distinctions between the various investment account options; invents new theories that went unpleaded for a reason; and conclusorily equates EDJ's legal compliance measures with a scheme to defraud, and profitability with fraudulent intent.  The Court should reject all of those fallacies.  The complaint should be dismissed.

---

[1]   Abbreviations have the same meaning as in EDJ's opening brief.

## II.  Argument

### A.  The Opposition Fails to Support the Exchange Act Claims

#### 1.  The Rule 10b-5(b) Claims

##### a.  The Opposition Fails to Support the Allegations of Falsity

*The legal standard.*  Plaintiffs acknowledge that Rule 10b-5(b) requires them to plead an "untrue" or "misleading" statement: "disclosure is required of any material facts *necessary to make statements 'not misleading.'*"  Opp. at 4 (emphasis added).  However, Plaintiffs then proceed to overlook the most basic, threshold requirements of the PSLRA: they never "specify each statement alleged to have been misleading."  15 U.S.C. § 78u-4(b)(1); *cf.* Opp. at 6 (citing "all of" the disclosures).  That is reason enough for dismissal.  *See, e.g.*, *Metzler*, 540 F.3d at 1070.[2]

Plaintiffs try to brush aside EDJ's robust disclosures about all of the topics raised in the complaint as supposed "fine print" and "boilerplate."  Opp. at 4.  That is a bald mischaracterization with no basis in the securities laws.  For example, the Making Good Choices brochure (Exs. 30-33) can only be viewed as a model of clarity and accessibility, and it refers to additional disclosures that are all written in plain English.  And all of the disclosures are part of the total mix of information made available to investors, which is what counts.  *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976); *cf.*, *e.g.*, *Vides v. Amelio*, 265 F. Supp. 2d 273, 280 (S.D.N.Y. 2003) ("corporations are not required to address their stockholders as if they were children in kindergarten").

Plaintiffs cite no authority for their incorrect claim that the standard is "ensuring understanding as a fiduciary."  Opp. at 4; *cf. Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 473-74 (1977).  They appear to be claiming that despite EDJ's explicit disclosures and their own representations, they did not understand the choices they made and now want to hold EDJ responsible for not realizing they did not understand.  This theory has no place in a securities fraud class action.

Plaintiffs try to skip past the disclosures and applicable pleading requirements by erroneously characterizing their claims as omissions.  But as discussed below, the three supposed omissions that

---

[2]  Contrary to Plaintiffs' reliance on *Chiarella v. United States*, 445 U.S. 222, 230 (1980) and cases citing it, Opp. at 4, this is nothing like an insider trading case, where, uniquely, the Supreme Court has held that mere silence can be actionable under the securities laws when there is a duty to abstain from trading or disclose information held in trust and confidence.  Mot. at 7 & n.5.

Plaintiffs enumerate (Opp. at 3) involve either facts EDJ *specifically* disclosed, or are Plaintiffs' unsupported and mistaken conclusions, which, of course, need not be disclosed. Mot. at 7 & n.6.

*Statements concerning different account types and fees.* The opposition merely restates the conclusory allegations that disclosures were misleading because "an Advisory Program would charge Plaintiffs higher fees." Opp. at 5. Plaintiffs ignore that EDJ advised them to consider "the additional costs associated with an advisory program," and that Plaintiffs represented they believed that the "investment advisory and other services provided . . . will add value to their overall investment experience that more than justifies the additional expenses." Ex. 12 at 3; Exs. 14-17 at 24-25.

Similarly, Plaintiffs argue that EDJ made misleading statements because Advisory Program accounts might "financially benefit Edward Jones" and individual financial advisors, yet they ignore the disclosures on precisely those topics. *E.g.*, Exs. 14-15 at 16; Ex. 17 at 17 (client agreements: "[t]he Program Fee compensates [EDJ] for providing advisory services;" "[a] portion of the Program Fee is paid to the financial advisor"); Exs. 7-8, 10 at 9; Ex. 11 at 11; Ex. 12 at 12 ("[a] financial advisor will typically earn more in upfront fees and commissions when you use brokerage services . . . [and] more over time if you invest in [Advisory Programs]."). Plaintiffs also suggest EDJ made misleading statements because, with the introduction of Advisory Program accounts, financial advisors were compensated in part based on "assets under management." Opp. at 6. But EDJ fully disclosed that fact, *e.g.*, Exs. 7-8, 10 at 20; Ex. 9 at 21; Ex. 11 at 21-22; Ex. 12 at 22 (brochures: "Program Fees, . . . as well as assets under care, may impact your financial advisor's eligibility for a bonus"), which simply encourages efforts to *grow* client assets and is not driven by account type.

