IVY T. NGO (249860)
JOSHUA E. MOYER (259908)
FRANKLIN D. AZAR (*pro hac vice*)
MICHAEL D. MURPHY (*pro hac vice*)
FRANKLIN D. AZAR & ASSOCIATES, P.C.
14426 East Evans Avenue
Aurora, CO 80014
Telephone: (303) 757-3300
Facsimile: (720) 213-5131
ngoi@fdazar.com
moyerj@fdazar.com
azarf@fdazar.com
murphym@fdazar.com

JOHN R. GARNER (246729)
GARNER & ASSOCIATES
109 North Marshall Avenue
P.O. Box 908
Willows, CA 95988
Telephone: (530) 934-3324
Facsimile: (530) 934-2334
john@garner-associates.com

*Lead Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE EDWARD D. JONES & CO., L.P. SECURITIES LITIGATION | No. 2:18-cv-00714-JAM-AC <br><br> **NOTICE OF MOTION, MOTION FOR PRELIMINARY INJUNCTION AND CORRECTIVE ACTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> DATE: **Tuesday, May 21, 2019** <br> TIME: 1:30 PM PDT <br> LOCATION: Courtroom 6, 14th Floor <br> JUDGE: Hon. John A. Mendez |

**NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION AND CORRECTIVE ACTION**

TO DEFENDANTS EDWARD D. JONES & CO., L.P.; THE JONES FINANCIAL COMPANIES, L.L.L.P.; EDJ HOLDING COMPANY, INC.; JAMES D. WEDDLE; PENELOPE PENNINGTON; DANIEL J. TIMM; KENNETH R. CELLA, JR.; BRETT A. CAMPBELL; KEVIN D. BASTIEN; NORMAN L. EAKER; VINCENT J. FERRARI; TIMOTHY J. KIRLEY; JAMES A. TRICARICO, JR.; OLIVE STREET INVESTMENT ADVISORS, LLC; PASSPORT HOLDINGS, LLC; PASSPORT RESEARCH, LTD; and JOHN DOES 1-100, AND THEIR ATTORNEYS OF RECORD: PLEASE TAKE NOTICE that on Tuesday, May 21, 2019 at 1:30PM PDT or as soon thereafter as oral argument by counsel may be heard for approximately 20 minutes in Courtroom 6, 14th Floor, U.S. District Court, Eastern District of California, located at 501 I Street, Sacramento, CA 95814, Plaintiffs individually and on behalf of the putative class will move the Court pursuant to Federal Rules of Civil Procedure ("Rules") 23 and 65 and Civil Local Rule 231(d) for the Orders described below, along with any other action the Court deems just and proper.

Plaintiffs bring this Motion seeking the Court's assistance because since the filing of their initial Complaint on March 30, 2018, Defendants have engaged in improper communications with certain of their current or former clients who are putative class members in the instant action ("Class Clients"). Some of these communications have resulted in Class Clients signing agreements containing Settlements, Waivers of Claims and/or arbitration provisions which could potentially bar them from participating as class members in this case should the Court certify a Class. *See* Declaration of Joshua E. Moyer ("Moyer Declaration"), ¶¶ 6, 9. As set forth herein, Defendants' communications were misleading and potentially coercive because, *inter alia*, they failed to advise Class Clients of the above-captioned class action litigation in violation of *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981), and its progeny.

Accordingly, Plaintiffs respectfully request that this Court exercise its broad authority and enjoin Defendants from engaging in any further misleading communications which run afoul of Rule 23. *See O'Connor v. Uber Techs., Inc.*, No. C-13-3826 EMC, 2013 WL 6407583, at *4 (N.D. Cal. Dec. 6, 2013) (citing *Gulf Oil* , 452 U.S. at 100 ). Specifically, Plaintiffs will move this Court – along with any other relief that the Court deems just and proper – for:

