UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

IN RE EDWARD D. JONES & CO.,
L.P. SECURITIES LITIGATION

No.  2:18-cv-00714-JAM-AC

**ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS; ORDER
DENYING PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION AND
CORRECTIVE ACTION**

Plaintiffs bring this federal securities and state breach of
fiduciary duty putative class action based upon an alleged
"reverse churning" scheme whereby Defendants improperly shifted
clients' commission-based accounts to fee-based advisory
programs, without providing the clients full information, without
regard to the suitability of fee-based accounts for those
clients, and for no other reason than collect more fees on
previously low-profit accounts.

Defendants move to dismiss all claims.  Mot., ECF No. 29.
Plaintiffs oppose.  Opp'n, ECF No. 35.

For the reasons set forth below, the Court GRANTS
Defendants' motion.[1]

---

[1] This motion was determined to be suitable for decision without
oral argument.  E.D. Cal. L.R. 230(g).  The hearing was
scheduled for May 21, 2019.

I.   FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

Lead Plaintiffs Edward Anderson, Colleen Worthington, and Janet Goral and Named Plaintiffs Raymond Keith Corum and Jesse Worthington ("Plaintiffs") each had assets in commission-based accounts with Edward Jones.  Am. Compl., ECF No. 24, ¶¶ 8-11. After each attended pitch meetings with Edward Jones financial advisors, the financial advisors allegedly moved assets from the Plaintiffs' commission-based accounts to fee-based accounts, causing Plaintiffs to pay substantially higher fees.  Id.

Defendants are a set of companies related to and individuals involved with Edward D. Jones & Co., L.P. and the Jones Financial Companies, L.L.L.P. (together "Defendants" or "Edward Jones"). Am. Compl. ¶¶ 12-33.  Edward Jones is an investment firm headquartered in St. Louis, Missouri and dually registered as a broker-dealer and as an investment advisor under federal and state securities laws.  Id. ¶ 13.

Edward Jones historically focused on offering commission-based accounts, whereby clients received free counsel and guidance and were not charged the flat, per-transaction fee unless and until they completed a transaction.  Id. ¶¶ 34-35. This type of account and free arrangement reflected the buy-and-hold investing strategy Edward Jones advocated to its clients, many of whom did not trade frequently.  Id. ¶¶ 36-37.

In 2008 Edward Jones introduced a fee-based platform, Advisory Solutions, with accounts which charged a set percentage annual expense fee, regardless of the number of transactions executed.  Id. ¶ 39.  Advisory Solutions accounts also gave clients access to a propriety Edward Jones mutual fund product

called Bridge Builder, which was introduced in 2013.  Id. ¶ 40.
In 2016, Edward Jones launched a second fee-based advisory
service called Guided Solutions, which touted more client control
than Advisory Solutions and which included as "Eligible
Investments" certain fund families owned by Edward Jones and from
which Edward Jones could receive additional fees.  Id. ¶¶ 57-59.
Plaintiffs allege Edward Jones coerced clients into moving assets
from their existing commission-based accounts into the fee-based
Advisory Solutions and Guided Solutions programs (together, the
"Advisory Programs"), doing so to grow its bottom line regardless
of whether such a move was suitable for and served the best
interests of the clients.  Id. ¶¶ 40, 58, 65.

Plaintiffs allege Edward Jones aggressively pushed clients
into fee-based accounts not only to increase revenue from clients
who traded infrequently, but also to avoid certain burdensome
disclosure requirements posed by the Department of Labor ("DOL")
Fiduciary Rule.  Id. ¶¶ 41-46.  Proposed in 2015, the DOL
Fiduciary Rule allegedly would have imposed stricter disclosures
requirements and a fiduciary status on commission-based accounts.
Id. ¶¶ 42-44.  As relevant here, Plaintiffs allege Edward Jones
received hundreds of millions of dollars annually from mutual
fund companies and insurers as part of agreements to promote
products to Edward Jones clients, and the DOL Fiduciary Rule
would prohibit these recommendations and promotional payments to
financial advisors absent certain acknowledgements and
disclosures.  Id. ¶¶ 43-46.  As alleged by Plaintiffs, Edward
Jones framed the DOL Fiduciary Rule as having a negative impact
on its lower- and moderate-income customers and misled clients by

justifying its shift to fee-based accounts as necessary to avoid those negative impacts.  Id. ¶¶ 49-50, 61, 63.

