UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

IN RE EDWARD D. JONES & CO., L.P. SECURITIES LITIGATION

No. 2:18-cv-00714-JAM-AC

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

In March 2018, Plaintiffs filed a federal securities and state breach of fiduciary duty putative class action against investment firm Edward D. Jones, L.P., as well as a set of companies and individuals related to the investment firm (together "Defendants" or "Edward Jones"). Compl., ECF No. 1. Defendants filed a motion to dismiss. ECF No. 29. The Court granted their motion, dismissing all of Plaintiffs' claims without prejudice. July 9, 2019 Order ("Order"), ECF No. 46.

Plaintiffs filed a Second Amended Complaint ("SAC"), ECF No. 47, in which they attempted to cure their claims' deficiencies and raised several new claims. Once again, Defendants move to dismiss Plaintiffs' claims. Mot. To Dismiss ("Mot."), ECF No. 48. Plaintiffs oppose this motion. Opp'n, ECF No. 52. The Court,

1

however, finds Plaintiffs' Second Amended Complaint still fails to state a claim for which relief can be granted. For this reason, and the reasons stated below, the Court GRANTS Defendants' motion to dismiss, and DISMISSES Plaintiffs' claims WITH PREJUDICE.[1]

## I. FACTUAL ALLEGATIONS

The Parties are intimately familiar with Plaintiffs' allegations and claims and they will not be repeated in detail here. In short, Plaintiffs contend Defendants improperly moved their Edward Jones commission-based accounts into fee-based accounts. See generally SAC. Plaintiffs allege this account conversion violated § 10(b) of the Securities Exchange Act of 1934 (the "1934 ACT"); Rule 10b-5(a), (b), and (c); the Investment Advisers Act of 1940 (the "Advisers Act"); and state common law. SAC ¶ 1.

## II. OPINION

A. <u>Judicial Notice and Incorporation by Reference</u>

"Generally, district courts may not consider material outside of the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure." <u>Khoja v. Orexigen Therapeutics, Inc.</u>, 899 F.3d 988, 998 (9th Cir. 2018). However, "there are two exceptions to this rule: the incorporation-by-reference doctrine, and judicial notice under Federal Rule of Evidence 201." <u>Id.</u>

---

[1] This motion was determined to be suitable for decision without oral argument. E.D. Cal. L.R. 230(g). The hearing was scheduled for October 8, 2019.

2

In its previous Order, this Court took judicial notice of the existence of Edward Jones' SEC filings, public comments, and reports. November 2018 Motion to Dismiss ("Nov. 2018 Mot."), ECF no. 29, Exs. 1-6, 34-38, 41, 43-44). See Order at 5-7. This Court also considered documents, under the incorporation-by-reference doctrine: Nov. 2018 Mot., Exs. 7-12, 14-33. See Order at 6-7. The Court, again, considers these exhibits.

Defendants also request the Court consider Exhibit 39 under the incorporation by reference doctrine. RJN, ECF No. 49. Defendants contend this exhibit confirms Plaintiff Janet Goral invested in "covered securities" and is relevant to the issue of Securities Litigation Uniform Standards Act ("SLUSA") preclusion. Id. Plaintiffs oppose this request. RJN Opp'n, ECF No. 53.

The incorporation by reference doctrine allows district courts to consider documents attached to a complaint. U.S. v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003). Courts may also use this doctrine to consider documents not attached to a complaint, but only if "the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." Id. A document "forms the basis of the plaintiff's claim" when the plaintiff's claim "necessarily depend[s]" upon that document. Khoja, 899 F.3d at 1002. Here, the Court cannot determine whether Plaintiffs' claim "necessarily depends" on Exhibit 39 because the exhibit is completely redacted. Mot., Ex. 39. Moreover, Plaintiffs "concede[] that the case involves 'covered' securities," RJN, at 6 n.2, so the Court need not consider Exhibit 39 for that purpose. The Court therefore DENIES

3

Defendants' request to incorporate Exhibit 39 by reference.