EDJ's disclosures fundamentally distinguish Plaintiffs' key case, *SEC v. Geman*, 334 F.3d 1183, 1190 (10th Cir. 2003), where the company misrepresented that changes to its trade execution policies were solely for administrative reasons, while in reality it was keeping profits from timing trades to its own advantage. Here there was no misstatement at all, and EDJ disclosed that the additional services carried "additional expenses" and would impact its compensation. Notably, Plaintiffs do not dispute that *Geman* was not a "reverse-churning" case but rather a misrepresentation action. Mot. at 17 n.15. Plaintiffs also cite *Retail Wholesale v. Hewlett-Packard Co.*, 845 F.3d 1268, 1279 (9th Cir. 2017), but that opinion *affirmed dismissal*. Opp. at 5-6. No authority supports the

proposition that fully disclosed account policies are actionable under Rule 10b-5.  Mot. at 7 n.5.

Still, Plaintiffs fall back on their "reverse-churning" label.  Opp. at 5-6.  But as EDJ's motion explained, and as its disclosures reflect, Advisory Programs involve additional "advice, trading, or account activity in exchange" for the program fees, beyond the arrangements in brokerage accounts; so under Plaintiffs' own formulation, there was no "reverse-churning."  ¶ 71; Mot. at 8-9, 16-17 n.15.

Plaintiffs' response to this point is unpleaded, and even further removed from any attempt to plead an "untrue" or "misleading" statement.  They say they did not "utilize" the sophisticated Advisory Program account features, which they now call "unnecessary" (and imply were imposed unilaterally notwithstanding their signed agreements demonstrating they chose to receive them).  Opp. at 5-6 & n.5.  But no allegations whatsoever support those characterizations—let alone particularized factual allegations that relate to a *securities claim*, which depends on the disclosures, not which of the services provided to Plaintiffs they may or may not have decided to "utilize."

Moreover, Plaintiffs do not dispute that they received additional services—for example, research-driven portfolio construction, automatic rebalancing, delegated decision-making, and/or sophisticated guardrails to stay aligned with their goals (and greater portfolio diversification and trading activity as a result).  Mot. at 2, 4; Exs. 7-12.  Those features, as EDJ's disclosures make clear, go far beyond those available in brokerage accounts, where advice from a single broker is used to trade (or not) on a security-by-security basis.  Advisory Programs are not a "pricing strategy" or simply some sort of "all-you-can-trade" approach (which is what was being discussed in the decade-old statements Plaintiffs cite).  Opp. at 4.  There is no untrue or misleading statement on this theory.

*Statements concerning affiliated mutual funds.*  The opposition makes no attempt to respond to EDJ's demonstration that the allegations concerning Bridge Builder are flatly contradicted by the disclosures, which Plaintiffs again ignore.  Bridge Builder is not a profit center for EDJ; it is a client-service innovation that allows flexibility and negotiating power in selecting and paying for mutual fund sub-advisors, yielding significant savings in management fees that are *all* passed on to clients.  Mot. at 3-4.  Plaintiffs concede as much; their falsity argument does not address Bridge Builder at all.

*Statements concerning suitability analysis.*  The foregoing defects also are fatal to Plaintiffs' theories about statements concerning EDJ's suitability analysis—analysis that, as reflected in the

disclosures incorporated in the complaint, included in-person meetings, client questionnaires about individual circumstances and goals, and reviews by supervisory personnel (among other things). Mot. at 10-11. In response, Plaintiffs resort to two interrelated and sweeping theories: (a) that because they had allegedly traded infrequently, Advisory Program accounts necessarily were *actually unsuitable* not only for them but for all clients (which the complaint did not plead, likely in hopes of glossing over individualized inquiries), and (b) that the decision to select Advisory Program accounts by many investors means EDJ's suitability analysis was "by definition, a sham." Opp. at 6-7 & n.5.