1) An Order enjoining Defendants from making any further communications with any putative class member which settle, or could be reasonably interpreted to settle, the claims in the present matter, including any written communications compelling arbitration of such claims, unless Plaintiffs' Counsel and the Court are given notice of such communications, and such communications contain: (i) information about the present lawsuit, including an objective, accurate and impartial description of Plaintiffs' claims and the status of the case; (ii) a statement that putative class members may consult with an attorney before executing any documents that settle, release, and/or in any way compromise their claims, including any document requiring that they arbitrate their claims; (iii) contact information for Plaintiffs' Counsel; and (iv) a copy of Plaintiffs' Amended Complaint for Violation of Federal Securities Laws and Breach of Fiduciary Duty, Dkt. No. 24 ("Amended Complaint")  in the present case and any other pertinent pleadings or Orders;

2) An Order providing that *any language or clause* contained in any communications or agreements between Defendants and any putative class member which settle, or could be reasonably interpreted to settle, the claims in the present matter, including any written communications compelling putative class members to arbitrate such claims, shall be ***void and unenforceable*** in the present action;

3) An Order providing that the ***remainder of any agreement*** described in paragraph 2 (portions not involving settlement or arbitration) made since the initiation of this lawsuit (such as an agreement switching putative class members from a fee-based account ***back*** to a commission-

based account), shall be ***voidable and unenforceable at the election of the putative class member***, and the putative class member shall be permitted to participate as a class member in this case should a class be certified; and

    4)    An Order stating that Defendants shall issue a Corrective Notice approved by this Court to any putative class member that (i) has received or executed any of the documents described in paragraphs 1-3 or (ii) has been transferred back to a commission-based account since the initiation of this lawsuit (*see* Proposed Corrective Notice, Moyer Declaration, ¶17, Exhibit 3).

This Motion is supported by the enclosed Memorandum of Points and Authorities, the Declaration of Joshua E. Moyer and accompanying exhibits, the pleadings and records on file, and such other argument and evidence that may be presented during the hearing.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION AND CORRECTIVE ACTION**

**I.     PRELIMINARY STATEMENT**

District courts "have both a duty and broad authority to control communications to putative class members even before class certification and to enter appropriate orders governing the conduct of counsel and the parties." *O'Connor*, 2013 WL 6407583, at *4 (citing *Gulf Oil*, 452 U.S. at 100).

Although this Court has not yet certified a class, Plaintiffs and their Counsel also owe a duty to putative class members to protect them from misleading communications and the potential for unwittingly waiving their claims as alleged in the Amended Complaint. *See* Fed. R. Civ. P. 23(g)(2)(A) advisory committee note (2003) ("Whether or not formally designated interim counsel, an attorney who acts on behalf of the class before certification must act in the best interests of the class as a whole."). Indeed, courts in this district view this obligation as a fiduciary duty. *See, e.g.*, *Stone v. Advance Am.*, No. 08cv1549 WQH (WMc), 2009 WL 4722924, at *3 (S.D. Cal. Dec. 4, 2009), objections overruled, No. 08cv1549 WQH (WMc), 2010 WL 1433540 (S.D. Cal. Apr. 8, 2010) ("It is well established that counsel for plaintiff has a fiduciary relationship with putative class members: 'Beyond their ethical obligations to their clients, class attorneys, purporting to represent a class, also owe the entire class a fiduciary duty once the class complaint is filed.'") (citing *In re Gen. Motors Corp. Pick–Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 801 (3rd Cir.1995)); *see also Staton v. Boeing Co.*, 327 F.3d 938, 960 (9th Cir. 2003) (indicating agreement with the above statement in *In re General Motors*).

Plaintiffs filed their original Complaint on March 30, 2018, and an Amended Complaint on September 24, 2018. The gravamen of Plaintiffs' claims is that Defendants engaged in a reverse churning scheme whereby they unlawfully shifted their long-standing clients from commission-based accounts into fee-based programs solely to collect additional fees. *See* Amended Complaint, *generally*. Defendants have countered by claiming that their purported "robust disclosures" to Class Clients insulate them from liability. *See* Reply in Support of Defendants' Motion to Dismiss Plaintiffs' Amended Complaint, Dkt. No. 37 ("MTD Reply") at 2, 4. In addition, Defendants assert

on the one hand that Edward D. Jones & Co., LP ("EDJ") "took *extensive* steps to assess whether Advisory Program accounts were suitable choices for each individual investor," but on the other that "clients confirm they understand the implications of their choices [and] decide for themselves which account is best for them." Motion of Defendants to Dismiss Plaintiffs' Amended Complaint, Dkt. No. 29 ("MTD") at 5, 11 (emphasis in original). However, as Plaintiffs alleged, any purported "robust disclosures" omitted key material facts and these misleading "disclosures" were used by Defendants to coerce Class Clients to move to fee-based accounts, regardless of whether it was in their best interests. Amended Complaint, ¶¶ 71, 104, 106-111.