Primarily, Plaintiffs contend Edward Jones omitted material information relevant to these fee-based accounts during the client pitch meetings, in the Fund Account Authorization and Agreement Form ("Agreement") which each Plaintiff signed to authorize the account change, and in certain accompanying documents and brochures.  Id. ¶¶ 104-108, 111-112.

Plaintiffs also allege Edward Jones furthered this scheme by making the financial advisors' compensation revenue-based, rather than commission-based and by providing other incentives for moving clients to fee-based accounts.  Id. ¶¶ 4, 68, 180-184. Moreover, Plaintiffs allege the financial advisors' computer system was updated around August 2016 to essentially make fee-based accounts a default recommendation and make it burdensome to avoid moving clients into fee-based accounts.  Id. ¶¶ 154-156.

Plaintiffs allege the Individual Defendants were directly involved in implementing the policies and procedures which pushed Edward Jones financial advisors to have their commission-based clients' assets transferred to fee-based accounts, and knew of and/or consciously disregarded the material omissions alleged. Id. ¶¶ 115-147.  Plaintiffs further allege Edward Jones generated $17.2 billion in revenue during the Class Period specifically from asset-based fees, pushing its earnings to record highs. Id. ¶ 4.  The Individual Defendants allegedly received over $277 million in compensation during the Class Period, which Plaintiffs attribute in substantial part to the increase in fee-based revenue.  Id. ¶ 5, 191.

4

On March 30, 2018, Plaintiffs filed an initial class complaint against Defendants for securities law violations and breaches of fiduciary duties. ECF No. 1. This Court subsequently granted an order appointing Lead Plaintiffs and Lead Counsel for the class. ECF No. 22.

On September 24, 2018, Lead Plaintiffs filed the operative Amended Complaint, bringing class claims for violations of: (1) § 10(b) of the Securities Exchange Act of 1934, and Rules 10b-5(a), (b), and (c) promulgated thereunder; (2) § 20(a) of the Securities Exchange Act of 1934; (3) § 12(a)(2) of the Securities Act of 1933; (4) § 15 of the Securities Act of 1933; and (5) the fiduciary duty laws of the states of Missouri and California. Am. Compl., ECF No. 24. Lead Plaintiffs filed the Amended Complaint on behalf of a purported class of persons who had their commission-based accounts with Edward Jones moved into one of the Advisory Programs between March 30, 2013 and March 30, 2018, inclusive, and who were damaged thereby. Am. Compl. ¶ 2.

## II. OPINION

### A. Judicial Notice and Incorporation by Reference

"Generally, district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure." Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 998 (9th Cir. 2018). "There are two exceptions to this rule: the incorporation-by-reference doctrine, and judicial notice under Federal Rule of Evidence 201." Id. Edward Jones asks this Court to consider 45 documents outside the Amended Complaint through either judicial notice or under the doctrine of incorporation by

reference.  RJN Mot., ECF No. 30.  Defendants contend the
undisputed contents of these documents contradict Plaintiffs'
"conclusory allegations."  Id.  Plaintiffs oppose this request.
RJN Opp'n, ECF No. 36.

Judicial notice under Rule 201 permits a court to judicially
notice an adjudicative fact if it is "not subject to reasonable
dispute."  Fed. R. Evid. 201(b).  A fact is "not subject to
reasonable dispute" if it is "generally known," or "can be
accurately and readily determined from sources whose accuracy
cannot reasonably be questioned."  Id.  Judicial notice of SEC
filings is appropriate.  Dreiling v. Am. Exp. Co., 458 F.3d 942,
946 n.2 (9th Cir. 2006).  This Court therefore takes judicial
notice of the existence of Edward Jones' SEC filings and public
comments and reports (Mot., Exs. 1-6, 34-38, 41, 43-44), but not
the truth of the contents asserted in the filings.  See Par Inv.
Partners, L.P. v. Aruba Networks, Inc., 681 F. App'x 618, 620 n.1
(9th Cir. 2017) (granting "requests for judicial notice of
various court filings, public SEC filings, and public analyst
reports for the limited purpose of determining what information
was disclosed to the public during the class period.").

The Ninth Circuit has held that "[e]ven if a document is not
attached to a complaint, it may be incorporated by reference into
a complaint if the plaintiff refers extensively to the document
or the document forms the basis of the plaintiff's claim."
United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003).
Plaintiffs' claims of alleged material omissions largely rest on
certain information not being disclosed in the documents provided
to clients during their pitch meetings: the Agreement, the Fund

Models Brochure, the Account Client Services Agreement, the Schedule of Fees, the Client Profile, and the "Making Good Choices" brochure. Am. Compl. ¶¶ 106-108; see also Opp'n at 1 n.2. The Court will therefore consider these documents (Mot., Exs. 7-12, 14-33) under the incorporation-by-reference doctrine.