B. Analysis

1. Breach of Fiduciary Duty

Defendants argue Plaintiffs' breach of fiduciary duty claims under California and Missouri state law remain preempted by SLUSA. Mot. at 14. The Court agrees. The Court previously noted, "SLUSA bars a Plaintiff class from bringing (1) a covered class action (2) based on state law claims (3) alleging that defendants made a misrepresentation or omission or employed any manipulative or deceptive device (4) in connection with the purchase or sale of (5) a covered security." Northstar Fin. Advisors, Inc. v. Schwab Investments, 904 F.3d 821, 828 (9th Cir. 2018). Notably, this Court clarified that whether SLUSA preempts a state cause of action does not turn on whether plaintiff gives the "same name or title" to the federal and state claims." Order at 21 (quoting Id. at 829). Rather, SLUSA preemption depends upon "the gravamen or essence the claim." Id. A state law claim shares the same "gravamen or essence" of a SLUSA claim when "the complaint describes conduct by the defendant that would be actionable under the 1933 or 1934 Acts" and "that conduct necessarily will be part of the proofs in support of the state law cause of action." Id. In those circumstances, SLUSA bars the state law claim, regardless of whether the underlying conduct is "an essential predicate of the asserted state law claim." Id.

In its July 9, 2019 Order, the Court found SLUSA barred Plaintiffs' fiduciary duty claims because the allegations

4

underlying those claims served as "the same allegations . . . on which Plaintiffs' securities claims rel[ied]." Order at 22. Once again, Plaintiffs fail to demonstrate the deceptive conduct alleged in their securities claims, is not also at the heart of their state claims. Plaintiffs argue the "gravamen" of their state claim is Defendants "engag[ed] in self-dealing to Plaintiffs' detriment by placing them in fee-based accounts without regard to suitability." Opp'n at 15. Plaintiffs maintain this conduct, unlike the conduct underlying their federal securities claim, is "not based on misrepresentations or omissions." Opp'n at 12. And yet, when describing their federal securities claim pages before, Plaintiffs characterized Defendants' failure to conduct a suitability analysis as a "misleading omission." Opp'n at 2. Defendants' suitability analysis, or lack thereof was either an omission or it wasn't—Plaintiffs cannot have it both ways.

For the same reasons articulated in this Court's first dismissal order, SLUSA bars Plaintiffs' state law fiduciary duty class claims. Accordingly, this Court lacks subject-matter jurisdiction over Plaintiffs' breach of fiduciary duty claims under California and Missouri Law (Counts I and II). Hampton v. Pac. Inv. Mgmt. Co. LLC, 869 F.3d 844, 847 (9th Cir. 2017) ("[D]ismissals under SLUSA are jurisdictional."). The Court finds amendment to these claims is futile and DISMISSESS them WITH PREJUDICE.

### 2. Breach of Contract

Plaintiffs' Second Amended Complaint introduces new breach of contract claims. However, Plaintiffs fail to show these

allegations are not likewise premised on misstatements or omissions.

    Defendants argue "Plaintiff's contract claims are repackaged versions of the Rule 10b-5 claims," because they assert "false promises or promissory fraud." Mot. at 15. Plaintiffs deny misrepresentations or omissions are factual predicates to their breach of contract claims. Opp'n at 13. Instead, Plaintiffs assert their breach of contract claims rest upon the allegation "Edward Jones never intended to provide and did not provide the additional services purportedly warranting the fees imposed in Advisory Solutions accounts." Opp'n at 14. While the Court does not agree that the breach of contract claims repackage Plaintiffs' specific securities claims, the Court does find that these claims repackage the elements of a security claim, generally.