These new theories could not support a securities claim, particularly because Plaintiffs acknowledged that they were not "relying on the advice or recommendation of Edward Jones" for any decision about account type, and represented they "believe[d] the investment advisory and other services provided under this Agreement will add value to their overall investment experience that more than justifies the additional expenses." Exs. 14-17 at 8, 24; Exs. 18-19 at 7. Also, Plaintiffs' contentions are not supported by particularized factual allegations. It is unsurprising (and consistent with industry-wide trends) that the holistic approach to portfolio construction and rebalancing in Advisory Program accounts is increasingly attractive even to investors who had traded infrequently when they paid on a trade-by-trade basis in a brokerage model. Plaintiffs also concede they received EDJ's disclosures and were asked about their individual goals (Opp. at 5-6), yet they seem to envision a paternalistic approach to suitability reviews that would require EDJ to reject requests to open a new Advisory Program account from clients who said they wanted a new approach. In any event, this is a securities case, and there is no support for the assertion that EDJ made misstatements about its suitability analysis *or* about Advisory Programs' suitability for any individual client.

*Statements concerning the DOL Rule.* Finally, Plaintiffs make no attempt to refute EDJ's explanations why the DOL Rule imposed real burdens that (temporarily) prompted EDJ to make changes to its policies for commission-based retirement accounts. Contrary to their core premise, Plaintiffs did not "plead facts alleging what the DOL Rule was"—nor, more importantly, have they disagreed with EDJ's legal analysis. Opp. at 7. Their failure to do so means that all of their other allegations on this topic are hopelessly conclusory. For example, Plaintiffs also do not dispute that EDJ (unlike many peer firms) sought to preserve as many client options as possible through

grandfathering as opposed to exiting brokerage accounts altogether due to the Rule's burdens.  Mot. at 12.  Instead, Plaintiffs simply ask the Court to accept their conclusory allegation that EDJ's compliance efforts were a pretext—which they were not, as the actual content of the Rule, public commentary, and judicial authorities reflect.  In any event, contrary to Plaintiffs' suggestion, EDJ did not state that the DOL Rule supposedly "compelled" clients to make any particular decision; it explained, accurately, that the Rule impacted what firms like EDJ could practicably provide.

Perhaps equally importantly, the opposition also fails to address EDJ's point that the DOL allegations are not tied in any way to the decision of these Plaintiffs to open Advisory IRAs—all of which were opened *before* promulgation of the Rule, *before* the policy changes it prompted, and *before* EDJ's entirely accurate public statements.  Mot. at 11-13; Dkt. Nos. 1-2, 1-3, 1-4, 1-5.

The opposition fails to show that any Defendant made false or misleading statements.

### b. The Opposition Fails to Support the Scienter Allegations

"To qualify as a 'strong inference,'" as mandated by the PSLRA, "an inference of scienter must be more than merely plausible or reasonable." *Tellabs v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007); *cf.* Opp. at 2 (arguing plausibility standard).  Pleading a strong inference of scienter requires plaintiffs to depict "specific contemporaneous statements or conditions that demonstrate the intentional or the deliberately reckless false or misleading nature of the statements when made." *E.g.*, *Metzler*, 540 F.3d at 1066; *Ronconi v. Larkin*, 253 F.3d 423, 432 (9th Cir. 2001).  But here, no particularized factual allegations suggest that *anyone* at EDJ believed, much less intended, that EDJ's statements were untrue or misleading, or that Advisory Programs were anything other than fully disclosed, attractive options for its clients.  By far the more "cogent and compelling" inference is that EDJ believed in its business of providing choices and strove to comply with the law.  Mot. at 13.