Since the initial Complaint was filed, it has come to the attention of Plaintiffs' Counsel that EDJ has communicated with certain of their clients who also appear to be members of the putative class regarding, among other things, transferring them from fee-based programs back to commission-based accounts. Moyer Declaration, ¶¶ 2-8. In transferring Class Clients from fee-based programs back to commission-based accounts, EDJ charged at least one such client commissions and/or fees in connection with repurchasing certain funds in the commission-based account. *Id*., ¶ 8. And at least one of these Class Clients who was charged commissions in connection with the repurchase of funds lodged a complaint with EDJ, which resulted in EDJ's Complaint Investigations department reviewing the complaint and EDJ entering into a settlement agreement with that Class Client whereby EDJ agreed to pay $8542 in consideration for releasing EDJ from all causes of action and lawsuits the Class Client ever had "related to moving to the Guided Solutions program." *Id.*, ¶¶ 3, 8, Exhibit 1 ("Settlement Agreement").

The Settlement Agreement may be interpreted as barring the Class Client from being a class member in the present case. Moreover, EDJ's communications and settlement agreement with the Class Client were improper because they were misleading and run afoul of the Supreme Court's decision in *Gulf Oil*, and its progeny, including *Kutzman v. Derrel's Mini Storage, Inc*., 354 F. Supp. 3d 1149 (E.D. Cal. 2018). Defendants' communications here were particularly misleading because EDJ paid the Class Client $8542 to reimburse him for fees generated as a result of repurchasing certain funds after moving him back to a commission-based account – not for claims

1  alleged in the Amended Complaint – yet would arguably have him waive his right to those claims. Moyer Declaration, ¶ 9. Such improper fees are just one of many alleged in the Amended Complaint. *See* Amended Complaint, ¶¶ 95-97 (discussing the heavy front-end fees on Class A shares of mutual funds).

In addition, in transferring certain Class Clients from fee-based programs ***back*** to commission-based accounts, EDJ caused them to sign agreements with materially different terms which included, among other things, an arbitration provision which may be interpreted as potentially barring those Clients from participating as class members in the present case. Moyer Declaration, ¶9, Exhibit 2.

These types of communications are misleading because EDJ failed to, among other things, advise Class Clients of the existence of this lawsuit, much less provide them a copy of the Amended Complaint and/or an adequate description of the case, including the status of the proceedings. These material omissions exacerbate the scheme alleged in the Amended Complaint and the failure to disclose such important facts creates a high likelihood that putative class members would give away more rights than they realized or intended to by executing the "Settlement of Claim" as they do not have all the material facts necessary to make a fully informed decision.

## II.   JUDICIAL INTERVENTION IS NECESSARY

### A.   Not Only Have the Parties Been Unable to Reach a Resolution, But Any Stipulation Reached May Not Have Been Enforceable

Counsel for Plaintiffs and Defendants have extensively met-and-conferred on the issues raised herein in an attempt to stipulate to a resolution. However, no satisfactory agreement was reached. Moreover, in light of the Supreme Court's ruling that "a plaintiff who files a proposed class action cannot legally bind members of the proposed class before the class is certified," *Standard Fire Ins. Co. v Knowles*, 568 U.S. 588, 593 (2013), any stipulation that Plaintiffs enter into with Defendants at this point in the litigation which purports to bind the class would be of questionable enforceability.  Accordingly, to satisfy their duty to protect putative class members, Plaintiffs must ask that this Court enter the above Orders and Corrective Actions to prevent the

potential for irreparable harm and frustration of the purpose of Rule 23.