## B. Rule 10b-5(b) Claim

"Section 10(b) of the Securities Exchange Act of 1934 and the Securities and Exchange Commission's Rule 10b-5 prohibit making any material misstatement or omission in connection with the purchase or sale of any security." Halliburton Co. v. Erica P. John Fund, Inc., 573 U.S. 258, 267 (2014). To prevail on a Rule 10b-5(b) claim, a plaintiff must prove: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." Id. (internal citations and quotations omitted).

"At the pleading stage, a complaint stating claims under section 10(b) and Rule 10b-5 must satisfy the dual pleading requirements of Federal Rule of Civil Procedure 9(b) and the PSLRA [Private Securities Litigation Reform Act]." Zucco Partners, LLC v. Digimarc Corp., 552 F.3d 981, 990 (9th Cir. 2009), as amended (Feb. 10, 2009). Under Rule 9(b), in alleging fraud, "the circumstances constituting fraud" must be "state[d] with particularity." Fed. R. Civ. P. 9(b). The PSLRA requires that the complaint "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or

7

omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed."  15 U.S.C. § 78u-4(b)(1).

Edward Jones argues Plaintiffs have failed to satisfy the pleading standards for their Rule 10b-5(b) claim.  For the reasons discussed below, this Court agrees.

### 1.   Material Misstatements or Omissions

Under Rule 10b-5(b) it is unlawful "to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made . . . not misleading."  17 C.F.R. § 240.10b-5(b).  An omitted fact is material if "there is a substantial likelihood that a reasonable [investor] would consider it important."  Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund, 135 S. Ct. 1318, 1333 (2015) (quoting TSC Indus., Inc. v. Northway, Inc., 426 U.S. 438, 449 (1976)).  "Put another way, there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available."  TSC, 426 U.S. at 449.

Plaintiffs frame their claims as based on a set of "material omissions."  Am. Compl. ¶¶ 1, 104-114.  However, these alleged omissions, some of which are in fact alleged misrepresentations, are not actionable in light of the totality of Edward Jones' disclosures in the Agreement, the Fund Models Brochure, the Account Client Services Agreement, the Schedule of Fees, the Client Profile, and the "Making Good Choices" brochure.
///

### a.  Accurate Description of Accounts

Plaintiffs allege Edward Jones omitted information necessary to provide an "accurate description of the material differences between their clients' commission-based accounts and the fee-based accounts in Advisory Programs."  Am. Compl. ¶ 112. However, the "Making Good Choices" brochure, cited by Plaintiffs as lacking some of this information, in fact explicitly charts and discusses the material differences between the account types. Mot., Exs. 30-33 (comparing the level of decision-making clients have in each account; how the financial advisor provides guidance; which investment choices are available; how the account is monitored; the level of account rebalancing; and costs).  This alleged omission is therefore not actionable.

### b.  Fees

Plaintiffs contend Edward Jones financial advisors failed to disclose an "accurate description of the fees charged by Advisory Programs," the "cost and impact of the fees charged by Advisory Programs," and that "an Advisory Program would result in a higher fee to its formerly commission-based clients."  Am. Compl. ¶¶ 106-108, 112.  But Plaintiffs acknowledge receiving a document expressly outlining the schedule of fees for Advisory Programs. Id. ¶ 107; Mot., Exs. 28-29.  Plaintiffs also received a document providing a specific estimate of their anticipated yearly fees in the Advisory Programs.  Mot., Exs. 24-26 at 8.  The "Making Good Choices" brochure is also clear that fees in an Advisory Program "can be more expensive than other investment choices over the long term."  Mot., Exs. 30-33.  Plaintiffs' omission claims as to fees are non-actionable.

c.    Suitability

Plaintiffs allege that "Edward Jones had not conducted a sufficient analysis to determine the suitability of a fee-based Advisory Program for its commission-based clients."  Am. Compl. ¶¶ 106-108, 112.  This claim dovetails with the fees claim: Plaintiffs argue the Advisory Programs were not suitable for clients who traded infrequently because their fees would increase.  This claim fails for the same reasons.  Furthermore, in choosing the Advisory Programs, Plaintiffs filled out client questionnaires and acknowledged that they were not "relying on the advice or recommendation of Edward Jones" for any decision about account type, and represented they "believe[d] the investment advisory and other services provided under this Agreement will add value to their overall investment experience that more than justifies the additional expenses."  Mot., Exs. 14-17 at 8, 24; Mot., Exs. 18-19 at 7.  Additionally, this alleged omission is more accurately stated as a misrepresentation by Edward Jones that the Advisory Programs were suitable for the Plaintiffs.  The suitability claim is not actionable.