    To state a Rule 10b-5 claim, Plaintiffs must allege "(1) material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." Halliburton Co. v. Erica P. John Fund, Inc., 573 U.S. 258, 267 (2014). Plaintiffs' breach of contract claims turn upon Defendants' alleged misrepresentations or omissions. For example, Plaintiffs describe Defendants' breach of their promised yearly review (one of the promised additional services) as a "sham" since the review was a "10-minute phone call" that could be made every "18 months to 2 years" instead of yearly. SAC ¶¶ 128-129. The Oxford dictionary defines "sham"

6

as "something...that is not really what it purports to be." By Plaintiffs' own terms, these newly-raised breach of contract claims rests upon the old idea that Defendants misrepresented what they were promising.

Relying on Pross v. Katz, Plaintiffs argue SLUSA does not preempt their breach of contract claims because the promises made in the contract were not "in connection" with a purchase or sale of security since they were not "part of the consideration for the sale." Opp'n at 14; 784 F.2d 455, 456-57 (2nd Cir. 1986). In Pross, the Second Circuit found a future contractual promise is "in connection" with a sale of securities, if it is "part of the consideration for the sale." Id. Pross, decided in 1986, is no longer persuasive or reliable authority. In 2006, the Supreme Court held SLUSA's "in connection with" requirement be read broadly, finding it "enough that the fraud alleged 'coincide' with a securities transaction." Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit, 547 U.S. 71, 85 (2006). This effectively overruled the Second Circuit's narrow interpretation of the phrase. Following the Supreme Court's decision in Dabit, the Ninth Circuit adopted a more expansive interpretation of the phrase "in connection with." See Fleming v. Charles Schwab Corporation, 878 F.3d 1146, 1155 (9th Cir. 2017) (stating SLUSA's "in connection with" requirement is "satisfied if misrepresentations simply 'coincide with a securities transaction.'"); Freeman Investments, L.P. v. Pacific Life Ins. Co., 704 F.3d 1110, 117 (9th Cir. 2013)(finding even if plaintiffs cannot satisfy the 10b-5(b) standing requirement, SLUSA may bar state law class actions). Plaintiffs' breach of

contract claims undeniably "coincid[e] with a securities transaction," since they allege Defendants' breach was partly due to them not placing its "clients' interests first" and "profit[ing] at client expense." See Fleming, 878 F.3d at 1155 (emphasizing the false promise of "best execution" is in fact "in connection with" a sale of securities).

The Court therefore finds SLUSA also bars Plaintiffs' state law breach of contract claims. Hampton, 869 F.3d at 847. The Court finds amending these claims is futile and DISMISSES Plaintiffs' claims WITH PREJUDICE.

### 3. Unjust Enrichment

Plaintiffs' Second Amended Complaint also added an unjust enrichment claim. SAC ¶¶ 155-58. Plaintiffs contend this claim rests upon the same allegations supporting their breach of contract and breach of fiduciary duties claims. SAC ¶ 155. The Court finds Defendants' alleged misrepresentations and omissions are a factual predicate of this claim. Accordingly, SLUSA bars this claim and deprives this Court of jurisdiction. This claim is DISSMISSED WITH PREJUDICE.

### 4. Rule 10b-5(b)

This Court previously dismissed Plaintiffs' 10b-5(b)claims, since they failed to allege the prima facie elements of these claims. Order at 8. Plaintiffs reassert their Rule 10b-5(b) claims in the Second Amended Complaint.

Rule 10b-5 "prohibit[s] making any material misstatement or omission in connection with the purchase or sale of any security." Halliburton, 573 U.S. at 267. To state a Rule 10b-5 claim, Plaintiffs must allege "(1) material misrepresentation or

omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." Id. (internal citations and quotations omitted).

In its previous Order, the Court made clear that a complaint stating claims under section 10(b) and Rule 10b-5 "must satisfy the dual pleading requirements of Federal Rule of Civil Procedure 9(b) and the PSLRA [Private Securities Litigation Reform Act]." Zucco Partners, LLC v. Digimarc Corp., 552 F.3d 981, 990 (9th Cir. 2009), as amended (Feb. 10, 2009). Rule 9(b) requires that "circumstances constituting fraud" be "state[d] with particularity." Fed. R. Civ. P. 9(b). Under the PSLRA, the complaint must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which the belief is formed." 15 U.S.C. § 78u-4(b)(1).