The opposition points to individual defendants' involvement in EDJ's business—"serv[ing] on committees," "determining its policies," attending firm events, and even "eating lunch with" financial advisors.  Opp. at 8-9.  The theory appears to be that knowledge of the business is enough because, supposedly, "no reasonable person could deny" that EDJ's statements about its business were misleading.  Opp. at 7-8.  That is incorrect on multiple levels.  "[G]eneral awareness of the day-to-day workings of the company's business does not establish scienter—at least absent some

additional allegation of specific information conveyed to management and related to the [alleged] fraud." *E.g.*, *Metzler*, 540 F.3d at 1068.  There are no such particularized factual allegations here, and knowledge of the business model is not the same as knowledge that the model supposedly was fraudulent.  And unlike in Plaintiffs' cases, that Advisory Programs were important for EDJ does not suggest there was some problem in the company's core operations so glaring that it would be "absurd" to believe an individual speaker did not know about it.  *Cf., e.g.*, *In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 708 (9th Cir. 2012) (executives knew of "difficulty of the . . . integration" with key acquisition); *Shankur v. Imperva Inc.*, 2016 WL 2851859, at *5-8 (N.D. Cal. May 16, 2016) (executives knew they "lost 203 deals" to competitor).

In fact, many of the allegations that Plaintiffs rely upon have no bearing on scienter at all.  For example, Plaintiffs cite comments by Mr. Weddle in 2006, which were not "contemporaneous"—they were years *before* Advisory Programs were introduced—and which referred generically to "wrap fee" pricing, at a time when commentators stated that EDJ "hasn't improved its portfolio-management tools despite repeated promises."  https://www.wealthmanagement.com/institutions/keeping-joneses (Apr. 1, 2006) (cited in ¶ 38).  Mr. Weddle was not commenting about Advisory Programs or their enhanced services, which were not introduced until two years later.  Opp. at 10-11.

Virtually everything else in the opposition is just insinuation and makeweight.  Opp. at 8-10, 12 ("Essentially," "effectively," "implicitly," etc.).  That is unsurprising—Plaintiffs do not even attempt to assert that they have personal knowledge of any internal communications they purport to describe (and they have rightly not disputed their failure to plead particularized facts concerning a supposed presentation to management).  *Id.* at 10 n.8; *cf.* Mot. at 3.  Moreover, it is not remotely suggestive of fraud that EDJ has a meaningful training and supervisory structure—not to "push" clients to one account type or another (another hollow accusation, Opp. at 6-7), but rather to help ensure that individual financial advisors are engaging in discussions with their clients that set forth all of their options, and to review for suitability.  ¶ 164 (describing reviews of large commissions to guard against churning).  Not a single fact is pleaded to distinguish EDJ's supervisory and training structures from exactly what would be expected from a firm committed to *following* the law.

Similarly, the public comments about the DOL Rule do not suggest that any speaker knew

EDJ somehow was misinterpreting the law (which it was not). Opp. at 11-12. Rather they show that EDJ was striving to comply with the law, while simultaneously providing its clients with as many options as it could and thus reinforcing its role in the industry as a client-service leader.

Finally, Plaintiffs make much ado about Advisory Programs' profitability—the kind of generalized theory about "routine corporate objectives" that has rightly been rejected because "to hold otherwise would support a finding of scienter for any company that seeks to enhance its business prospects." *E.g.*, *In re Rigel Pharm., Inc. Sec. Litig.*, 697 F.3d 869, 884-85 (9th Cir. 2012); *Glazer Capital Mgmt., LP v. Magistri*, 549 F.3d 736, 748 (9th Cir. 2008). In response, Plaintiffs state that fee-based accounts were "unpopular"—but the complaint does not even attempt to support that bare assertion, nor explain how supposed unpopularity would be relevant to claims of securities fraud. Opp. at 13 n.9. And again, this action is not "akin" to an insider trading case, contrary to Plaintiffs' reliance on *No. 84 Employer-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 944 (9th Cir. 2003). *See also supra* n.2. There is no inference of scienter.