Defendants' Counsel has represented to Plaintiffs' Counsel that this is a contained issue, affecting as few as seven individuals to-date. Moyer Declaration, ¶12. However, without the benefit of discovery, Plaintiffs cannot verify this fact. Also, Defendants operate a business model in which "more than 15,000 financial advisors do business face-to-face with individual clients, largely in single-advisor branch offices." *See* MTD at 4. Defendants' Counsel cannot possibly monitor the activities of over 15,000 offices at all times, making it impossible to confirm precisely how many putative class members have been affected or received such communications. Further, even if the potential harm to putative class members is currently contained and small, this Court should still take action to protect them. Indeed, now is the ideal time for the Court to resolve the matter because it is a contained situation. Waiting or failing to take action could result in a much less manageable situation, affecting many more putative class members, and frustrating the purpose of Rule 23.

Defendants may claim that these were harmless, routine communications and that they were obligated under FINRA Rule 3110 to address their clients' complaints. However, even if true, this does not absolve Plaintiffs' Counsel or the Court from their duty to protect putative class members. In fact, "'[a]n order under *Gulf Oil* does not require a finding of actual misconduct – rather the key is whether there is 'potential interference' with the rights of the parties in a class action.'" *Kutzman*, 354 F. Supp. 3d at 1156 (quoting *Slavkov v. Fast Water Heater Partners I, LP*, No. 14-cv-04324 JST, 2015 WL 6674575, at *2 (E.D. Cal. Nov. 2, 2015)). Defendants need not engage in acts which rise "to such an egregious level that makes it immediately analogous to prior cases" for the Court to take action to protect putative class members from unknowingly waiving their rights in this action. *Id.* Rather, all that is necessary is the potential for harm and injustice, which exists here.

First, Plaintiffs have provided evidence of Defendants' misconduct (*see* Moyer Declaration, ¶¶ 2-10, Exhibits 1 & 2). Plaintiffs have also demonstrated the likelihood of harm by showing that Class Clients are likely waiving their rights to participate in this action without understanding that they are doing so, thus judicial intervention is appropriate and necessary under the *Gulf Oil* balancing test applied by the Ninth Circuit. *See* Moyer Declaration, ¶¶ 5-10; *Domingo v. New*

*England Fish Co.*, 727 F.2d 1429, 1438-39 (9th Cir. 1984).

**B.     Defendants' Communications with Putative Class Members Are Misleading and Potentially Interfere with Their Legal Rights**

Rule 23(d)(1) grants courts authority to "'impose conditions on the representative parties'" and "'deal with…procedural matters'" in class action lawsuits. *See Kutzman*, 354 F. Supp. 3d at 1153 (quoting Fed. R. Civ. P. 23(d)(1)). In fact, "'when a party engages in behavior that threatens the fairness of the litigation,' the court has 'both the duty and the broad authority [to] regulate of the notice and opt-out processes and impose limitations' on the parties." *Id.* (quoting *Gulf Oil*, 452 U.S. at 100).

The Supreme Court, in addressing the issue of pre-certification communications with putative class members, has ruled that a district court has the authority to issue an order regulating communications between counsel and putative class members when it is "based on a clear record and specific findings reflecting a weighing of the need for a limitation and the potential interference with the parties' rights." *Gulf Oil*, 452 U.S. at 90. Furthermore, the Ninth Circuit, in applying the *Gulf Oil* balancing test, has identified the principle concerns as: "(1) solicitation of direct representation of class members who are not formal parties, (2) solicitation of funds and agreements to pay fees, (3) solicitation by defendants of requests to opt out, and (4) communications which may be confusing or misleading, or create an impression which reflects adversely on the court." *Domingo*, 727 F.2d at 1441. Consideration of the *Domingo* factors support the Court taking action here because Defendants are: 1) soliciting unnamed parties, 2) soliciting an agreement, 3) for the purpose of coercing putative class members to effectively "opt out" of the class action by settling and releasing their claims, 4) with communications that are misleading and omit crucial details about their rights in this litigation.

Plaintiffs' Counsel is already aware of multiple potential class members who received misleading solicitations from Defendants to settle their claims relating to converting their commission-based accounts to fee-based ones. *See* Moyer Declaration, ¶¶ 2-4. Without fully comprehending the gravity of the offer, one putative class member even executed it. *Id.* More putative class members likely have been or will unknowingly waive their rights without an Order

from the Court preventing Defendants from making such solicitations.