d.    DOL Fiduciary Rule

Plaintiffs contend that Edward Jones omitted certain material information when explaining the impact of the DOL Fiduciary Rule, including that "the DOL Fiduciary Rule did not require them to move their clients with commission-based accounts to a fee-based Advisory Program."  Am. Compl. ¶¶ 110-111.  In light of the Amended Complaint alleging Edward Jones used the DOJ Fiduciary Rule as a pretext to make these client account changes, this is more accurately considered a misrepresentation claim by

Edward Jones that an account change was required.  Nevertheless, Plaintiffs do not specifically allege why this omission was material to this investment decision under the circumstances, particularly given that Plaintiffs had the choice of signing the authorization, and the allegations are thus not actionable.

e.    Financial Advisor Incentives

Plaintiffs allege they were never told that "Edward Jones was incentivizing its financial advisors by promoting, giving pay raises and/or bonuses to, and/or not terminating advisors who moved their clients with commission-based accounts to an Advisory Program, even when it was not in their clients' best interest." FAC ¶¶ 106-108, 112-113.  However, Plaintiffs received legally sufficient disclosures on this topic including that "[a] financial advisor will typically earn more in upfront fees and commissions when you use brokerage services . . . [and] more over time if you invest in [Advisory Programs]."  Mot., Exs. 7-8, 10 at 9; Mot., Ex. 11 at 11; Mot., Ex. 12 at 12.  Plaintiffs also received documents stating that fees paid as part of Advisory Programs, as well as the amount of assets under care, can "impact your financial advisor's eligibility for a bonus," and that "Program Fees . . . are counted toward qualifying for the [Diversification Travel Awards] Program."  Mot., Exs. 7-8, 10 at 20; Mot., Ex. 11 at 21-22; Ex. 12 at 22.  Plaintiffs' omission claims based on financial advisor incentives fail.

2.    Scienter

To adequately plead scienter, the complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  15 U.S.C. §

78u-4(b)(2).  To meet the state of mind requirement a complaint must "allege that the defendants made false or misleading statements either intentionally or with deliberate recklessness," where recklessness still "reflects some degree of intentional or conscious misconduct."  In re Daou Sys., Inc., 411 F.3d 1006, 1014-15 (9th Cir. 2005); In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 977 (9th Cir. 1999), as amended (Aug. 4, 1999).  To qualify as "strong," "an inference of scienter must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent."  Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 314 (2007).  In this inquiry, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice" to determine "whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard."  Id. at 322-23 (emphasis in original).

Viewing the matter holistically, Tellabs, 551 U.S. at 326, this Court concludes that Plaintiffs have failed to adequately plead the strong inference of scienter required.  Plaintiffs allege that the Individual Defendants envisioned and implemented company-wide policies and procedures to improperly increase asset-based revenue through the alleged reverse-churning scheme; that defendant Weddle met with financial advisors and encouraged them to act according to these policies; that the omitted facts

were core to Edward Jones' business; and that Edward Jones
publicly discussed why fee-based platforms may not be suitable to
their clients. Opp'n at 7-14. However, "corporate management's
general awareness of the day-to-day workings of the company's
business does not establish scienter—at least absent some
additional allegation of specific information conveyed to
management and related to the fraud." Metzler Inv. GMBH v.
Corinthian Colleges, Inc., 540 F.3d 1049, 1068 (9th Cir. 2008).
Moreover, "allegations of routine corporate objectives such as
the desire to obtain good financing and expand are not, without
more, sufficient to allege scienter; to hold otherwise would
support a finding of scienter for any company that seeks to
enhance its business prospects." In re Rigel Pharm., Inc. Sec.
Litig., 697 F.3d 869, 884 (9th Cir. 2012) (holding that "we will
not conclude that there is fraudulent intent merely because a
defendant's compensation was based in part on [achieving key
corporate goals].").