Defendants argue Plaintiffs have once again "failed to satisfy the heightened pleading standards applicable to their 10b-5(b) claims." Mot. at 2. This Court agrees.

### a. Material Misstatements or Omissions

Under Rule 10b-5(b), it is unlawful "to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made...not misleading." 17 C.F.R. §240.10b-5(b). An omitted fact is material if "there is a substantial likelihood that a reasonable

[investor] would consider it important." Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund, 135 S. Ct. 1318, 1333 (2015) (quoting TSC Indus., Inc. v. Northway, Inc., 426 U.S. 438, 449 (1976)). "Put another way, there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." TSC Indus., 426 U.S. at 499.

As they did in their previous complaint, Plaintiffs continue to frame their claims as based on a set of "material omissions." SAC ¶¶ 16-78; Am. Compl. ¶¶ 1, 104-114. Plaintiffs allege Defendants "concealed the Suitability and [Department of Labor "DOL"] Fiduciary Rule Omissions and then improperly transferred Plaintiffs' assets from commission-based accounts into fee-based accounts." Opp'n at 4. Defendants maintain they provided "clear and robust disclosures" that "foreclose the theories Plaintiffs continue to pursue." Mot. at 3. The Court agrees. These alleged omissions remain "not actionable in light of the totality of Edward Jones' disclosures in the Agreement, the Fund Models Brochure, the Account Client Services Agreement, the Schedule of Fees and the 'Making Good Choices' brochure." Order at 8.

### i. Suitability Omission

Plaintiffs allege "Defendants conducted no suitability analysis prior to moving commission-based clients into fee-based accounts." Opp'n at 2. In its July 9, 2019 Order, this Court found this claim was not actionable because it "dovetails" with the mistaken premise that the costs associated with fee-based

accounts were misrepresented. Order at 10. Defendants argue this is still the case. Mot. at 3. The Court agrees.

To distance themselves from their failed fees claim in their First Amended Complaint, Plaintiffs attempt to reformulate their suitability omission argument as follows:

- Edward Jones was required as a fiduciary and under FINRA regulations to perform a suitability analysis,
- Edward Jones did not provide Financial Advisors ("FAs") with the means to conduct a suitability analysis to assess whether a fee-based account was suitable or otherwise in the best interest of clients, and
- FAs did not conduct a suitability analysis.

SAC ¶ 160. But this argument's substance remains virtually unchanged. The crux of Plaintiffs' suitability omission claim is still that these fee-based accounts "were not suitable for clients who traded infrequently because their fees would increase." Order at 10; SAC ¶¶ 161-166.

As the Court previously determined, this claim fails because Plaintiffs received documents: expressly outlining the schedule of fees for the Advisory Programs, providing a specific estimate of the recipient's anticipated yearly fees, and conceding that Advisory Programs could "be more expensive than other investment choices over the long term." Order at 9. These disclosures fatally undermine Plaintiffs' allegations that Defendants omitted information of these accounts' suitability. Mot. at 4.

Plaintiffs attempt to discredit any disclosures they

11

received on the details of these accounts by arguing Defendants are not permitted under FINRA to put the onus of conducting a suitability review on its clients. Id. At the same time, Plaintiffs concede filling out Defendants' client questionnaires prior to converting their accounts into fee-based accounts. Order at 10. These questionnaires "were part of the suitability analysis" Defendants conducted, Mot. at 4, further undermining Plaintiffs' allegations that Defendants did not conduct a suitability analysis.

Lastly, as the Court stated in its previous order, "this alleged omission is more accurately stated as a misrepresentation by Edward Jones that the Advisory Programs were suitable for the Plaintiffs." Order at 10. Absent a genuine allegation that Edward Jones failed to conduct a suitability analysis, Plaintiffs' suitability-omission theory of liability falls under Rule 12(b)(6). The Court consequently finds Plaintiffs failed to allege a suitability claim.