### c.   The Opposition Fails to Support Reliance

Plaintiffs do not contend that they have pleaded actual reliance; plainly they have not. Mot. at 15. And as with their complaint, the opposition demonstrates that reliance cannot be presumed—this case is not primarily about omissions like *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 155 (1972), which involved a total failure to speak. In fact, Plaintiffs repeatedly refer to "alleged misleading statements." Opp. at 10; *id.* at 6 ("disclosures" were "affirmatively misleading"), 16 ("misstatements"), 17 n.15 ("misstatements to FAs" and "misstatements being passed on to clients"). The opposition thus confirms that Plaintiffs' claims rise or fall based on what EDJ said, just as in *Poulos v. Caesars World, Inc.*, 379 F.3d 654, 667 (9th Cir. 2004). Mot. at 7. Plaintiffs also do not dispute that *Affiliated Ute* is reserved for cases where "reliance would be difficult to prove because it was based on a negative," *Desai v. Deutsche Bank Sec. Ltd.*, 573 F.3d 931, 941 (9th Cir. 2009), nor do they explain why it would be "difficult" for any individual who had actually read and was somehow deceived by EDJ's statements to say so. Mot. at 16. But, as the opposition does not dispute, Plaintiffs have conceded they did not read—or rely on—the statements at issue. Mot. at 15.

Notably, Plaintiffs fail to cite *any* case applying the *Affiliated Ute* presumption. They are

asking this Court to stake out new ground, contrary to the Ninth Circuit's "restrictive" interpretation. *In re Interbank Funding Corp. Sec. Litig.*, 629 F.3d 213, 219 (D.C. Cir. 2010). There is no reliance.

### d.  The Opposition Fails to Support Loss Causation

As to loss causation, Plaintiffs have not alleged, let alone with particularity, that they did not receive the promised additional services in Advisory Program accounts, contrary to their conclusory assertions that Advisory Programs merely provided "the same services that had come for free with their commission-based account." Opp. at 15-16 n.13; *supra* at pp. 4-6. Plaintiffs do not explain how statements about the DOL Rule affected them at all. Opp. at 16 n.14. Nor do they attempt to refute the reasoning of *Fernandez v. UBS*, 2018 WL 4440498, at *3-4 & n.3 (S.D.N.Y. Sept. 17, 2018), which explained that failure to show *actual* unsuitability would preclude proximate causation of damages from any breach of representations about suitability analysis (analogous to the claims here). Opp. at 15 n.12; *Loos v. Immersion Corp.*, 762 F.3d 880, 887 (9th Cir. 2014) (misstatement must "proximately cause" economic losses). The Rule 10b-5(b) claims should be dismissed.

### 2.  The "Scheme Liability" Claims

Plaintiffs concede that "scheme liability hinges on whether [Defendants] undertook an inherently deceptive act distinct from the[] [alleged] omissions." Opp. at 16; *Simpson v. AOL Time Warner, Inc.*, 452 F.3d 1040, 1052 (9th Cir. 2006). But when Plaintiffs "[s]pecifically" reference which theories they believe support scheme liability, they point to their vague allegations concerning training, supervision, and FA compensation. Opp. at 17. Again, those are not specific allegations of anything "inherently deceptive." Nor does any particularized factual allegation suggest that any "inherently deceptive" aspect of these policies was known to even a single individual defendant, or actually motivated Plaintiffs' financial advisors to act inappropriately. So too with the "computer system"—especially absent particularized factual allegations to suggest any system was "inherently deceptive" and not just "cumbersome."[3] Opp. at 18 n.16; ¶ 155. The Exchange Act claims all fail.

---

[3] Plaintiffs' key cases either find no liability, or illustrate how far Plaintiffs are from *specifically* alleging *inherently deceptive* conduct. *Simpson*, 452 F.3d at 1052 (affirming dismissal); *In re Allstate Life Ins. Co. Litig.*, 2013 WL 5161688, at *15 (D. Ariz. Sept. 13, 2013) (summary judgment); *SEC v. Loomis*, 969 F. Supp. 2d 1226, 1229-32 (E.D. Cal. 2013) (Ponzi scheme); *NYCERS v. Berry*, 616 F. Supp. 2d 987, 996 (N.D. Cal. 2009) (stock options backdating); *SEC v. Bardman*, 216 F. Supp. 3d 1041, 1045-49 (N.D. Cal. 2016) (detailing plan to deceive auditors).