These communications between Defendants and Class Clients were conducted without Plaintiffs' Counsel having any knowledge of them. This matter is only before the Court because Class Clients informed Plaintiffs' counsel that they had received such documents. Moyer Declaration, ¶¶ 2-4. Courts in this Circuit have recognized that in cases involving putative class members, "'a unilateral communications scheme . . . is rife with potential for coercion,'" *Camp v. Alexander*, 300 F.R.D. 617, 621 (N.D. Cal. 2014) (citation omitted), and that corrective action may be required to remedy such improper communications. *Guifu Li v. A Perfect Day Franchise, Inc.*, 270 F.R.D. 509, 518 (N.D. Cal. 2010).

A communication is misleading – as is the case here – when defendants procure a settlement "without providing adequate information about the pending class action." *O'Connor v. Uber Techs., Inc.*, No. C-13-3826, 2014 WL 1760314 EMC, at *7 (N.D. Cal. May 2, 2014). The *Camp* court noted that "'surely that test is concomitant with the potential for abuse in the communications, including being misled about the strength and extent of their claims. The putative class members can be misled through omissions and failure to provide enough information, which can include the failure to append the plaintiffs' complaint to a settlement offer.'" 300 F.R.D. at 624 (quoting *Cty. of Santa Clara v. Astra USA, Inc.*, No. C 05–03740 WHA, 2010 WL 2724512, at *3 (N.D. Cal. July 8, 2010) (Alsup, J.)). The *Camp* court ultimately held that the correspondence from defendants containing settlement offers were flawed and required corrective action because it omitted key information "such as plaintiffs' counsel's contact information and a full description of the claims or the complaint." *Id.* at 625.

For the same reasons, Defendants' "Settlement of Claim" here is an improper communication. Nowhere in the "Settlement of Claim" is notice provided of the instant class action. Nor are the recipients apprised of the nature of their claims, the potential for recovery in the instant class action, Lead Counsel's contact information, or the ability of recipients to contact Lead Counsel. Therefore, Defendants have improperly communicated with Class Clients to solicit

settlements of their claims.[1]

Moreover, a communication which fails to advise a putative class member of the existence of a class action lawsuit is abusive if "the class action sought recovery in excess of that proposed by the defendant." *Cox Nuclear Medicine v. Gold Cup Coffee Servs., Inc.*, 214 F.R.D. 696, 699 (S.D. Ala. 2003); *see also Ashely v. Youngblood*, No. 1:16-cv-01638 JLT, 2019 WL 415033, at *6 (E.D. Cal. Feb. 1, 2019) (applying the reasoning of *Cox Nuclear* to determine whether a communication to a class member is abusive or misleading). Here, Defendants only offered a refund of "charged commissions" for "repurchased American Funds Class A shares"[2] in the "Settlement of Claim." Moyer Declaration, ¶8, Exhibit 1. But the Amended Complaint seeks "actual damages, statutory damages, double damages, treble damages, punitive damages, consequential damages, restitution, disgorgement, and any other appropriate compensatory, equitable, or exemplary relief." §VIII.E ("Prayer for Relief"). In other words, the Amended Complaint seeks, *inter alia*, recovery of *all* fees paid as a result of the improper conversion from a commission-based to a fee-based account and the alleged reverse-churning scheme while the "Settlement of Claim" offers a refund of only a portion of the fees paid to EDJ. Therefore, the instant class action seeks "recovery in excess of that proposed by the [D]efendant[s]." *See Cox Nuclear*, 214 F.R.D. at 699.

Finally, certain Class Clients who were moved from fee-based back to commission-based accounts have been improperly asked to sign agreements containing an arbitration clause which was not present in previous agreements between them and EDJ. *See McKee v. Audible, Inc.*, No. CV 17-1941-GW (Ex), 2018 WL 2422582, at *6 (C.D. Cal. Apr. 6, 2018) (nullifying arbitration agreements obtained through improper communications that omitted notice of ongoing litigation).