Plaintiffs' allegations, some of which are conclusory and
vague, do not establish an intent to defraud that is at least as
compelling as an opposing inference of nonfraudulent intent.
Edward Jones provided substantial disclosures to the Plaintiffs
laying out the benefits and drawbacks of the Advisory Programs,
to help them make this investment decision. The mere fact that
Edward Jones financially benefited from certain clients choosing
to move into fee-based accounts does not foreclose that the
clients may also benefit in the long-run from this new offering
and that the company fully believes in the value of its product.

Plaintiffs fail to adequately allege the strong inference of

13

scienter required under Rule 10b-5.

### 3. Reliance

"Reliance establishes the causal connection between the alleged fraud and the securities transaction." Desai v. Deutsche Bank Sec. Ltd., 573 F.3d 931, 939 (9th Cir. 2009). "The traditional (and most direct) way a plaintiff can demonstrate reliance is by showing that he was aware of a company's statement and engaged in a relevant transaction . . . based on that specific misrepresentation." Erica P. John Fund, Inc. v. Halliburton Co., 563 U.S. 804, 810 (2011). Plaintiffs do not put forward an argument for this traditional reliance on statements made by Edward Jones. Opp'n at 15. Rather, Plaintiffs contend they are entitled to a presumption of reliance. Opp'n at 14-15; Affiliated Ute Citizens of Utah v. United States, 406 U.S. 128, 153-54 (1972) (holding that proof of affirmative reliance is not required for alleged violations of Section 10(b) based on omissions of material fact). However, the Ninth Circuit has held "the Affiliated Ute presumption should not be applied to cases that allege both misstatements and omissions unless the case can be characterized as one that primarily alleges omissions." Binder v. Gillespie, 184 F.3d 1059, 1064 (9th Cir. 1999).

Edward Jones argues Plaintiffs are not entitled to the Affiliated Ute presumption because the claims involve either only misstatements or a mix of misstatements and omissions. Mot. at 15-16. Edward Jones contends Plaintiffs attempt to characterize their claims as being based on material omissions (FAC ¶¶ 1, 104-114) is a pleading artifice. Mot. at 7. As discussed above, the suitability and DOL Fiduciary Rule omission claims are more

14

properly characterized as misstatements.  See Poulos v. Caesars

World, Inc., 379 F.3d 654, 667 (9th Cir. 2004).  Moreover, the

complaint frames numerous other allegations as misstatements.

Thus, because the allegations here cannot be characterized

primarily as claims of omissions, the Plaintiffs are not entitled

to the presumption of reliance.  Plaintiffs have not alleged

actual reliance on any of the material misstatements.  Thus,

Plaintiffs cannot demonstrate reliance and their claims under

Rule 10b-5 fail.

### 4.   Loss Causation

Loss causation, "i.e., a causal connection between the

material misrepresentation and the loss" experienced by the

plaintiff, is a necessary element of pleading a securities fraud

claim under Section 10(b) of the Exchange Act.  Dura Pharm., Inc.

v. Broudo, 544 U.S. 336, 342 (2005).  A plaintiff "must

demonstrate that an economic loss was caused by the defendant's

misrepresentations, rather than some intervening event."  Lloyd

v. CVB Fin. Corp., 811 F.3d 1200, 1209 (9th Cir. 2016).

"Typically, 'to satisfy the loss causation requirement, the

plaintiff must show that the revelation of that misrepresentation

or omission was a substantial factor in causing a decline in the

security's price, thus creating an actual economic loss for the

plaintiff.' "  Nuveen Mun. High Income Opportunity Fund v. City

of Alameda, Cal., 730 F.3d 1111, 1119 (9th Cir. 2013) (quoting

McCabe v. Ernst & Young, LLP., 494 F.3d 418, 425-26 (3d Cir.

2007).  However, "[d]isclosure of the fraud is not a sine qua non

of loss causation" and "loss causation is a 'context-dependent'

inquiry as there are an 'infinite variety' of ways for a tort to

cause a loss." <u>Nuveen</u>, 730 F.3d at 1120; <u>Lloyd</u>, 811 F.3d at 1210 (internal citations omitted).  Accordingly, the Ninth Circuit recently clarified that, to "prove loss causation, plaintiffs need only show a causal connection between the fraud and the loss by tracing the loss back to the very facts about which the defendant lied." <u>Mineworkers' Pension Scheme v. First Solar Inc.</u>, 881 F.3d 750, 753 (9th Cir. 2018) (internal citations and quotations omitted).