### ii. DOL Fiduciary Rule Omission

Plaintiffs' DOL Fiduciary Rule omission claim also remains essentially the same. See Order at 10. Plaintiffs contend Defendants failed to disclose (1) the DOL adopted a Fiduciary Rule ("DOL Fiduciary Rule") and (2) that this rule "did not require Edward Jones to transfer [Plaintiffs'] assets from commission-based to fee-based accounts." SAC ¶ 160.

In its July 9, 2019 Order, this Court found this claim not actionable, since "Plaintiffs [did] not specifically allege why this omission was material to this investment decision under the circumstances, particularly given Plaintiffs had the choice of

signing the authorization [prior to the transfer of their accounts]." Order at 11. Defendants argue "Plaintiffs plead nothing new to change this conclusion." Mot. at 7. The Court agrees.

Once again, Plaintiffs make the conclusory allegation "the DOL Fiduciary Rule Omissions unquestionably would have been material to these clients' decision to move to fee-based accounts," without specifically alleging why it would be material. Opp'n at 6. They merely assert "Defendants had a duty to disclose to clients the basis for systematically transferring their assets." Id. This assertion is rather vague and equally conclusory. The allegations thus still fail to state a claim upon which relief can be granted.

                        b.    Scienter

Defendants argue Plaintiffs fall short of adequately pleading a "strong inference" of "scienter." Mot. at 8. To adequately plead scienter, the complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). To meet this state of mind requirement a complaint must "allege that the defendants made false or misleading statements either intentionally or with deliberate recklessness," where recklessness still "reflects some degree of intentional or conscious misconduct." In re Daou Sys., Inc., 411 F.3d 1006, 1014-15 (9th Cir. 2005), as amended (Aug. 4, 1999). To qualify as "strong," "an inference of scienter must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of

13

nonfraudulent intent." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 314 (2007). "[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss" to determine "whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." Id. at 322-23 (emphasis in original).

### i. Suitability Omission

Plaintiffs conclude Defendants had the required scienter because "Defendant Weddle knew or recklessly disregarded that the new computer system did not contain tools necessary to conduct a suitability analysis," yet continued to direct FA's to convert Plaintiffs' accounts. SAC ¶ 183. But Plaintiffs fail to demonstrate how knowledge that a computer program could not conduct a suitability analysis, amounts to knowledge that Defendants were not conducting a suitability analysis at all. As Defendants point out, the computer was not how the "[suitability] work was done". Mot. at 8.

Plaintiffs also imply Defendants' profits from converting Plaintiffs' accounts prove Defendant Weddle knew or recklessly disregarded that these accounts were converted without a suitability analysis. See Opp'n at 7 ("significantly, during that time, Defendant Weddle boasted in EDJ's SEC filings that its fee-based revenue had exploded, largely due to converting existing commission-based accounts into fee-based accounts."). But, as the Court makes clear in its prior order, "the mere fact that Edward Jones financially benefited from certain clients

14

choosing to move into fee-based accounts," "does not establish an intent to defraud that is at least as compelling as an opposing inference of nonfraudulent intent." Order at 13; In re Rigel Pharm,, Inc. Sec. Litig., 697 F.3d 869, 884 (9th Cir. 2012)("allegations of routine corporate objectives such as the desire to obtain good financing and expand are not, without more, sufficient to allege scienter; to hold otherwise would support a finding of scienter for any company that seeks to enhance its business prospects.").

      ii. DOL Fiduciary Rule Omission

 Plaintiffs also fail to establish the requisite scienter for the DOL Fiduciary Rule theory of liability. Notwithstanding the Court's prior admonition, Plaintiffs merely state they "do not need to [establish scienter] at this stage of the litigation." Opp'n at 7; see also Order at 12-14 (explaining Plaintiffs needed to "establish an intent to defraud that is at least as compelling as an opposing inference of nonfraudulent intent."). Plaintiffs thus fail to adequately allege the strong inference of scienter required under Rule 10b-5.