**B.     The Opposition Fails to Support the Securities Act Claims**

Contrary to Plaintiffs' suggestion, Section 12(a)(2) does not address standalone oral statements; it only covers "oral communications that relate to a prospectus." *Gustafson v. Alloyd Co.*, 513 U.S. 561, 567–68 (1995); *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 536 (9th Cir. 1989) ("prospectuses"); *Hertzberg v. Dignity Partners,* 191 F.3d 1076, 1080-81 (9th Cir. 1999). Plaintiffs' premise is that any "marketing materials" are a prospectus (Opp. at 18-19 n.18)—but of course that is wrong, otherwise any issuer's roadside billboard would be subject to the strict standards of the 1933 Act. *Gustafson* held that "the word 'prospectus' is a term of art referring to a document that describes a public offering of securities." 513 U.S. at 584. In Plaintiffs' purportedly contrary authority, *Bridges v. Geringer*, 2015 WL 2438227, at *5 & n.4 (N.D. Cal. May 21, 2015), the parties did not dispute that the fund at issue was a "public offering"—so written materials describing that fund were a "prospectus." But EDJ's materials setting forth various investment account options are nothing like that. And Plaintiffs fail to allege that the Bridge Builder prospectuses were misleading; the complaint does not use the word "prospectus" at all. The Securities Act claims fail.

**C.     The Opposition Fails to Avoid SLUSA Preclusion**

SLUSA preclusion applies when "fiduciary duty claims . . . implicitly depend on allegations" of deceptive conduct that supposedly violated the federal securities laws. *Northstar Fin. Advisors, Inc. v. Schwab Inv.*, 904 F.3d 821, 833 (9th Cir. 2018); *Fleming v. Charles Schwab Corp.*, 878 F.3d 1146, 1154 (9th Cir. 2017).[4] The substance of the claims here is supposed deception—as shown by 200+ paragraphs attempting (unsuccessfully) to plead just that. The claims are precluded.

### III.  Conclusion

EDJ's motion to dismiss should be granted with prejudice and without leave to amend.

Dated: March 8, 2019                                 By: /s/ Meryl L. Young
                                                      MERYL L. YOUNG
                                                      GIBSON, DUNN & CRUTCHER LLP

---

[4] Plaintiffs' cases are readily distinguishable. *Freeman Inv., L.P. v. Pac. Life Ins. Co.*, 704 F.3d 1110, 1115-16 (9th Cir. 2013) (contract case did not claim deception); *In re Charles Schwab Corp. Sec. Litig.*, 257 F.R.D. 534, 551 (N.D. Cal. 2009) (no claim of deception so no preclusion; "plaintiffs readily agree that [defendant] properly disclosed the change"); *Stoody-Broser v. Bank of Am.,* 2012 WL 1657187, at *4 n.2 (N.D. Cal. May 10, 2012) ("a later allegation or implicit suggestion of [] failure to disclose will again threaten to render the matter [] preempted").

# PROOF OF SERVICE

I, Sandra M. Pineda, declare as follows:

I am employed in the County of Los Angeles, State of California, I am over the age of eighteen years and am not a party to this action; my business address is 3161 Michelson Drive, Irvine, CA 92612-4412, in said County and State. On March 8, 2019, I served the following document(s):

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

on the parties stated below, by the following means of service:

Ivy T. Ngo
FRANKLIN D. AZAR & ASSOCIATES, P.C.
14426 East Evans Avenue
Aurora, CO 80014
Telephone:   (303) 757-3300
Facsimile:   (303) 759-5203
ngoi@fdazar.com

John Garner
GARNER LAW OFFICE
109 North Marshall Avenue
P.O. Box 908
Willows, CA 95988
Telephone:   (530) 934-3324
Facsimile:   (530) 934-2334
jrg@erglaw.net

*Counsel for Plaintiffs*

☑ **BY ELECTRONIC TRANSFER TO THE CM/ECF SYSTEM**: On this date, I electronically uploaded a true and correct copy in Adobe "pdf" format the above-listed document(s) to the United States District Court's Case Management and Electronic Case Filing (CM/ECF) system. After the electronic filing of a document, service is deemed complete upon receipt of the Notice of Electronic Filing ("NEF") by the registered CM/ECF users.

☑ **(FEDERAL)**   I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 8, 2019.

*[signature]*
Sandra M. Pineda