---

[1] *See Cheverez v. Plains All Am. Pipeline, LP*, No. CV15-4113 PSG (JEMx), 2016 WL 861107, at *4 (C.D. Cal. Mar. 3, 2016) (invalidating releases obtained through improper communications that omitted explanation of plaintiffs' claims and contact information for plaintiffs' counsel, and ordering defendants to provide curative notice informing claimants of their right to participate in the litigation); *O'Connor*, 2014 WL 1760314, at *7 (ordering that parties meet and confer to create a corrective notice consistent with court opinion and barring defendant from providing putative class members any agreement containing an arbitration agreement until the notice and procedures were approved by the court).

[2] This example demonstrates that the transfer of accounts to "fix" a situation, *i.e.*, placing a Class Client back in a commission-based account after they were improperly shifted to a fee-based account, is a costly process for Class Clients but still profit-generating for Defendants. In at least one case, EDJ calculated the associated fees and commissions as costing in excess of $8400. *See* Moyer Declaration, Exhibit 1.

If additional putative class members signed or will sign similar agreements, and those agreements are allowed to stand, those putative class members' rights in this class action will have been waived without them having full knowledge of material facts surrounding their claims.

Accordingly, in order to protect the rights of putative class members, this Court should order Defendants to immediately end further unilateral communications with putative class members about settling and/or releasing claims related to converting from a commission-based to a fee-based account and invalidate any "Settlement of Claim" forms that have already been executed.

### C. This Court Can and Should Enjoin Defendants from Future Solicitation of Settlements from Putative Class Members that Are Misleading or Potentially Coercive

Defendants' solicitation of settlements and/or releases from putative class members: 1) failed to provide sufficient facts relating to this litigation for them to make a fully informed decision, 2) failed to compensate them for claims made in the Amended Complaint, and/or 3) had improper arbitration clauses. Accordingly, these communications were misleading and potentially coercive, as they could interfere with putative class members' rights by having them unknowingly waive their rights in this litigation.[3] Rule 23(d)(1)(c) grants this Court the power to "impose conditions on the representative parties" in conducting an action. Further, Rule 83(b) grants this Court authority to regulate its practice "in any manner consistent with federal law, rules adopted under 28 U.S.C. §§ 2072 and 2075, and the district's local rules" when there is no controlling law on the subject. Since neither Rule 23 nor the Local Rules speak directly to this issue, this Court has discretion to issue orders which protect the rights of all parties, as well as the integrity of this action.

This Court has the authority to issue, and the circumstances warrant, an Order enjoining Defendants and their successors, agents, officers, servants, employees, attorneys and representatives and all persons acting in concert or participating with them, from improperly soliciting settlements or releases from any putative class member relating to the conversion of commission-based to fee-based accounts while this litigation is pending. As discussed *supra*, if

---

[3] Defendants may contend that their communications with putative class members were not "solicitations," but simply communications occurring in the regular course of business. Not so. On the face of the communications, Defendants are most certainly "soliciting" their customers to execute a "Settlement of Claim" in a manner which "is abusive in that it threatens the proper functioning of the litigation." *See Cox Nuclear*, 214 F.R.D. at 697-98.

Defendants are permitted to obtain additional settlements and releases of claims from putative class members through misleading or coercive communications, such conduct will cause great and irreparable harm to putative class members if they unknowingly waive their rights in this litigation – simply because Defendants did not tell them about it.

This Court also has the authority, and just cause, to order a corrective action in the form of a corrective notice. Corrective notices have been used to remedy improperly misleading communications. *See O'Connor*, 2014 WL 1760314, at *8-*9; *see also Camp*, 300 F.R.D. at 626; *Goody v Jefferson Cty.*, No. CV-09-437-E-BLW, 2010 WL 3834025, at *2 (D. Idaho Sept. 23, 2010) (citing *Cox Nuclear* in ordering defendant to send a corrective notice informing putative plaintiffs of a collective lawsuit and of their rights, including what damages they may be entitled to, where defendant's previous misleading communication could have prevented putative plaintiffs from making an informed choice about whether to join the action). Plaintiffs request that any putative class members from whom Defendants solicited settlements and/or releases be sent the Proposed Corrective Notice. *See* Moyer Declaration, ¶17, Exhibit 3.