Plaintiffs fail to sufficiently allege loss causation.  This is not a typical, stock-drop, "fraud-on-the-market" securities fraud case.  The Amended Complaint contains no allegations regarding the overall performance of the fee-based accounts, the clients' account performance in the fee-based accounts compared to their commission-based accounts, or any changes to performance based on corrective disclosures.  Instead, the only alleged loss is the additional, higher fees Plaintiffs have paid by virtue of being in fee-based accounts rather than commission-based accounts.  But, as discussed above, there is no actionable omission related to the increase in fees and their potential impact on Plaintiffs' accounts because information regarding the fees was fully disclosed to the Plaintiffs.  Mot., Exs. 24-26 at 8, Exs. 28-29, Exs. 30-33.  Therefore, there is no causal connection between any actionable omission and the loss.

Moreover, Plaintiffs' attempt to prove loss causation by arguing that they would not have agreed to switch accounts but for Edward Jones' withholding material information fails because it focuses solely on transaction causation (or reliance) while ignoring loss causation. <u>Nuveen</u>, 730 F.3d at 1121 ("We have

consistently rejected loss causation arguments like Nuveen's—that
a defendant's fraud caused plaintiffs a loss because it induced
them to buy the shares—because the argument renders the concept
of loss causation meaningless by collapsing it into transaction
causation.") (internal citations and quotations omitted).

Thus, Plaintiffs have not demonstrated loss causation and
their claims under Rule 10b-5 fail.

### 5. <u>Conclusion</u>

Plaintiffs allegations of a violation of Rule 10b-5(b) fail
to meet the heightened pleading standards of Federal Rule of
Civil Procedure 9(b) and the PSLRA. The Amended Complaint does
not sufficiently allege an actionable misstatement or omission,
does not present a strong inference of scienter, fails to
establish reliance, and cannot demonstrate loss causation. Thus,
Plaintiffs' Rule 10b-5(b) claim (Count II) is dismissed.

### C. <u>Rules 10b-5(a) and (c) Claim</u>

Plaintiffs also bring a Rule 10b-5(a) and (c) "scheme
liability" claim. Under Rules 10b-5(a) and (c) it is unlawful
for a person to use a "device, scheme, or artifice to defraud,"
or engage in "any act, practice, or course of business which
operates or would operate as a fraud or deceit," in connection
with the purchase or sale of a security. 17 C.F.R. § 240.10b-5.
"[T]he same set of facts may give rise both to a violation of
subsection (b) and subsections (a) and/or (c) if [a] plaintiff
alleges 'that the defendants undertook a deceptive scheme or
course of conduct that went beyond the misrepresentations.'"
<u>S.E.C. v. Loomis</u>, 969 F. Supp. 2d 1226, 1237 (E.D. Cal. 2013)
(quoting <u>In re Alstom SA</u>, 406 F. Supp. 2d 433, 475 (S.D.N.Y.

2005)).  In order to state a claim under Rules 10b-5(a) or (c), a plaintiff must allege a "device, scheme, or artifice to defraud," or an "act, practice, or course of business which would operate as a fraud," in addition to the standard elements of a Section 10(b) violation: (1) scienter; (2) connection with the purchase or sale of securities; (3) reliance; (4) economic loss; and (5) loss causation.  See Stoneridge Inv. Partners, LLC v. Sci.-Atlanta, 552 U.S. 148, 158 (2008).

Edward Jones argues that Plaintiffs' scheme liability claim is nothing more than a repackaging of the Rule 10b-5(b) omissions claims discussed above.  Mot. at 17-18.  This Court agrees. Plaintiffs scheme liability claim largely rests on Edward Jones' supposed non-disclosure of certain actions it was taking in pitching and moving clients into the fee-based programs.  And the conduct Plaintiffs allege as violations – including, sales training for financial advisors, changed incentive structures, and a new computer system – is not an actionable deceptive scheme.  See Simpson v. AOL Time Warner Inc., 452 F.3d 1040, 1050 (9th Cir. 2006), vacated on other grounds sub nom. Simpson v. Homestore.com, Inc., 519 F.3d 1041 (9th Cir. 2008) (holding that to be liable under Rules 10b-5(a) and (c) a defendant "must have engaged in conduct that had the principal purpose and effect of creating a false appearance of fact in furtherance of the scheme" and noting that, for example, "the invention of sham corporate entities to misrepresent the flow of income, may have a principal purpose of creating a false appearance" but that "[c]onduct that is consistent with the defendants' normal course of business would not typically be considered to have the purpose and effect

of creating a misrepresentation."); see also Desai, 573 F.3d at

940-41 (finding that actionable "manipulative conduct . . .

includes activities designed to affect the price of a security

artificially by simulating market activity that does not reflect

genuine investor demand."). While the lack of an allegedly

deceptive scheme or practice is fatal to this claim, the Court

also finds that Plaintiffs have failed to properly allege

reliance, scienter, and loss causation. Thus, Plaintiffs' scheme

liability claim under Rules 10b-5(a) and (c) (Count I) is

dismissed.