    c. Reliance

 Rather than make a traditional reliance argument, Plaintiffs continue to contend they are entitled to a presumption of reliance. "Reliance establishes the casual connection between the alleged fraud and the securities transaction." Desai v. Deutsche Bank Sec. Ltd., 573 F.3d 931, 939 (9th Cir. 2009). Traditionally, the most direct way for plaintiffs to demonstrate reliance is "by showing that [they] were] aware of a company's statement and engaged in a relevant

15

transaction...based on that specific misrepresentation." <u>Erica P. John Fund, Inc. v. Halliburton Co.</u>, 563 U.S. 804, 810 (2011). However, Plaintiffs alleging section 10(b) violations based on omissions of material fact are entitled to a presumption of reliance. <u>Binder v. Gillespie</u>, 184 F.3d 1059, 1063 (9th Cir. 1999). This presumption, though, "should not be applied to cases that allege both misstatements and omissions unless the case can be characterized as one that primarily alleges omissions." <u>Id.</u> at 1064.

Defendants argue Plaintiffs are not entitled to a presumption of reliance. As the Court determined in its previous order, these claims are more properly characterized as misstatements. Order at 14-15. Since Plaintiffs have not raised any new arguments to persuade the Court to the contrary, the Court maintains this view.

### d. Loss Causation

Plaintiffs' loss causation allegations in their Second Amended Complaint are largely identical to those in their First Amended Complaint. Plaintiffs argue "Defendants' Suitability and DOL Fiduciary Rule Omission caused their losses—increased fees and decreased returns—because if Defendants had disclosed those material facts, Plaintiffs would not have moved their assets into fee-based accounts." Opp'n at 8. Loss causation is "a causal connection between the material misrepresentation and the loss" experienced by the plaintiff. <u>Dura Pharm., Inc. v. Broudo</u>, 544 U.S. 336, 342 (2005). To allege loss causation, a plaintiff "must demonstrate that an economic loss was caused by the defendant's misrepresentations, rather than some

16

intervening event." Lloyd v. CVB Fin. Corp., 811 F.3d 1200, 1209 (9th Cir. 2016). In turn, "the plaintiff must show that the revelation of that misrepresentation or omission was a substantial factor in causing a decline in the security's price, thus creating an actual economic loss for the plaintiff." Nuveen Mun. High Income Opportunity Fund v. City of Alameda, Cal., 730 F.3d 1111, 1119 (9th Cir. 2013) (quoting McCabe v. Ernst & Young, LLP., 494 F.3d 418, 425-26 (3rd Cir. 2007)). But "plaintiffs need only show a causal connection between the fraud and the loss by tracing the loss back to the very facts about which the defendant lied." Mineworkers' Pension Scheme v. First Solar Inc., 881 F.3d 750, 753 (9th Cir. 2018) (internal citations and quotations omitted).

Plaintiffs again fail to sufficiently allege loss causation. The Court previously noted this is not a typical securities fraud case because Plaintiffs' allegations do not address the fee-based accounts' overall performance. Order at 16. Rather, Plaintiffs contend the loss causation is merely a result of the higher fees they pay by virtue of being in a fee-based account. Opp'n at 8. The Court has already explained there is no actionable omission related to the increase in fees because the relevant information was disclosed. Order at 16. For these reasons, and those discussed in the Court's prior order, Plaintiffs have not demonstrated loss causation.

### e. Conclusion

Plaintiffs failed to adequately allege any element in their Rule 10b-5(b) claim under Federal Rule of Civil Procedure 9(b) and PSLRA. This Court therefore DISMISSES these claims WITH

PREJUDICE.

### 5. Rules 10b-5(a) and (c)

Plaintiffs also attempt to revive their 10b-5(a) and (c) claim, this time alleging "Defendants engaged in a scheme to defraud by converting Plaintiffs' assets from commission-based accounts into fee-based ones without first conducting a suitability analysis" and by not providing financial advisors with a computer system containing suitability analysis tools. Opp'n at 14; see also SAC ¶¶ 215-234. Defendants argue Plaintiffs fail to add anything beyond their 10b-5(b) claim and fail to allege adequate particularized factual allegations suggesting Defendants "committed a manipulative or deceptive act." Mot. at 11. The Court agrees.