### D. This Court Should Invalidate Any Language Releasing Claims or Compelling Arbitration Which Have Been Obtained from Class Clients Since This Litigation Began and Rule that Any Agreements Are Voidable in Their Entirety at the Election of the Class Client

Plaintiffs also request an Order by this Court finding any language relating to settlements, releases of claims, or compelling arbitration, which relate to the conversion of commission-based to fee-based accounts by any Class Clients obtained by EDJ since the initiation of this class action lawsuit void and unenforceable in the present action. *See Astra USA, Inc.*, 2010 WL 2724512, at *6 (Granting plaintiffs' motion for corrective action and invalidating release because "misleading the putative plaintiffs, offering a potentially much decreased settlement, and not cooperating with the plaintiffs all show a lack of good faith."). Further, the Court should find the remainder of any such agreements to be voidable at the election of the Class Client.

Since EDJ may have already paid certain Class Clients in exchange for settling and releasing their claims, Plaintiffs propose that should this action conclude with an approved settlement or

judgment in their favor that is higher than what they obtained as class members, Defendants should simply pay those Class Clients the difference. In addition, Plaintiffs would be willing to amend their class definition to ameliorate this issue. These measures are especially appropriate where knowledge of any amounts paid, and to whom, in exchange for settlements and/or releases are within the specific control of Defendants. Moreover, these concerns pale in comparison to the harm, discussed *supra*, that will result if signed "Settlement of Claim" forms based on incomplete information are not rescinded.

### III.  CONCLUSION

For the reasons discussed herein, Plaintiffs respectfully request that their motion for a preliminary injunction and corrective action be granted in its entirety.

Dated: April 23, 2019

Respectfully submitted,

*/s/ Joshua E. Moyer*
JOSHUA E. MOYER (259908)
IVY T. NGO (249860)
FRANKLIN D. AZAR (*pro hac vice*)
MICHAEL D. MURPHY (*pro hac vice*)
**FRANKLIN D. AZAR & ASSOCIATES, P.C.**
14426 East Evans Avenue
Aurora, CO 80014
Telephone:    (303) 757-3300
Facsimile:    (720) 213-5131
moyerj@fdazar.com
ngoi@fdazar.com
azarf@fdazar.com
murphym@fdazar.com

JOHN R. GARNER (246729)
**GARNER & ASSOCIATES**
109 North. Marshall Avenue
P.O. Box 908
Willows, CA 95988
Telephone:    (530) 934-3324
Facsimile:    (530) 934-2334
john@garner-associates.com

*Lead Counsel for Plaintiffs & the Putative Class*

# CERTIFICATE OF SERVICE

I, Stephanie Chateauneuf, certify that on April 23, 2019 the foregoing NOTICE OF MOTION, MOTION FOR PRELIMINARY INJUNCTION AND CORRECTIVE ACTION; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF was filed electronically in the Court's Electronic Filing System ("ECF"); thereby upon completion, the ECF system automatically generated a "Notice of Electronic Filing" as service through CM/ECF to registered email addresses to parties of record in the case, in particular on the following:

| | |
|---|---|
| MERYL L. YOUNG, SBN 110156<br>GIBSON, DUNN & CRUTCHER, LLP<br>3161 Michelson Drive<br>Irvine, CA 92612-4412<br>Telephone: (949) 451-3800<br>Facsimile: (949) 451-4220<br>myoung@gibsondunn.com | SAMUEL A. KEESAL, SBN 38014<br>KEESAL, YOUNG & LOGAN<br>400 Oceangate<br>Long Beach, CA 90802<br>Telephone: (562) 436-2000<br>Facsimile: (562) 436-7416<br>skip.keesal@kyl.com |
| ALEXANDER K. MIRCHEFF, SBN 245074<br>GIBSON, DUNN & CRUTCHER LLP<br>333 South Grand Avenue<br>Los Angeles, CA 90071-3197<br>Telephone: (213) 229-7000<br>Facsimile: (213) 229-7520<br>amircheff@gibsondunn.com | JULIE L. TAYLOR, SBN 154341<br>KEESAL, YOUNG & LOGAN<br>450 Pacific Avenue<br>San Francisco, CA 94133<br>Telephone: (415) 398-6000<br>Facsimile: (415) 981-0136<br>julie.taylor@kyl.com |

*Counsel for Defendants*

By: *Stephanie Chateauneuf*
Stephanie Chateauneuf, Paralegal