        D.    Section 20(a) Claim

        Section 20(a) of the Securities Exchange Act of 1934

provides for control person liability.  15 U.S.C. § 78t(a).  "To

establish a cause of action under this provision, a plaintiff

must first prove a primary violation of underlying federal

securities laws, such as Section 10(b) or Rule 10b-5, and then

show that the defendant exercised actual power over the primary

violator."  In re NVIDIA Corp. Sec. Litig., 768 F.3d 1046, 1052

(9th Cir. 2014).  Because Plaintiffs have not adequately alleged

primary violations under Section 10(b), Plaintiffs' Section 20(a)

control person claim (Count III) fails and is dismissed.

        E.    Section 12(a)(2) Claim

        To prevail on a claim under Section 12(a)(2) of the

Securities Act of 1933, a plaintiff must demonstrate "(1) an

offer or sale of a security, (2) by the use of a means or

instrumentality of interstate commerce, (3) by means of a

prospectus or oral communication, (4) that includes an untrue

statement of material fact or omits to state a material fact that

is necessary to make the statements not misleading." <u>Miller v.</u>
<u>Thane Int'l, Inc.</u>, 519 F.3d 879, 885 (9th Cir. 2008); 15 U.S.C. §
77*l*(a)(2).  An "oral communication" establishing liability under
Section 12(a)(2) is "restricted to oral communications that
relate to a prospectus." <u>Gustafson v. Alloyd Co.</u>, 513 U.S. 561,
567-68 (1995) (acknowledging with approval this interpretation by
two Courts of Appeals).  Thus, liability under this section
always requires a prospectus.  The Amended Complaint cites no
formal prospectus, and the marketing materials in this case are
not a substitute for the required prospectus.  Plaintiffs'
Section 12(a)(2) claim (Count IV) is therefore dismissed.

        F.    <u>Section 15 Claim</u>

        To state a claim for control person liability under Section
15 of the Securities Act, a plaintiff must first establish an
underlying violation of the act.  <u>In re Rigel Pharm., Inc. Sec.</u>
<u>Litig.</u>, 697 F.3d 869, 886 (9th Cir. 2012); 15 U.S.C. § 77o.
Because Plaintiffs cannot adequately allege a primary violation
under Section 12(a)(2), Plaintiffs' Section 15 control person
claim (Count V) fails and is dismissed.

        G.    <u>State Law Breach of Fiduciary Duty Claims</u>

        Edward Jones argue Plaintiffs' claims for breaches of
fiduciary duty under California and Missouri law are preempted by
SLUSA.  Mot. at 19-20.  Congress enacted SLUSA, the Securities
Litigation Uniform Standards Act, "to stem the shift of class-
action securities lawsuits from federal courts to state courts
after passage of the [PSLRA]" by eliminating federal jurisdiction
over any claim that could give rise to liability under Section
10(b) or Rule 10b-5.  <u>Northstar Fin. Advisors, Inc. v. Schwab</u>

Investments, 904 F.3d 821, 828 (9th Cir. 2018); Fleming v.

Charles Schwab Corp., 878 F.3d 1146, 1153 (9th Cir. 2017).

Accordingly, "SLUSA bars a plaintiff class from bringing (1) a

covered class action (2) based on state law claims (3) alleging

that the defendants made a misrepresentation or omission or

employed any manipulative or deceptive device (4) in connection

with the purchase or sale of (5) a covered security." Northstar,

904 F.3d at 828.

The Supreme Court and Ninth Circuit have instructed courts

to interpret the provisions of SLUSA broadly. Merrill Lynch,

Pierce, Fenner & Smith Inc. v. Dabit, 547 U.S. 71, 72 (2006);

Hampton v. Pac. Inv. Mgmt. Co. LLC, 705 F. App'x 558, 559 (9th

Cir. 2017). Consistent with this approach, the Ninth Circuit has

noted that "SLUSA's preclusion of a cause of action does not turn

on the name or title given to a claim by the plaintiff. It turns

instead on the gravamen or essence of the claim." Northstar, 904

F.3d at 829 (9th Cir. 2018) (internal citation and quotation

omitted). "The central question [is] . . . whether the complaint

describes conduct by the defendant that would be actionable under

the 1933 or 1934 Acts. If it does, and that conduct necessarily

will be part of the proofs in support of the state law cause of

action, SLUSA bars the claim, regardless of whether that conduct

is an essential predicate of the asserted state law claim." Id.

Plaintiffs argue SLUSA does not bar their fiduciary duty

claims because the claims do not rely on an alleged misstatement

or omission, simply that moving the clients to an Advisory

Program was not in the clients' best interest. Opp'n at 19-20.

Edward Jones contends SLUSA applies even though Plaintiffs do not

21

incorporate their allegations of material omissions into the fiduciary duty claims because the substance of the claims is the alleged deceptive conduct.  Mot. at 20; Reply, ECF No. 37 at 10. This Court agrees with Edward Jones.

Plaintiffs' fiduciary duty claims substantively mirror their federal securities claims.  Plaintiffs do not argue that there are no circumstances under which Edward Jones could shift clients from commission-based to fee-based accounts, and such an argument would lack common sense.  Rather, the base allegations are wrongdoing from the manner in which Edward Jones changed the accounts — without providing clients full information and without the shift being in the clients' best interest.  These are the same allegations which serve as the alleged material omissions on which Plaintiffs' securities claims rely.  Furthermore, if Edward Jones had provided Plaintiffs with the allegedly omitted information — in particular by informing them that "an Advisory Program would financially benefit Edward Jones at the expense of the clients" — it seems illogical that a client would sign the Agreement and switch accounts.  Put simply, the alleged deceptive conduct is at the heart of this claim.  Am. Compl. ¶¶ 104-106; Northstar, 904 F.3d at 833 (finding that the fiduciary duty claims at-issue "implicitly depend on allegations of misrepresentations or omissions").  And while Plaintiffs disclaim any allegation of material omissions with respect to their fiduciary duty claims (Am. Compl. ¶¶ 252, 263), the remainder of the Amended Complaint is replete with allegations of material misstatements and omissions underlying the securities law claims.

This Court therefore finds that SLUSA bars Plaintiffs' state

law fiduciary duty class claims.  SLUSA operates "by depriving the district court of jurisdiction to hear [ ] state-law claims on a class-wide basis."  Hampton v. Pac. Inv. Mgmt. Co. LLC, 869 F.3d 844, 847 (9th Cir. 2017).  Thus, because SLUSA applies, this Court lacks subject-matter jurisdiction over Plaintiffs' class claims for breaches of fiduciary duty under California and Missouri law (Counts VI and VII) and these claims are dismissed without prejudice.  Fed. R. Civ. P. 12(b)(1); Hampton, 869 at 847 ("[D]ismissals under SLUSA are jurisdictional.").

H.    Leave to Amend

The Amended Complaint fails to state a plausible federal securities law claim and it appears to this Court that a further attempt to amend the Complaint might prove futile.  Nevertheless, this Court grants Plaintiffs leave to amend.  Rule 15 of the Federal Rules of Civil Procedure advises that the court "should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a).  And the Ninth Circuit has repeatedly reminded lower courts that this policy is "to be applied with extreme liberality."  See, e.g., Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1051 (9th Cir. 2003) (internal citations omitted). The Ninth Circuit has also noted that "[a]dherence to these principles is especially important" in securities fraud cases given that it is a "technical and demanding corner of the law" where plaintiffs must plead their claims with "unprecedented degree of specificity and detail" to meet the requirements of the PSLRA.  Id. at 1052. Following these directives, this Court gives Plaintiffs one final opportunity to try to properly plead their claims.

1                              III.   ORDER

2       For the reasons set forth above, this Court GRANTS

3 Defendants' Motion to Dismiss (ECF No. 29) in its entirety.  The

4 Amended Complaint is dismissed with leave to amend.  Given the

5 Court's Order on this Motion to Dismiss, Lead Plaintiffs' Motion

6 for a Preliminary Injunction and Corrective Action, which was

7 also scheduled for a hearing on May 21, 2019 (ECF No. 42), is

8 DENIED as moot.

9       If Lead Plaintiffs elect to amend the complaint, they shall

10 file a Second Amended Complaint within twenty days of this Order.

11 Defendants' responsive pleading is due twenty days thereafter.

12       IT IS SO ORDERED.

13 Dated: July 8, 2019

14

15                            JOHN A. MENDEZ,
                           UNITED STATES DISTRICT JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28