As the Court previously stated, Rules 10b-5(a) and (c) make it unlawful for a person to use a "device, scheme, or artifice to defraud," or engage in "any act, practice, or course of business which operates or would operate as a fraud or deceit," in connection with the purchase or sale of a security. 17 C.F.R. § 240.10b-5. While "the same set of facts may give rise to both a violation of subsection (b) and subsection (a) and/or (c), to state a claim under the latter subsections, a plaintiff must allege a "device, scheme, or artifice to defraud," or an "act, practice, or course of business which would operate as a fraud," in addition to the standard elements of a 10(b) violation, See Stoneridge Inv. Partners, LLC v. Sci.-Atlanta, 552 U.S. 148, 158 (2008); S.E.C. v. Loomis, 969 F. Supp. 2d 1226, 1237 (E.D. Cal. 2013)(quoting In re Alstom SA, 406 F.

Supp. 2d 433, 475 (S.D.N.Y. 2005)).

In its previous Order, the Court dismissed Plaintiffs' Rule 10b-5(a) and (c) claim because it was "nothing more than a repackaging of the Rule 10b-5(b) omission claims...." Order at 18. This remains the case. Plaintiffs' scheme liability claim largely rests on Defendants' alleged suitability omissions during the conversion of commission-based accounts into fee-based ones. See SAC ¶¶ 216-225.

Moreover, Plaintiffs' scheme liability claim fails again to allege violations actionable as a deceptive scheme. Plaintiffs contend the transaction itself of converting the accounts was deceptive because Edward Jones supposedly did not conduct a suitability analysis, prior to the conversion, through a computer program. SAC ¶ 224, 226-227. But this allegation fails because the deceptive conduct must have had "the principal purpose and effect of creating a false appearance of fact in furtherance of the scheme." Simpson v. Homestore.com, Inc., 519 F.3d 1041 (9th Cir. 2008). As the court noted above, Defendants conducted a suitability analysis; they simply did not conduct one through the computer program Plaintiffs endorse. Defendants failure to conduct a suitability analysis through a non-existent computer program did not have the "principal purpose and effect of creating a false appearance".

The Court further finds Plaintiffs have failed to properly allege the standard elements of a 10(b) violation: reliance, scienter, and loss causation. The Court therefore DISMISSES Plaintiffs' scheme liability claim under Rules 10b-5(a) and (c) (Count VII) WITH PREJUDICE.

### 6. Section 20(a)

To establish a cause of action under Section 20(a), "plaintiff must first prove a primary violation of underlying federal securities laws, such as Section 10(b) or Rule 10b-5, and then show that the defendant exercised actual power over the primary violator." In re NVIDIA Corp. Sec. Litig., 768 F.3d 1046, 1052 (9th Cir. 2014). Plaintiffs failed to adequately allege a primary violation under Section 10(b). Plaintiffs' Section 20(a) control person claim (Count VIII) therefore fails and is DISMISSED WITH PREJUDICE.

### 7. Section 80b-1 et seq.

In their Second Amended Complaint, Plaintiffs raised Investment Adviser Act claims for the first time. SAC ¶¶ 256-294. Defendants argue these claims fail as a matter of law. Mot. at 14. Rather than respond to this argument in their Opposition to the Motion, Plaintiffs withdrew these claims in a one sentence footnote. Opp'n at 15 n. 13. The Court treats a failure to respond to an argument as a concession. The Court therefore DISMISSES these claims WITH PREJUDICE.

## III. ORDER

For the reasons set forth above, the Court GRANTS Defendants' Motion to Dismiss in its entirety. Plaintiffs' Second Amended Complaint is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.

Dated: November 8, 2019

JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE